BARRY E. HINKLE, Bar No. 071223
TRACY L. MAINGUY, Bar No. 176928
CONCEPCIÓN E. LOZANO-BATISTA, Bar No. 227227
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
Telephone  (510) 337-1001
Fax  (510) 337-1023
E-Mail:  bhinkle@unioncounsel.net
          tlmainguy@unioncounsel.net
          clozano@unioncounsel.net

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES, in their capacities as Trustees of the LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; LABORERS VACATION-HOLIDAY TRUST FUND FOR NORTHERN CALIFORNIA; LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA; and LABORERS TRAINING AND RETRAINING TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>                        Plaintiffs,<br><br>          v.<br><br>MICHAEL HEAVEY CONSTRUCTION, INC., a California Corporation; MICHAEL BART HEAVEY, individually; NOREEN BRIDGET BOYLE also known as NOREEN BRIDGET HEAVEY, individually,<br><br>                        Defendants. | No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, AUDIT AND ENFORCEMENT OF PERSONAL GUARANTY (ERISA 29 U.S.C. §1001, ET SEQ., 29 U.S.C. §185)** |

Plaintiffs complain of Defendants, and for cause of action allege:

## JURISDICTION AND INTRADISTRICT ASSIGNMENT

### I.

This action arises under and is brought pursuant to section 502 of the Employee Retirement Income Security Act, as amended (ERISA) (29 U.S.C. § 1132), and section 301 of the Labor Management Relations Act (LMRA) (29 U.S.C. § 185).  The Court has supplemental jurisdiction over the remaining claim for enforcement of personal guarantees pursuant to 28 U.S.C. §1367(a) because the remaining claims are so related to the claim for payment under the Collective Bargaining Agreement of Defendant Michael Heavey Construction, Inc. that they form a part of the same case or controversy.  Venue properly lies in this district court since contributions are due and payable in the County of San Francisco.  Therefore, intradistrict venue is proper.

## PARTIES

### II.

At all times material herein, Plaintiffs The Board of Trustees were Trustees of the Laborers Health and Welfare Trust Fund for Northern California (hereinafter "Welfare Fund"); Laborers Vacation-Holiday Trust Fund for Northern California (hereinafter "Vacation Fund"); Laborers Pension Trust Fund for Northern California (hereinafter "Pension Fund"); and Laborers Training and Retraining Trust Fund for Northern California (hereinafter "Training Fund", together with the Welfare Fund, Vacation Fund, and Pension Fund, collectively referred to as "Trust Funds"). At all times material herein, each of the above-named Trust Funds was, and now is, an employee benefit plan created by a written Trust Agreement subject to and pursuant to section 302 of the Labor Management Relations Act (29 U.S.C. § 186), and a multi-employer employee benefit plan within the meaning of sections 3, 4 and 502 of ERISA (29 U.S.C. §§ 1002, 1003 and 1132).  Each of the above-named Trust Funds is administered by a Board of Trustees which may bring this action in the name of the Trust Funds pursuant to the express provisions of the Trust Agreements.  All of the above named Trust Funds and their respective Board of Trustees shall hereinafter be designated collectively as "Plaintiffs".

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

2

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, AUDIT AND ENFORCEMENT OF PERSONAL GUARANTY
Case No.

**III.**

At all times material herein, Defendant Michael Heavey Construction, Inc., a California Corporation (hereinafter referred to as "Employer"), has been an employer within the meaning of section 3(5) and section 515 of ERISA (29 U.S.C. §§ 1002(5), 1145) and an employer in an industry affecting commerce within the meaning of section 301 of the LMRA (29 U.S.C. § 185). At all relevant times, Defendant Michael Bart Heavey ("Michael Heavey") was the Responsible Managing Officer and a shareholder of Employer.   At all relevant times, Defendant Noreen Bridget Boyle also known as Noreen Bridget Heavey ("Noreen Heavey") was the Chief Executive Officer and President of Employer, and a shareholder of Employer.   At all relevant times, Michael Heavey and Noreen Heavey were married and have resided in California. Employer is a contractor.

**ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF**

**IV.**

At all relevant times, Employer was signatory and bound to a written collective bargaining agreement with the Northern California District Council of Laborers (hereinafter "Union"), a labor organization within the meaning of section 301 of the Labor Management Relations Act (29 U.S.C. § 185).  Defendant signed a Power of Attorney with Engineering & Utility Contractors Association (hereinafter "EUCA"), now doing business as United Contractors, and by virtue of such Power of Attorney, became subject to all the terms and conditions of the Laborers Master Agreement (hereinafter "Master Agreement" or "Agreement").  A true and correct copy of said Master Agreement is attached hereto as **Exhibit "A"** and a true and correct copy of the Power of Attorney is attached hereto as **Exhibit "B"**, both of which are incorporated by reference herein.  The Master Agreement by its terms incorporates the various Trust Agreements establishing each of the Trust Funds.  By said Master Agreement, Employer promised that it would contribute and pay to Plaintiffs the hourly amounts required by said Agreements for each hour paid for or worked by any of its employees who performed any work covered by said Agreements, and that it would be subject to and bound by all of the terms,

/ / /

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, AUDIT AND ENFORCEMENT OF PERSONAL GUARANTY
Case No.

1     provisions, and conditions of the Trust Agreements as incorporated by the terms of the Master

2     Agreement.

3     **V.**

4          The Master Agreement, and Trust Agreements ("Agreements") provide for prompt

5     payments of all employer contributions to the various Trust Funds and provide for liquidated

6     damages, not as a penalty but as a reasonable attempt to provide for payments to cover the

7     damages incurred by the Trust Funds in the event of a breach by the employer where it would

8     have been impracticable or extremely difficult to ascertain the losses to the Trust Funds.  The

9     Agreements also provide for the payment of interest on all delinquent contributions, attorneys'

10    fees, other collection costs, and for the audit of the signatory employer or employers' books and

11    records in order to permit the Plaintiffs to ascertain whether all fringe benefit contributions have

12    been timely paid as required by the Agreements and law.

13    **FIRST CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

14    **VI.**

15         Plaintiffs incorporate and reallege by reference all the allegations stated hereinabove.

16    **VII.**

17         Defendant has failed, neglected, or refused to make timely fringe benefit contributions as

18    required by the Collective Bargaining Agreement and Trust Agreements and there is now due and

19    owing and unpaid to Plaintiffs fringe benefit contributions in the sum estimated to be at least

20    $33,343.92, and liquidated damages and interest in the amount estimated to be at least $5,398.38

21    for the period of September 2017 through March 2018.

22    **VIII.**

23         Plaintiffs are the intended third-party beneficiaries of the Agreement, but Trust Fund

24    contribution delinquencies are excluded from the arbitration provisions of the Agreement.

25    **IX.**

26         Plaintiffs have complied with all conditions on their part to be performed under the terms

27    of the applicable agreements.

28    / / /

**WEINBERG, ROGER &**
**ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

4

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, AUDIT AND ENFORCEMENT OF PERSONAL GUARANTY
Case No.

1

2                                    **X.**

3          Plaintiffs are entitled to reasonable attorneys' fees, interest, and other reasonable expenses

4    incurred in connection with this matter due to Defendant's failure and refusal to pay all fringe

5    benefit contributions due and owing pursuant to the terms of the applicable Labor Agreements,

6    Trust Agreements, and ERISA section 502(g)(2) (29 U.S.C. § 1132(g)(2).

7                        **SECOND CLAIM FOR RELIEF**
     **(ACTUAL DAMAGES FOR BREACH OF CONTRACT AGAINST EMPLOYER)**
8                                   **XI.**

9          Plaintiffs incorporate and reallege by reference all the allegations stated hereinabove.

10                                  **XII.**

11         Employer has failed, neglected and refused to make timely fringe benefit contributions as

12   required by the applicable Master Agreement and Trust Agreements, and has caused Plaintiffs

13   actual damages to be proven at the time of trial.

14                        **THIRD CLAIM FOR RELIEF**
                            **(AUDIT AGAINST EMPLOYER)**
15
                                     **XXIII.**
16
           Plaintiffs incorporate and reallege by reference all the allegations stated hereinabove.
17
                                     **XXIV.**
18
           Plaintiffs believe that additional amounts may be due and owing and also pray for an audit
19
     of Employer to determine same.
20
                         **FOURTH CLAIM FOR RELIEF**
21
     **(ENFORCEMENT OF PERSONAL GUARANTEE (AGAINST MICHAEL HEAVEY**
22                          **AND NOREEN HEAVEY)**

23                                   **XXV.**

24         Plaintiffs incorporate and reallege by reference allegations stated in Paragraphs I through

25   X hereinabove.

26   / / /

27   / / /

28   / / /

**WEINBERG, ROGER &**
**ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

5

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, AUDIT AND ENFORCEMENT OF
PERSONAL GUARANTY
Case No.

**XXVI.**

On October 17, 2016, Defendants, and each of them, entered into a Settlement and Release of Claims ("Settlement Agreement") with Plaintiffs in which, pursuant to Paragraph 2(G) of the Settlement Agreement, Defendants agreed that Employer owes the Trust Funds: (1) Liquidated Damages and Interest in the amount of $56,834.31; (2) Attorneys' fees and costs in the amount of $56,166.26; (3) audit liability in the amount of $8,846.35 for principal shortages; and (4) liability in the amount of $6,987.82 for interest relating to the aforementioned audit.  Pursuant to paragraph 5 of the Settlement Agreement, Employer agreed to pay the sum of $80,968.15 ("Settlement Sum") on the following conditions:

   a.   Payments totaling $9,000.00 shall be made by Employer over a three month period with (3) equal monthly installments of $3,000.00 each due no later than the 5th day of every month commencing October of 2016.

   b.   Payments totaling $71,968.15 shall be made by Employer over a sixteen month period with (16) equal monthly installments of $4,498.01 each due no later than the 5th day of every month commencing January of 2017.

A true and accurate copy of the Settlement Agreement is attached hereto as **Exhibit "C"**.

**XXVI.**

Paragraph 2(H) of the Settlement Agreement provides:

   H.      Michael B. Heavey and Noreen B. Boyle, and each of them, individually, agree to personally guarantee the payment of the $128,834.74 owed to the Trust funds by the Employer and referenced in paragraph G above. A true and accurate copy of their respective Personal Guarantee Agreement is attached hereto.

A true and accurate of the Personal Guarantee Agreement executed by Michael Heavey and the Personal Guarantee Agreement executed by Noreen Heavey is attached to the Settlement Agreement is attached to the Settlement Agreement attached hereto as Exhibit C at the end of the Settlement Agreement.   Michael Heavey and Noreen Heavey, and each of them, agreed to pay the Settlement Sum owed by Employer.  Employer is a corporation in which both Michael Heavey and Noreen Heavey, and each of them have an ownership interest.  Therefore, consideration was given in exchange for the Personal Guarantees.  The Trust Funds agreed that they would forebear their legal right to collection of the Settlement Sum in exchange for the

6

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

1  personal guaranty of the debt for contributions executed by Michael Heavey and Noreen Heavey.

2  Paragraph 7 of the respective Guarantees attached hereto as Exhibit provides:

3       6.      You, Trust Funds, shall not be bound to exhaust your recourse
                against Employer, or any other parties, nor realize any security granted to
4               you by Employer or any party, nor value any such security nor notify me,
                the Guarantor of any act of default on the part of Employer, before
5               enforcing the provisions of this Guarantee against me.

6  Therefore, the Employer does not have to have its funds exhausted before the creditor can seek

7  recovery from the guarantors, Michael Heavey and Noreen Heavey.  Additionally, the personal

8  guarantees of Michael Heavey and Noreen Heavey are unconditional.  (See, Ex. C at Paragraph

9  13(1) "This Guarantee shall be absolute and non-conditional and shall be effective from the date

10 hereof.")

11                                             **XXVII.**

12      Employer made payments totaling $53,980.09 under the Settlement Agreement, and failed

13 to pay its ongoing contribution obligations on a current basis.  Paragraph 6 of the respective

14 Personal Guarantees provide:

15      7.      If Employer defaults on any of its obligations under Paragraph 5 of
                the Settlement Agreement, upon your written demand to the Employer and
16              Guarantor by Fax (415-822-6700) and the Employer's counsel by email
                (c.kuhner@komfieldla.w.com) and fax ((510) 273-8845 Fax), I AGREE to
17              immediately pay to the Trust Funds the sum of $128,834.74, less any
                payments received by the Trust Funds from Employer under paragraph 5 of
18              the Settlement Agreement. I shall also pay to the Trust Funds interest on
                the amount due under this Guarantee and Undertaking at the rate of ten
19              percent (10%) per annum calculated from the date of Employer's default
                under the Settlement Agreement until full payment thereof, and will
20              indemnify you, Trust Funds, against all attorneys' fees and costs which
                may be incurred and/or suffered by you by reason of any uncured default
21              on the part of Employer in performing or observing the payment
                obligations contained in Paragraph 5 of the Settlement Agreement.
22

23 On September 4, 2018, the Trust Funds notified Michael Heavey and Noreen Heavey of

24 Employer's Default under the Settlement Agreement and demanded immediate payment of

25 $74,854.65 [$128,834.74 less payments received under the Second Settlement totaling

26 $53,980.09] owed under the Settlement Agreement.  True and accurate copies of the respective

27 Notices of Default and Demand for Payment under Personal Guarantee (without the enclosures,

28 which are copies of the respective personal guarantees) are attached hereto as **Exhibit "D"** hereto

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

7

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, AUDIT AND ENFORCEMENT OF
PERSONAL GUARANTY
Case No.

1    and incorporated herein by this reference.

2                                    **XXVIII.**

3            A Notice of Default under the Settlement Agreement was also served on Employer on

4    September 4, 2018.  A true and accurate copy of the Notice of Default and Demand for Cure

5    directed to Employer is attached hereto as **Exhibit "E"** hereto and incorporated herein by this

6    reference.  Employer failed to cure the default under the Settlement Agreement.

7                                    **XXIX.**

8            Despite the Demands for payment (attached hereto as Exhibit D), Michael Heavey and

9    Noreen Heavey failed and refused to make payment per the terms of their respective Personal

10   Guarantee Agreements and continue to fail and refuse to make the payment owed under the

11   Personal Guarantees in the amount of $74,854.65 plus interest at the rate of ten percent (10%) per

12   annum calculated from the date of Employer's default under the Settlement Agreement until full

13   payment thereof, and all attorneys' fees and costs which may be incurred and/or suffered by the

14   Trust Funds by reason of the uncured default on the part of Employer in performing or observing

15   the payment obligations contained in Paragraph 5 of the Settlement Agreement.

16           **WHEREFORE**, Plaintiffs pray judgment against Employer, as follows:

17           1.      That Employer be ordered to pay contributions in an amount of at least

18   $33,343.92, and liquidated damages and interest in the amount estimated to be at least $5,398.38

19   for the period of September 2017 through March 2018;

20           3.      That Employer be ordered to pay actual damages in an amount to be proven at

21   trial;

22           5.      That this Court issue an Order directing and permanently enjoining Employer to

23   submit to the Trust Funds, all reports and contributions due and owing by Employer, plus interest,

24   attorneys' fees, and costs as provided in ERISA sections 502(a)(3) and (g)(2) (29 U.S.C. §

25   1132(a)(3), (g)(2);

26           6.      That this Court issue an Order permanently enjoining Employer for so long as it

27   remains obligated to contribute to the Trust Funds, from failing, neglecting, or refusing to timely

28   submit required monthly contributions reports and payments as required by the terms of the

**WEINBERG, ROGER &**
**ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

8
COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, AUDIT AND ENFORCEMENT OF
PERSONAL GUARANTY
Case No.

1 collective bargaining agreements, Trust Agreements and ERISA sections 502(a)(3) and (g)(2) (29

2 U.S.C. § 1132(a)(3), (g)(2));

3        7.        That Employer be ordered to pay attorneys' fees;

4        8.        That Employer be ordered to pay costs of suit herein;

5        9.        That this Court grant such further relief as this Court deems just and proper; and

6        10.        That this Court retain jurisdiction of this matter to enforce the Order compelling an

7 Audit and payment of all amount found due and owing.

8        **WHEREFORE**, Plaintiffs pray judgment against Michael Heavey and Noreen Heavey,

9 and each of them, as follows:

10        1.        That Michael Heavey and Noreen Heavey, and each of them, be ordered to pay the

11 Trust Funds the sum of $74,854.65 owed under the Personal Guarantees;

12        2.        That Michael Heavey and Noreen Heavey, and each of them, be ordered to pay

13 interest at the rate of ten percent (10%) per annum on the sum of $74,854.65 owed under the

14 Personal Guarantees calculated from the date of Employer's default under the Settlement

15 Agreement until full payment thereof, and all attorneys' fees and costs which may be incurred

16 and/or suffered by the Trust Funds by reason of the uncured default on the part of Employer in

17 performing or observing the payment obligations contained in Paragraph 5 of the Settlement

18 Agreement.

19        3.        That Michael Heavey and Noreen Heavey, and each of them,  be ordered to pay

20 costs of suit herein;

21        4.        That this Court grant such further relief as this Court deems just and proper.

22

23 Dated:  October 5, 2018                         WEINBERG, ROGER & ROSENFELD
                                                A Professional Corporation
24

25                                                /S/ TRACY L. MAINGUY
                                        By:      TRACY L. MAINGUY
26                                                Attorneys for Plaintiffs

27 131432\990301

28

**WEINBERG, ROGER &
ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, AUDIT AND ENFORCEMENT OF
PERSONAL GUARANTY
Case No.

# EXHIBIT A

# EXHIBIT A

# 2014-2019

# MASTER AGREEMENT

# for

# NORTHERN CALIFORNIA

# between

# UNITED CONTRACTORS

# and

# LABORERS

# TABLE OF CONTENTS

| Section | Title | Page |
|---|---|---|
| SECTION 1 | GENERAL PROVISIONS | 1 |
| SECTION 2 | BARGAINING REPRESENTATIVES | 4 |
| SECTION 3 | EMPLOYMENT AND DISCHARGE | 5 |
| SECTION 4 | SHOW-UP TIME | 11 |
| SECTION 5 | HIGHER WAGES | 12 |
| SECTION 6 | MEAL PERIODS, REST PERIODS, AND HEAT ILLNESS PREVENTATIVE RECOVERY PERIODS | 12 |
| SECTION 7 | RECORDS | 13 |
| SECTION 8 | NO CESSATION OF WORK | 13 |
| SECTION 9 | GRIEVANCE PROCEDURE | 13 |
| SECTION 9A | CONTRACT ADMINISTRATION | 15 |
| SECTION 9B | INDUSTRY STABILIZATION FUND | 16 |
| SECTION 10 | PAYMENT OF WAGES | 16 |
| SECTION 11 | SUBCONTRACTORS | 16 |
| SECTION 12 | CONFLICTING CONTRACTS | 17 |
| SECTION 13A | ELIMINATION OF RESTRICTIONS ON PRODUCTION | 18 |
| SECTION 13B | PROTECTIVE CLOTHING | 18 |
| SECTION 13C | SAFETY | 19 |
| SECTION 14A | ADDITIONAL WORK OR CLASSIFICATIONS | 20 |
| SECTION 14B | JURISDICTIONAL DISPUTES | 20 |
| SECTION 15 | PRE-JOB CONFERENCE | 20 |
| SECTION 16A | EMPLOYER'S MEMBERSHIP | 20 |
| SECTION 16B | AGREEMENT BINDING UPON PARTIES | 20 |
| SECTION 17 | CONTRACTING-PIECE WORK | 21 |
| SECTION 18 | WAGES | 21 |
| SECTION 19 | WAGES APPLICABLE TO CLASSIFICATIONS | 21 |
| SECTION 20A | OVERTIME RATES, HOURS AND WORKING CONDITIONS | 22 |
| SECTION 20B | PARKING | 24 |
| SECTION 21 | STATUS OF FOREMEN | 25 |
| SECTION 22 | STEWARD | 25 |
| SECTION 23 | RECOGNIZED HOLIDAYS | 25 |
| SECTION 24 | GUNITE, SHOT CRETE, PANEL CRETE AND SIMILAR TYPE WORK INCLUDING ALL PLACING, FINISHING AND PATCHING OF SHOT CRETE OR GUNITE | 25 |
| SECTION 25 | WRECKING WORK; GARDENING, HORTICULTURAL AND LANDSCAPING WORK | 26 |
| SECTION 26 | LIABILITY OF THE PARTIES | 26 |
| SECTION 27 | EMPLOYEES NOT TO BE DISCHARGED FOR RECOGNIZING AUTHORIZED PICKET LINES | 26 |
| SECTION 28A | HEALTH AND WELFARE PLAN, PENSION/ANNUITY PLAN, VACATION-HOLIDAY-DUES SUPPLEMENT PLAN, TRAINING-RETRAINING/APPRENTICESHIP PLAN | 26 |
| SECTION 28B | DELINQUENCY WITHDRAWALS | 28 |
| SECTION 28C | SECURITY FOR INDIVIDUAL EMPLOYER PAYMENTS INTO TRUST FUNDS | 28 |
| SECTION 28D | SUPPLEMENTAL DUES | 28 |
| SECTION 28E | WAGE AND FRINGE BENEFIT INCREASE | 29 |
| SECTION 29 | GENERAL SAVING CLAUSE | 30 |
| SECTION 30 | CHANGE OF NAME OR STYLE | 30 |
| SECTION 31 | WARRANTY | 30 |
| SECTION 32 | EFFECTIVE AND TERMINATION DATE | 31 |
| ATTACHMENT A | NOTIFICATION OF TERMINATION FORM | 33 |

**SUPPLEMENT NO. 1**   **LABORERS WAGE RATES** ................................................................ **34**
**SUPPLEMENT NO. 3**   **WRECKING WORK** .......................................................................... **44**
**SUPPLEMENT NO. 4**   **GARDENERS, HORTICULTURAL & LANDSCAPE WORKERS** ........................................ **45**
**SUPPLEMENT NO. 5**   **LABORERS' APPRENTICESHIP PROGRAM** ................................................ **47**
**SUPPLEMENT NO. 6**   **ZONE PAY** .................................................................................. **49**
**SUPPLEMENT NO. 7**   **SUPPLEMENT TO THE MASTER AGREEMENT REGARDING**
                       **LABORERS WORK FOR THE CONCRETE SAWING, DRILLING, CORING**
                       **AND BREAKING INDUSTRY** ............................................................ **53**
**SCHEDULE "A"**       **DISTRICT COUNCIL OF LABORERS HIRING HALL LOCATIONS** ................................... **56**

**2014-2019**
**MASTER AGREEMENT**
**for**
**NORTHERN CALIFORNIA**
**between**
**UNITED**
**CONTRACTORS**
**and**
**LABORERS**

THIS AGREEMENT, made and entered into this 1ˢᵗ day of May, 2014 and effective the 1ˢᵗ day of July, 2014 through June 30, 2019, by and between UNITED CONTRACTORS, herein after referred to as COLLECTIVE BARGAINING REPRESENTATIVE OF EMPLOYER, and the NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, hereinafter referred to as UNION, modifying, amending and changing the Agreement made and entered into the 17th day of May, 1951, as modified by the Agreements dated June 4, 1952; July 14, 1953; April 13, 1954; April 12, 1955; April 30, 1956; April 19, 1957; June 30, 1959; July 28, 1961; June 27, 1962; July 1, 1965; June 16, 1968; June 16, 1971; July 2, 1974; May 10, 1977; April 30, 1980; January 18, 1983; March 20, 1986; July 1, 1989; July 15, 1992; June 14, 1996, June 28, 1999, June 30, 2002, April 7, 2006, July 6, 2010, and July 1, 2012 by and between UNITED CONTRACTORS and the NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS of the LABORERS' INTERNATIONAL UNION OF NORTH AMERICA.

WITNESSETH:

## Section 1      General Provisions

A.      Definitions

    (1)  (a)  The term "Employer" shall refer to United Contractors.

        (b)  The term "Individual Employer" shall mean (1) an employer who has authorized the Association (Employer) to represent said Individual Employer with respect to collective bargaining with the Union; or (2) is bound to the terms and conditions of this Agreement under the subcontracting requirements of this Agreement; (3) directly signs this Agreement with the Union as an Independent or Non-Association Member. The Employer agrees to provide the Union with a current list of Individual Employers for whom it has authority to represent.

    (2)      The term "Union" shall refer to the Northern California District Council of Laborers.

    (3)      This Agreement shall apply to any employee who performs work falling within the presently recognized jurisdiction of those Local Unions of the Laborers' International Union of North America affiliated with the Northern California District Council of Laborers; except that this Agreement shall not apply to superintendents, assistant superintendents, general foremen, civil engineers and their helpers, timekeepers, messenger persons, confidential employees and office help.

    (4)      This Agreement shall apply to Northern California, which term means that portion of the State of

California above the Northerly boundary of Kern County, the Northerly boundary of San Luis Obispo County, and the Westerly boundaries of Inyo and Mono Counties, which includes the following counties; Alameda, Alpine, Amador, Butte, Calaveras, Colusa, Contra Costa, Del Norte, El Dorado, Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Marin, Mariposa, Mendocino, Merced, Modoc, Monterey, Napa, Nevada, Placer, Plumas, Sacramento, San Benito, San Francisco, San Joaquin, San Mateo, Santa Clara, Santa Cruz, Shasta, Sierra, Siskiyou, Solano, Sonoma, Stanislaus, Sutter, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba.

(5)     The "method of delivery of notices", required by this Agreement shall be satisfied by one of the following means of delivery; email, fax, certified mail or regular mail.

B.     Coverage and Description of Laborers' Work Covered by this Agreement.

(1)     This Agreement shall cover all work coming within the recognized jurisdiction of the Laborers' International Union of North America.

(2)     Subject to the preceding paragraph and subject also to the provisions of Section 14 of this Agreement, it is agreed that Laborers' work shall include but not be limited to:  All Laborers' work necessary to tend the carpenters and other building trades craftsmen, stripping of concrete forms, handling and raising of slip forms, sewer cleaners, gardening, horticulture, landscaping, trackmen (construction, maintenance, repair), installation of all track, including the third rail, all cleanup of debris, grounds and buildings, graffiti abatement, steam cleaning and all General Laborers' work. In accordance with Green Book Decision dated August 2, 1920 - December 11, 1924, the loading and unloading, carrying and handling of all rods and materials for use in reinforcing concrete construction shall be done by Laborers under the supervision of such person as the Employer may designate.  The hoisting of rods shall be done by Laborers, except when a derrick or outrigger operated by other than hand power is used.

All Laborers' work in connection with excavation for building and all other construction, including digging of trenches, piers, foundations and holes; digging, lagging, sheeting, cribbing and bracing of foundations, holes, caissons and cofferdams, manning, setting and moving all manually movable pumps.  (This does not restrict the Laborers from performing other work.)

All Laborers' work in connection with concrete work, including chipping and grinding, sandblasting, mixing, handling, shoveling, conveying, pouring, concrete pumps and similar type machines, grout pumps, nozzlemen (including gunmen and potmen), vibrating, guniting and otherwise applying concrete, whether done by hand or any other process, and wrecking, stripping, dismantling and handling concrete forms and false work, including tending of plasterers and brick and block layers.

All Laborers' work in the excavation, grading, preparation concreting, asphalt and mastic paving, paving, ramming, curbing, flagging and laying of other stone materials, installation and/or removal of pavers, and surfacing of streets, ways, courts, underpasses, overpasses and bridges; utilization of all equipment for the coring, cutting, scoring of concrete, asphalt or any other surface, including, but not limited to horizontal and/or vertical concrete cutting, and all work utilizing diamond blades.

All Laborers' work in connection with the operation of spreader boxes, such as True-Lay, Rola Pavers and Laytons or similar type models, including but not limited to all shoveling and shifting material and cleaning of boxes, shall be the work of the Laborers.  All Laborers' work in connection with the cutting of streets and ways for all purposes, including aligning by any method, digging of trenches, manholes, etc., handling and conveying of all materials for same; concreting of same; and the backfilling, grading and resurfacing of same. All Laborers' work in connection with the construction of caissons, cofferdams, subways (except as covered by Master Tunnel

Agreement), aqueducts, water lines, culverts, flood controls, airports, drains and sewers, and any type of conduit, including electrical, no-joint pipe, including the cribbing, lagging, bracing, sheeting, checking grade for pipelaying, trench jacking and handling of lagging hammers on all open trenches and ditches. All Laborers' work in connection with shoring, underpinning including cutting, fitting, placing and raising of all structures.

All Laborers' work in connection with drilling, utilization of the rock slicer and/or rock splitter, utilization of all air track drills, hydraulic drills of all types and sizes; drilling, including directional drilling, geothermal drilling and the locator for directional drilling, all work of loading, placing and blasting of all powder and explosives of whatever type regardless of the method used for such loading and placing.

All signaling and rigging in connection with Laborers' work.

All Laborers' work in connection with the wrecking of buildings, both structural and non-structural.

All Laborers' work in connection with demolition, both structural and non-structural.

All Laborers' work in connection with the slinging, handling and placing of all rip-rap, rock and stone on highways, jetties, retaining walls or wherever used.

All wrecking work on construction and/or razing sites: all Laborers' work on pre-casting or prefabrication at the construction project site or at a precast or prefabrication yard specifically established and operated for that one particular construction job.

All Laborers' work in connection with the operation of such equipment that is necessary and incidental to carry out the work of the Laborer.

All Laborers' work in connection with Trenchless Technology, including pipe installation, bursting, relining or similar trenchless laborer work.

All Laborers' work in connection with Dry Utilities, including electrical and telecommunication conduit layer, joint utility trench laborer including gas.

All Laborers' work in connection with Remediation/Land Restoration, including wetlands restoration, mitigation, or re-vegetation of lands (ornamental landscape is not included in this classification).

All Laborers' work in connection with Erosion and Sediment Control, including soil stabilization and soil, vegetation, and watershed pollution control.

All Laborers' work in connection with installing the systems designed to support solar modules/panels including anchoring support systems (deck mounting); Foundation post hole digging (ground mounted support systems); pouring of concrete for support system posts; Moving, loading, and unloading of material used in solar photovoltaic installations to the point of installation roof or other locations as required, installation of Photovoltaic Modules in support systems, attaching Modules to Rails (support systems), trenching on ground level systems, conduit placement, Final Cleaning on Panel Surfaces, general cleanup of surplus packaging/installation materials, coring or sawing of concrete in conjunction with solar systems, welding of Solar Array structures, traffic control and flagman involved with delivery and unloading operations, and living roof installation.

When an Individual Employer, at his/her discretion, wishes to utilize their Employees covered by

this Agreement to perform the following: laying and/or applying of fabrics connected to asphalt, portland cement concrete (pcc), and aggregate paving work; slurry seal; chip seal, such Employee shall be employed in accordance with the applicable classification set forth in Supplement No. 1, Group 3, General Laborer (except for chip seal which will be paid at Group 1 rate). This work shall not be subject to Section 11 (Subcontracting). Upon request from the Union, the Individual Employer shall assist the Union in verifying that the work performed by a non-signatory contractor on a public works project is being paid in accordance with the Laborers Master Agreement Group 3 or Group 1 wage and benefit amounts identified here. Obligation for Non-Signatory to pay at rates above any currently posted Prevailing Wage Rate will not be required until ALL Contracts obtain inclusion of this Section 1 B(2) as written.

(3)     All classifications listed in Supplement No. 1 of this Agreement which are not listed under this Section shall be included in the coverage and description of Laborers' work just as though incorporated in full in this Section.

(4)     Should an Individual Employer signatory to this Agreement subcontract the masonry or plastering portion of a project, said contract shall specify that the work to be performed shall be done under the terms and conditions of the current Masonry and/or Plaster Tender Agreement that has been negotiated by the Northern California District Council of Laborers or its affiliates, which is in effect in the territory in which the work is performed. However, Masonry work which is incidental to the work of the Individual Employer may be performed under the terms and conditions of this Agreement.

(5)     Any Employer not signatory to both the Tunnel and Laborers' Master Agreement shall agree that whenever work is performed which is covered by the terms of the Laborers' Master Tunnel Agreement for the forty-six (46) Northern California Counties, the provisions of that Agreement shall be fully applicable to and binding upon the Individual Employer.

(6)     Should an Individual Employer signatory to this Agreement subcontract the traffic control or highway improvement portion of the project, such work shall be done under the terms and conditions of the current UCON/Laborers' Master Traffic Control/Highway Improvement Agreement that has been negotiated by United Contractors, which is in effect in the territory in which the work is performed.

(7)     Should an Individual Employer signatory to this Agreement subcontract landscaping work, such work shall be performed under the terms and conditions of the current Laborers' Landscaping Agreement that has been negotiated by the Northern California District Council of Laborers which is in effect in the County in which the work is performed.

## Section 2     Bargaining Representatives

A.     Union's Recognition of Collective Bargaining Representative of Employer.

The Union hereby recognizes and acknowledges that the Collective Bargaining Representative of Employer includes in its membership a majority of the Individual Employers in the highway, general building and heavy construction industry, and said Individual Employers are performing the greater percentage of work therein. By reason of such facts the Union hereby recognizes that the Collective Bargaining Representative of the Employer, as herein-above referred to, is the collective bargaining representative for all Individual Employers who authorize the Employer to represent them with respect to Collective Bargaining with the

Northern California District Council of Laborers. A list of said Individual Employers shall be furnished to the Union at the commencement of negotiations and the Employer shall furnish the Union with a complete monthly report of any additions and deletions to the list of Individual Employers represented by the Employer.

In the event the Union (District Council) enters into any other agreement with other employers or employer associations concerning the type of work covered hereby in the area which shall have terms more favorable to such employers or employer associations and the members thereof than this Agreement, then such more favorable provisions shall become a part of and apply to this Agreement only in the geographical area where such other agreement is in effect.

The Union has requested recognition as the Section 9(a) representative of the employees performing Laborers' work covered by this Agreement and has demonstrated or offered to demonstrate through authorization cards that it has the support of the majority of these employees.  The Employer and each Individual Employer expressly acknowledge that they and each of them have satisfied themselves that the Union and/or each of its local affiliates represents a majority of the employees employed to perform Laborers' work and agrees that the Union and/or each of its constituent Locals is the collective bargaining representative of such employees.  The Employer on behalf of itself and each of its members and each Individual Employer specifically agrees that it and they are establishing or have established a collective bargaining relationship by this agreement within the meaning of Section 9(a) of the National Labor Relations Act of 1947, as amended.  The Union is recognized as the sole and exclusive bargaining agent for itself, the Northern California District Council of Laborers and all of its affiliated Local Unions.

Any dispute concerning this section shall be resolved by a mutually agreed upon neutral Arbitrator, either during the term of this Agreement or anytime thereafter, whenever the issue is raised by either party.  The Employer, on behalf of itself and each of its members and each Individual Employer, specifically agrees that the neutral Arbitrator may order (as the Arbitrator deems appropriate) the parties to bargain in good faith for any period following a written notice of termination of the Agreement unless and until a lawful impasse occurs or until a successor Agreement is negotiated.

B.      Employers' Recognition of Union as Collective Bargaining Representative of Employees.

The Employer and the Individual Employers covered hereby recognize and acknowledge the Northern California District Council of Laborers of the Laborers' International Union of North America as the collective bargaining representative for the employees in the area aforementioned covering the jurisdiction of the Union.

C.      Access to Project.

A Union Representative shall have access to the project during working hours for the purpose of checking the manner of compliance with which the terms of this Agreement are being complied.

## Section 3      Employment and Discharge

A.      Union Security

(1)      Every person performing work covered by this Agreement who is a member of the Union and in the employment of an Individual Employer on work covered by this Agreement on the effective date of this subsection 3A shall, as a condition of employment or continued employment, remain a member in good standing of the Union in the appropriate Local Union of the Union.  Every person covered by this Agreement and employed to perform work covered by this Agreement shall be required, as a condition of employment, to apply for and become a member of and to maintain

membership in good standing in the Union in the appropriate Local Union of the Union which has territorial jurisdiction of the area in which such person is performing work on or after the expiration of eight (8) days of employment on such work following the beginning of such employment or the effective date of this revised subsection 3A, whichever is later.  Membership in any such Local Union shall be available to any such person on the same terms and conditions generally applicable to other members.

If Federal law is hereafter amended to permit a lesser requirement for Union membership or Union membership as a condition of employment than provided in this subsection, the Collective Bargaining Representative of the Employer and the Union will promptly enter into negotiations with regard to such subject.

(2)    The Individual Employer shall be required to discharge any employee pursuant to this subsection 3A only when a written notice from the Union or Local Union, with an immediate copy of such notice to the Union, of such employee's non-compliance with this subsection, stating all pertinent facts showing such non-compliance, shall have been served upon such Individual Employer and a reasonable time (not to exceed 48 hours) has been allowed for compliance therewith.

B.        Employment

(1)    The Union or Local Union shall maintain open and non-discriminatory hiring halls for the use of workmen desiring employment on work covered by this Agreement and such workmen shall be entitled to use such hiring halls.  It is mutually agreed by the Employer and the Union to fully comply with all of the provisions of Title 7 of the Civil Rights Act of 1964, Presidential Executive Order #11246, the Americans with Disabilities Act of 1990, and the California Fair Employment Practices Section, to the end that no person shall, on the grounds of sex, race, color, disability, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination by not having full access to the contents of Section 3 of this Agreement. (A list of Local Unions, their telephone numbers and daily dispatching hours is attached hereto as "Schedule A" for convenience only.)

The Union shall retain full power to change the location of any hiring hall listed herein, to change the daily dispatching hours listed herein or to cause the merger, amalgamation or consolidation of any two or more hiring halls listed herein.  The Union shall give notice in writing to the Employer whenever any such change, merger, amalgamation or consolidation becomes effective.  If the Employer desires a location of a hiring hall or daily dispatching hours other than as specified herein, notice of such desire shall be given to the Union in writing and the Collective Bargaining Representative shall promptly enter into negotiations with regard to such subject.

(2)    Each person desiring employment shall register through such hiring hall by appearing personally and by indicating his/her name, address, telephone number, Social Security Account Number, qualifications and employment desired, or by telephone in those Local Unions permitting telephone registration.  Each such person shall be listed numerically in the order in which he/she registers.

(3)    No person shall be entitled to have his/her name placed on any employment list which is applicable to a particular type or classification of work unless he/she has been employed in such type or classification of work for six months consecutively or accumulatively within a period of three (3) years immediately preceding the date of his/her registration.

(4)    The Individual Employer shall contact the appropriate hiring hall of the local Union having work and area jurisdiction for all Laborers as he/she or it may from time to time need, and the Local Union shall furnish to the Individual Employer the required number of qualified and competent Laborers of the classifications needed by the Individual Employer in accordance with the

provisions of this subsection 3B, if such Laborers are available.

(5)     When requesting Laborers, the Individual Employer shall submit job orders indicating the number of persons desired, qualifications of each person desired, the location of the job, the reporting date and time and the representative of the Individual Employer to be contacted on the job site.

(6)     The appropriate hiring hall of the Local Union of the Union having work and area jurisdiction will furnish in accordance with the request of the Individual Employer such qualified and competent Laborers of the classifications needed from among those entered on said lists to the Individual Employer by use of a written referral in the following order of preference:

Persons shall be referred in the order in which they are registered if their registration indicates that they are qualified for and desirous of taking such referral, unless they are not available for referral, subject to the following conditions:  First,

(a)     Notwithstanding any other provision of this Agreement, the Individual Employer may request a person by name, out of order, and such person must be dispatched if such person is registered on the out-of-work list and if such person was employed previously by such Individual Employer or member of a joint venture within three years prior to such request within the territorial jurisdiction of the appropriate Local Union of the Union.

(b)     In addition to requests permitted by the provision of subsection 6(a), the Individual Employer may request any person registered on the out-of-work list out of order for any reasons; provided, however, that at no time shall any job contain more than 50% of persons requested under subsection 6(b).  It will not be a violation of this Agreement for an owner (1 person) to perform Laborers' work when needed, provided that said owner is performing work with at least one (1) additional Laborer on the job site.

(c)     Any Local Union, may at its option, permit a percentage of individual requests greater than 50% on any job. Such permission shall not be deemed a violation of this Agreement.

(d)     Notwithstanding the above, the mobility of all employees who have been employees of the Individual Employer for a period of three hundred sixty (360) hours out of the immediate preceding six (6) months, shall not be restricted for any reason subject to Section 3A, Union Security.  In order for the Individual Employer to exercise the mobility provisions set forth in this paragraph, the Individual Employer shall:

(1)     Provide the appropriate Local Union with a current list of names and Social Security Numbers of those employees who are eligible for mobility, prior to any employee being moved; and

(2)     The Individual Employer shall notify the appropriate Local Union of a job or project of more than five (5) day's duration.

(3)     In cases where an Individual Employer is found to have dispatched certain employees not eligible for mobility to a job site as defined herein, then the Local Union having jurisdiction in the project area shall notify the employer of such violation or error. The Individual Employer, upon notification by the Union, shall within one (1) working day, correct said violation or error to the satisfaction of the Union.  Additional laborers shall be obtained in accordance with the hiring hall procedures from the Local Union in the area where work is performed.  All laborers shall have in their possession proof of proper dispatch and Union status which shall be produced upon request of Local Union representative in the area

where the job is located.  Any violation not resolved to the mutual satisfaction of the parties shall be subject to Section 9 of this Agreement.

(4)      No Employee of the Individual Employer shall suffer loss of mobility for a break in service of two (2) months or less with the employer if the break in service is due to illness, extended vacation or winter shutdown.

(e)      No person shall be dispatched pursuant to the provisions of subsection 6(a), 6(b) or 6(c) of this  Section unless the Individual Employer's request is in writing, dated, is signed by an appropriate management representative, specifies whether the person is a rehire and names the job for which rehire is requested.

Second, persons who, within five (5) years immediately preceding the job order, performed work covered under this Agreement in the geographical area covered by this Agreement in the order in which they registered.

Third, persons who are registered in the order in which they registered by qualification.

(7)      Available for employment shall mean:  All persons eligible for referral shall be present at the hiring hall or present at their residence or mobile phone (during dispatching hours, unless excused for the following reasons) in those Local Unions permitting telephone dispatch:

(a)      When a death or imminent death occurs in the immediate family, or other close family member, from the date of death and not exceeding one week after the date of burial, however, they shall produce bona fide proof of such death or imminent death from hospital or family doctor.

(b)      Persons on jury duty, providing they produce bona fide proof that they are serving on a jury.

(c)      Persons temporarily serving in the U.S. Military Reserve, providing they show bona fide proof of such service.

(d)      Attendance at Workers' Compensation Hearing or any administrative or court appearance, upon a showing of bona fide proof of a required appearance.

(e)      Hospitalization or medical treatment of the member or an immediate family member, requiring the attendance or involving the family responsibilities of the member, (for up to one [1] week) upon appropriate proof.

(f)      Confinement of a spouse because of pregnancy and the anticipated imminent delivery of a child, (for up to one week) upon appropriate proof.

(g)      Training sponsored by the District Council, upon appropriate proof.

(8)      When ordering workers, the Individual Employer will give notice to the appropriate hiring hall of the Local Union, if possible, not later than 2:30 p.m. of the day prior (Monday  through Friday) or, in any event, not less than seventeen and one-half (17-1/2) hours, if possible, before the required reporting time.  In the event that forty-eight (48) consecutive hours after such notice (Saturday, Sundays and recognized holidays excluded), the Local Union shall not furnish such workers, the Individual Employer may procure workers from any other source or sources.  If workers are so employed, the Individual Employer shall promptly report to the appropriate hiring hall of the Local

Union, in writing or by phone with written confirmation within forty-eight (48) hours, the name, address and Social Security Account Number of the employee procured from such other source or sources and the date of employment and the location of the job on which he/she is employed. Workers who report on the first day are to be paid from the time they report to the Individual Employer's designated location.

(9)     Dispatching hours shall be as specified in subsection (1) of this subsection 3B or as specified in the notice or notices submitted pursuant to subsection (1) of this subsection 3B.  In emergency cases, individuals may be dispatched other than at such dispatching hours.

(10)    Each person, upon being referred, shall receive a written referral to be transmitted to the Individual Employer representative at the job site indicating the name, address, Social Security Account Number, type of job, date of proposed employment and date of referral.

(11)    To insure the maintenance of a current registration list, all persons who do not re-register or answer roll call, as the case may be, on each regularly scheduled roll call day (which shall not be more often than once a week), shall be removed from the registration list unless excused in accordance with subsection 3B(7).  Any person may re-register by phone and must be personally present at the phone during dispatch hours.  If a referral is made by phone, a written dispatch slip must be sent to the Individual Employer and worker.  Any person who is permitted to register by telephone under this subsection 3B must appear personally at the appropriate hiring hall on roll call day.  If such persons re-register or answer roll call pursuant to the provisions of this Section, they shall maintain their previous position on such list, subject to the provisions of subsection (12) of subsection 3B following, such person shall not be entitled to the position he/she held prior to his/her elimination in the event he/she re-registers or answers roll call, as the case may be. Persons will be excused from answering roll call only for the reason enumerated in subsection 3B(7).

(12)    Persons shall be eliminated from the registration list for the following reasons:

        (a)     Dispatched to a job- except that any person who is rejected by the Individual Employer or who fails to complete four (4) full days (thirty-two [32] hours accumulated from Individual Employers) of work and/or pay shall retain his/her position on said list; provided, no person who is rejected by the Individual Employer shall be re-referred to such Individual Employer with respect to the same request pursuant to which he/she was initially referred.

        (b)     Failing to accept suitable employment one time during the current week at the time of dispatch.  Employment which cannot be reached by an individual because of lack of transportation shall not be deemed suitable as to him/her.

        (c)     Unavailable for employment.

        (d)     Any person dispatched to a job who fails to report for work.

(13)    Notwithstanding the provisions of this Section 3B, upon the same notice as required in Section 3B(6)(e) being given to the appropriate Local Union of the Union, an Individual Employer shall have complete freedom to employ the first key Laborer.

(14)    Subject to the provisions of this Agreement, the Individual Employer shall have complete freedom of selectivity in hiring and the Individual Employer retains the right to reject any job applicant referred by the Union for just cause including but not limited to persons unable to produce legal residence documentation as required under the Immigration Reform and Control Act of 1986.  In the event an Individual Employer receives two (2) referrals from the Local Union not meeting the skill requirements of the hiring request, the Individual Employer shall be free to secure such skilled

person from any available source subject to Section 3A of this Agreement.

(15)    The Local Unions and the Union shall post in places where notices to applicants for employment with the Individual Employers are customarily posted, all provisions relating to the functioning of the hiring arrangements, including the provisions set forth in this Section, and each Individual Employer shall similarly post in places where notices to employees and applicants for employment are customarily posted, a notice of the hiring arrangements set forth in this Section.

(16)    Selection of applicants for referral to jobs pursuant to this Agreement shall be on a non-discriminatory basis and shall not be based on, or in any way affected by, Union membership, bylaws, rules, regulations, constitutional provisions, or any other aspect or obligation of Union membership, policies or requirements, provided that the provisions hereof shall not modify or qualify the requirements of Subsection A of this Section 3.

(17)    Any person aggrieved by the operation of the hiring hall shall submit his/her grievance to the permanent hiring hall neutral arbitrator provided that such submission is made in writing stating the reasons for the grievance within ten (10) working days after the occurrence of the grievance.

The Arbitrator shall have full power to adjust the grievance, and his decision thereon shall be final and binding upon the person submitting the grievance and all parties hereto.  Forms for the submission of any such grievance shall be available at all times in the office of the Union and each Local Union.

The permanent hiring hall neutral arbitrator shall be William E. Engler and notices required by this Section shall be mailed or delivered to 515 Maple Avenue, San Bruno, CA 94066.  The date of this postmark and/or date of delivery of the grievance, whichever is later, shall toll the running of the ten (10) day period.  The costs of arbitration shall be borne equally by the Employer and the Local Union regardless of who the Local Union or Individual Employer is.

(18)    The Union recognizes the need of the Individual Employer to have access to Union dispatched Laborers on an expedited basis and the Individual Employer recognizes the Union's obligation to operate a fair and efficient hiring hall.  Notwithstanding the other provisions of this article, if the Individual Employer contacts the Local Union after posted dispatch hours and requests workers to be dispatched to a job site within twenty-four (24) hours of the Individual Employer's call to the Local Union (and the Individual Employer does not request the Laborer by name pursuant to subsection 6(a) or subsection 6(b) above), then the Local Union shall dispatch the person nearest the top of the out-of-work list who is present at the Local Union hiring hall, and if no Laborer is present, the person nearest to the top of the out-of-work list who can be contacted by telephone.  If the Local Union is unable to contact a registrant by telephone after one (1) telephone call, the Local Union shall call the next qualified person on the list.  A person who is not present at the Local Union hiring hall or reachable by telephone for an expedited dispatch under this section shall not be eliminated from the out-of-work list.

C.    Discharge

No employee shall be discharged or discriminated against for activity in or representation of the Union or any Local Union.  The Local Union shall be the sole judge of the qualifications of its members.

The Individual Employer shall be the sole judge of the qualifications of all of their employees, and may on such grounds, discharge any of them.  After thirty-two (32) hours of employment, no employee shall be discharged without just cause.  In the event of discharge without just cause, the employee shall, if he/she so desires, be reinstated with payment for time lost.  In the event of a dispute, the existence of "just cause"

shall be determined under the grievance procedure provided for in Section 9 hereof. In the event of reinstatement, the amount of back pay awarded under Section 9 hereof may not exceed 90 days unless the grievant was employed by the Individual Employer who discharged him/her for more than 1500 hours in the two (2) years preceding the date of discharge

During the first thirty-two (32) hours, the Individual Employer may reject or discharge any employee for any reason.

D.     The Individual Employer may notify the Local Union hiring hall of all employees who have quit, or been terminated or recalled during the week. Such notification may be on a written form which will include the following information:

> NAME OF EMPLOYER COMPANY
> NAME OF EMPLOYEE
> DATE OF TERMINATION
> DATE OF RECALL
> REASON FOR TERMINATION

To implement the LIUNA Code of Performance adopted by LIUNA, the Employer may agree to designate discharges "for cause," when appropriate, as described in the Notification of Termination clause ("Attachment A" at the end of this agreement) and to substantiate such cause if necessary in proceedings under the Code of Performance.

This clause is intended only to assist the Union in implementing its Code of Performance, and a worker's only rights thereunder are in connection with future referrals under the Union's hiring hall procedures. This clause does not create any new or additional rights whatsoever for workers under this agreement, including not creating any new or additional right to reinstatement with or back pay from the Employer.

E.     No employee may be transferred from an Individual Employer's payroll to another Individual Employer's payroll except in accordance with subsection 3B, except any transfer to and/or from a joint venture of which the Individual Employer is a partner.

## Section 4      Show-Up Time

A.     The Individual Employer is not obligated to pay show-up time to any applicant/employee who fails to comply with the company code of safe practices.

B.     When any employee reports for work and there is no work provided by the Individual Employer, he/she shall be paid two (2) hours show-up time at the applicable rate plus zone pay where applicable, provided, however, no show-up time will be payable to any person who reports for work without the necessary and legally required documentation to establish work right status under applicable Immigration and Naturalization Laws. If work is suspended on account of weather conditions, the employee shall be entitled to show-up time only if he/she remains on the job site for two (2) hours pending abatement of such weather unless sent home earlier by the Individual Employer. If work is to be suspended for any reason, the employee shall be notified at least two (2) hours before being required to report for work. The employee shall keep the Individual Employer informed at all times of his/ her correct address, and if he/she has a telephone, his/her telephone number. If an employee does not keep the Individual Employer so informed, the Individual Employer shall be relieved of the duty of giving such notice and further he/she shall not have to pay such employee show-up time. Radio and/or TV notice is acceptable on remote projects as means of notification providing the Union is notified in writing at the commencement of the job.

**Section 5      Higher Wages**

No employee receiving a higher rate of pay shall suffer a reduction of pay by reason of the execution of this Agreement.

**Section 6      Meal Periods, Rest Periods, and Heat Illness Preventative Recovery Periods**

A.   There shall be a regularly established meal period. The meal period shall be one-half (1/2) hour and shall be scheduled to begin not more than one-half (1/2) hours before and completed not later that one (1) hour after the midpoint of the regularly scheduled hours of work for each Employee's shift.

If the Individual Employer requires the Employee to perform any work through his/her scheduled meal period, the Employee shall be paid at the applicable overtime rate for such meal period and shall be afforded an opportunity to eat on the Individual Employer's time.

Any employee required to work more than two (2) hours overtime at the end of a shift shall be permitted a one-half (½) hour meal period for which he/she shall receive regular overtime pay.  No work shall be performed by him/her during such meal period.  (Meal periods may be staggered from the 10th to the 11th hour.)

All disputes concerning meals and /or rest periods are subject to the grievance procedure and must be brought to the attention of the Employer in writing by the Union or employee within ten (10) working days of the alleged violation.

B.   Employees shall be authorized and shall be permitted to take a total of ten (10) minutes during each four (4) hour segment of their assigned work shift for a rest period.

There shall be no formal organized rest periods during working hours and as far as practicable the break will be taken as near to the middle of each four (4) hour work segment as possible.  Rest periods shall be scheduled in a manner so as not to interfere with workflow or continuous operations and Individual Employers shall be able to coordinate the timing of each ten (10) minute rest break with their Employees to assure the continuity of work.  Employees shall be required to remain in their respective work area, or to take their rest period in a specific area designated by the Individual Employer.  The second rest period may be added to the end of the meal period or workday when working conditions so dictate as determined by the Individual Employer.  Employees who work more than ten (10) hours shall be authorized and permitted three ten (10) minute rest periods.

It is understood that the Employee will take his/her appropriate rest period unless the Individual Employer specifically directs the Employee not to take this rest break due to operational requirements.  Employees are required to notify their supervisor whenever they are unable to take their rest periods.

If an Individual Employer fails to authorize and permit an Employee with a rest period as provided herein, the Employee shall be paid a penalty payment equal to one (1) hour at his/her applicable straight-time hourly wage rate excluding fringe benefits – one penalty payment covers any/all missed rest periods that day.

C.   As mandated by Cal/OSHA regulations, a heat illness preventative recovery period of no less than five (5) minutes shall be made available in order to prevent heat illness.  A recovery period may be integrated with an employee's rest break.  Heat illness recovery measures and protocols shall all be in accordance with current Cal/OSHA regulations.

If an Individual Employer fails to provide an Employee a preventative recovery period in accordance with Cal/OSHA Regulations, the Individual Employer shall pay the Employee, as a penalty, one additional hour of straight-time pay at the Employee's regular rate of compensation, excluding fringe benefits, for each work day that a requested preventative recovery period is not provided.   No employee shall be discriminated against for exercising his/her rights pursuant to this Section.

D.      All disputes concerning meals, rest periods and/or heat illness preventative recovery periods are solely and exclusively subject to the Grievance Procedures in Section 9 of the Agreement and must be brought to the attention of the Employer, in writing, by the Union or Employee within thirty (30) calendar days of the alleged violation.  Decisions resolving disputes arising out of the Grievance Procedures shall be final and binding upon both parties.

## Section 7      Records

A.      Each Individual Employer shall provide a proper means for registering the reporting, quitting time, and as supplied by the employee, the address and telephone number of all employees covered by this Agreement. In the event of a dispute, such records shall be accessible to the business representative of the Union or Local Union during working hours.

B.      Each Individual Employer, upon request of any Trust Fund specified in this Agreement, shall permit a Trust Fund Auditor to review any and all records relevant to the enforcement of the provisions of this Agreement pertaining to the Trust Funds.  Such review shall be permitted not less than ten (10) working days after demand.

## Section 8      No Cessation of Work

It is mutually agreed and understood that during the period when this Agreement is in force and effect, the Union or any Local Union will not authorize any strike, slow-down, or stoppage of work in any dispute, complaint, or grievance arising under the terms and conditions of this Agreement, except such disputes, complaints, or grievances as arise out of the failure or refusal of any Individual Employer to comply with the provisions of the hiring clause, Section 3A or 3B hereof, or as permitted under Section 28B and C hereof or whenever an Individual Employer pays Laborers improperly with checks which do not clear for collection. As to any Individual Employer who shall fail or refuse to comply with the provisions of the sections specified herein, so long as such failure or refusal continues it shall not be a violation of this Agreement if the Union or any Local Union withdraws its members who are subject hereto from the performance of any work for such Individual Employer, and such withdrawal for such period shall not be a strike or work stoppage within the terms of this Agreement.  In the event that any employees of any Individual Employer should be withdrawn by reason of any dispute, complaint, or grievance arising out of the violation of any similar hiring clause in any agreement between Employer and any other Union, then the Union or any Local Union may respect such withdrawal and for the period thereof may refuse to perform any work for such Individual Employer, and such refusal for such period shall not be a violation of this Agreement.

Any employees so withdrawn or refusing to perform any work as herein provided shall not lose their status as employees, but no such employee shall be entitled to claim or receive any wages or other compensation for any period during which he/she has been so withdrawn or refused to perform any work.

## Section 9      Grievance Procedure

Any dispute concerning the interpretation or application of this Agreement, other than a jurisdictional dispute or a dispute arising out of Section 3A or 3B, or a dispute covered by subsection 13C(4), or a dispute of Section 28 (Health & Welfare Plan, Pension/Annuity Plan, Vacation-Holiday-Dues Supplement Plan, Training- Retraining/ Apprenticeship Plan) which said Sections and the Subsections thereof are specifically exempted by the provisions

of this Section, the following procedure will apply:

1. In the event that a dispute arises on a job, it shall be first reported to the Individual Employer and/or the Business Agent of the appropriate Local Union who shall then attempt to adjust said grievance or dispute at the job site level.

2. The grieving parties shall specify the date(s) of the alleged violations(s) and the provision(s) of the Agreement applicable to the dispute.

3. If said grievance or dispute is not satisfactorily adjusted by the appropriate Local Union or otherwise authorized Union Representative and the Individual Employer or his/her representative within three (3) days after submission to the Individual Employer, the matter may be submitted by either party to a permanent Board of Adjustment created for the settlement of such disputes.

4. The Board of Adjustment shall be composed of two (2) members named by the Union, two (2) members named by the Association and an Impartial Arbitrator. At any point in the proceedings, should the panel be unable to reach a majority vote, the Arbitrator shall participate and his decision shall be final and binding.

5. In addition to any rules or procedures which the panel may adopt, the Board of Adjustment shall be governed by the following provisions:

    (a) No attorney shall be utilized unless either party notifies the other of its intent to do so with a minimum of fourteen (14) calendar days in advance of the hearing.

    (b) No briefs shall be submitted nor a transcript made of the hearing except by mutual agreement of the parties or by direction of the Arbitrator.

    (c) In the case of a deadlock, the Arbitrator shall render his decision upon the conclusion of the case at the Board of Adjustment hearing unless the time is extended by mutual agreement of the parties or at the request of the Arbitrator, in which case the Arbitrator shall render a decision not later than thirty (30) days after submission. The Arbitrator shall not render an expanded opinion in any case unless requested by the parties.

    (d) The parties shall select and utilize one (1) permanent impartial arbitrator who is willing to abide by the procedures set forth herein. The impartial arbitrator may be changed or replaced at the request of either party.

6. The Board of Adjustment shall meet not less than once each calendar month with the exception of the discharge cases which must be heard at the earliest possible date not to exceed fifteen (15) working days. Failure of either party to meet or participate in the procedure shall relieve the charging party of further compliance with the grievance procedure.

7. Decisions of the Board of Adjustment or an Impartial Arbitrator shall be within the scope and terms of this Agreement, and shall be final and binding upon all parties hereto.

8. In the event an Individual Employer fails to comply with any such decisions, the Union may withdraw employees or strike the Individual Employer and such action shall not be a violation of this Agreement so long as such noncompliance continues

9. The expenses of the Joint Adjustment Board and the Impartial Arbitrator, including the cost of a court reporter, shall be borne by the Employer

10. No proceedings hereunder based on any dispute, complaint or grievance herein provided for, shall be recognized unless the grievance procedure steps outlined above have been followed.  The Board of Adjustment may, by majority vote, for good cause, accept a late submission.

11. The Board of Adjustment shall establish regular meeting dates and administer grievances filed in conjunction with this Section as set forth in the rules and procedures which may be amended from time to time by the parties.

12. A decision of the Board of Adjustment by majority vote, or the decision of a permanent arbitrator shall be enforceable by a petition to confirm an arbitration award filed in the Superior Court of the City and County of San Francisco, State of California.

13. All hearings of the Board of Adjustment shall be in the County of Contra Costa and/or County of Alameda, unless mutually agreed to move to another location.

14. No proceedings hereunder based on any dispute, complaint, or grievance herein provided for shall be recognized unless adequate notice was given to the Employer and/or Union or Local Union within ten (10) days after the alleged violation was committed.

15. In the case of discharge, the Board shall meet within fifteen (15) working days.  The Board of Adjustment or Arbitrator shall be free to sustain the discharge or to find discipline other than discharge to be appropriate and may order reinstatement with full or partial back pay as he or it deems appropriate provided there shall be no discrimination on the part of the Individual Employer against any employee for activities in behalf of, or representation of the Union not interfering with the proper performance of his/her duties.

16. If failure of a Board of Adjustment to meet on a discharge case within fifteen (15) working days is due to the unavailability of the Union, the wage payment and Trust Fund contribution liability shall be limited to the above fifteen (15) working days.  If the Employer or Individual Employer is unavailable to meet, the wage payment and Trust Fund contributions shall be continuing.

17. The Board of Adjustment shall settle any dispute or grievance involving a subcontractor as defined in Section 11 who has agreed under contract with the Employer, or any Individual Employer, or a subcontractor of the Employer, or any Individual Employer to perform on the job site any part or portion of the construction work covered by the prime contract, including the operation of equipment, performance of labor and installation of materials.

    When liabilities are assessed against a subcontractor for hiring violations as a result of a Board of Adjustment held under the provisions of Paragraph 17 and said subcontractor fails to satisfy said obligations, the Union shall promptly give written notice to the Individual Employer and subcontractor and the Individual Employer shall pay such obligations from the retention of such subcontractor.

18. The procedures specified herein shall be applicable to any Individual Employer whether or not he or she is a member of Employer or any other associations.

19. In those instances where the Individual Employer is not a member of the Employer, the Joint Adjustment Board shall establish procedures whereby the Employer members of the Joint Adjustment Board may consist of one Individual Employer who is not a member of the Employer.

## Section 9A    Contract Administration

Effective July 1, 2012, every Independent signatory Employer shall contribute the sum of ten cents ($0.10) per hour

worked or paid to the Laborers Employers Contract Administration Fund, which is established for the purpose of administering the collective bargaining agreement through the grievance procedure or otherwise on behalf of all Employers signatory to this Agreement.

The Individual Employers hereby adopt and agree to be bound by the terms of the certain Trust Agreement creating the Laborers Employers Contract Administration Trust Fund, as such might be amended from time to time pursuant to the terms thereof, and further agree to observe and be bound by the actions and determinations of the Trustees of said Trust.

Effective July 1, 2012, each employer who is a member of United Contractors ("the Association") and is bound to this Agreement shall contribute the sum of $.10 (ten cents) per hour worked or paid for to the United Contractors Employers for Contract Administration fees for the purposes of negotiating and administering the collective bargaining agreement, including Section 9 (Grievance Procedure) of the Agreement.  Said payments are to be remitted by the employer directly to the Association on a monthly basis.

The Contract Administration Fund shall be administered solely by the Association.  All payments required pursuant to this section shall not be deemed wages due to the employees with respect to whose work such contributions and payments are made.

Upon request, the Union shall have the right to audit this fund on an annual basis.

## Section 9B     Industry Stabilization Fund

The Individual Employer shall contribute, effective December 1, 2012, thirteen cents ($.13) per hour for each hour paid for or worked by workers in work covered by this Agreement to the Industry Stabilization Fund.  Of the $.13 per hour, seven cents ($.07) per hour is earmarked for California Alliance for Jobs, one cent ($.01) per hour is earmarked for the Construction Industry Force Account Council (CIFAC), and five cents ($.05) per hour is earmarked for the Foundation for Fair Contracting.

The purpose of such funds shall be to enhance the monitoring of public works projects relative to Employer compliance with State, Federal or other public agency public works wage and hour laws.  Such contributions shall continue until written notice by the parties signatory hereto.  Such trust fund shall be administered jointly by the signatory parties.

## Section 10     Payment of Wages

A.      Each employee shall be paid wages in full each week before or at quitting time on the Individual Employer's regular pay day unless specific arrangements to the contrary are made in writing between the Individual Employer and appropriate Local Union of the Union.  Employees who quit or are laid off or discharged shall be paid in accordance with the laws of the State of California.

B.      Each employee shall be given a statement with the Individual Employer's name and address, itemizing the employee's gross amount earned, hours worked, Social Security tax, withholding tax and all other deductions, also a statement of hours applicable to Health and Welfare, Pension/Annuity, Vacation-Holiday-Dues Supplement and Training-Retraining/Apprenticeship Plans.

## Section 11     Subcontractors

The terms and conditions of this Agreement insofar as it affects Employer and the Individual Employer shall apply equally to any subcontractor of any tier under the control of, or working under oral or written contract with such Individual Employer on any work covered by this Agreement to be performed at the job site or job yard, and said

subcontractor with respect to such work shall be considered the same as an Individual Employer covered hereby. Subject to the provisions of this Section and any other Section of this Agreement applicable to subcontractors, if an Individual Employer shall subcontract work herein defined, such subcontract shall state that such subcontractor agrees to be bound by and comply with the terms and provisions of this Agreement. A subcontractor is defined as any person, firm or corporation who agrees under contract with the Employer, or any Individual Employer, or a subcontractor of the Employer, or any Individual Employer to perform on the job site any part or portion of the construction work covered by the prime contract, including the operation of equipment, performance of labor and installation of materials. The Individual Employer has the primary obligation for performance of all conditions of this Agreement. This obligation cannot be relieved, evaded or diminished by subcontracting. Should the Individual Employer elect to subcontract, the Individual Employer shall continue to have such primary obligation. Said primary obligation shall be deemed conclusive evidence of the Union's majority status for the purpose of establishing the obligation of the Individual Employer to bargain collectively pursuant to Section 8(a)(5) of the National Labor Relations Act as amended with the Union upon expiration of this Agreement, but for no other purpose, statute or law.

An Individual Employer who provides in the subcontract that the subcontractor will pay the wages and benefits and will observe the hours and all other terms and conditions of this Agreement shall not be liable for any delinquency by such subcontractor in the payment of any wages or fringe benefits provided herein, including payments required by Section 28 (Health and Welfare, Pension/Annuity, Vacation-Holiday-Dues Supplement and Training-Retraining/Apprenticeship Funds), except as follows:

The Individual Employer will give written notice to the Union of any subcontract involving the performance of work covered by this Agreement within five (5) days of entering such subcontract, and shall specify the name and address of the subcontractor. Written notice at a pre-job conference shall be deemed written notice under this provision for those subcontractors listed at the pre-job only. Notification to the Union of any subcontractor not listed in writing at the pre-job must still be given in accordance with this paragraph.

If thereafter such subcontractor shall become delinquent in the payment of any wages or benefits as above specified, the Union shall promptly give written notice thereof to the Individual Employer and to the subcontractor specifying the nature and amount of such delinquency.

If such notice is given, the Individual Employer shall pay and satisfy only the amount of any such delinquency by such subcontractor occurring within seventy-five (75) days prior to the receipt of said notice from the Union, and said Individual Employer may withhold the amount claimed to be delinquent out of the sums due and owing by the Individual Employer to such contractor.

In the event the Individual Employer fails to give written notice of a subcontract as required herein such Individual Employer shall be liable for all delinquencies of the subcontractor on that job or project without limitation.

The Individual Employer shall not be liable for any such delinquency if the Local Union where the delinquency occurs refers any employee to such subcontractor after giving such notice and during the continuance of such delinquency. The provisions of this Section 11 shall be applied only to the extent permitted by law and, notwithstanding any other provision of this Agreement, no aspect of the subcontractors' clause, including its enforcement, may be enforced by or subject to strike action.

## Section 12      Conflicting Contracts

Any oral or written agreement between Employer or any Individual Employer and an individual employee, which conflicts or is inconsistent with this Agreement, or any supplemental agreements hereto, disestablishes or tends to disestablish relationship of Employer and employee, or establishes a relationship other than that of Employer and employee, shall forthwith terminate. No oral or written agreement which conflicts or is inconsistent with this Agreement, or any supplemental agreements thereto, shall hereafter be entered into by and between Employer, or

an Individual Employer, and any individual employee performing work covered by this Agreement. Any practice of the Employer or Individual Employer contrary to this Agreement shall forthwith terminate. Any such future practice shall not be binding on the Union or effect the interpretation of this Agreement unless specifically authorized by the Union in writing.

## Section 13A   Elimination of Restrictions on Production

No rules, customs or practices shall be permitted that limit production or increase the time required to do any work. There shall be no limitation or restriction of the use of machinery tools or other labor-saving devices.

The Union and Employer recognize that drug and alcohol abuse by employees shall not be tolerated for safety reasons.

The Union agrees to cooperate with the Employer and the Individual Employer in establishing drug and alcohol abuse policies to the extent legally possible.

**Management Rights Regarding Substance Abuse:** Notwithstanding any other provisions of this agreement, the Employer expressly reserves the right, in its discretion, to undertake the following measures:

(1) In the sole discretion of the Employer and the Individual Employer, requiring covered employees to submit to physical examination by competent medical personnel to determine whether there is a probability that the employee is suffering from any physical impairment which might cause the employee to be a safety hazard to him/herself or others, or which might cause the employee to be unable to perform assigned tasks within the coverage of this agreement in a prompt and competent manner. Such tests may include, in the discretion of the Employer and the Individual Employer, such tests of the employee's bodily fluids as the Employer and the Individual Employer may reasonably believe will elicit evidence of the employee's use of substances which are reasonably likely to alter or impair the employee's ability to perform his/her duties in a prompt, competent and safe manner.

(2) Implementation of rules regarding the discipline and/or discharge of any employees that the Employer and the Individual Employer determines, as a result of the tests described in subparagraph (1), are reasonably likely to become voluntarily impaired or disabled from the safe performance of their work tasks as a result of the ingestion of alcohol or performance-impairing drugs.

(3) An Individual Employer may initiate unannounced random testing, a selection process where affected Employees are selected for testing and each employee has an equal chance of being selected for testing. If an Individual Employer initiates such testing, all employees shall be subjected to such testing. The Individual Employer may establish two random testing pools, one for DOT regulated employees and one for all others. An Individual Employer who initiates random testing shall specifically state in its notice to the Union and its notice to employees that employees will be subject to random testing. The Individual Employer shall give thirty (30) days notice to the Union and employees prior to implementing a random drug testing program.

(4) Implementation of a voluntary employee assistance program, to provide counseling, therapy and monitoring of those employees who request employer assistance in controlling and overcoming problems related to the use of drugs and alcohol.

Disputes arising from the implementation of the provisions of this paragraph shall be subject to the grievance procedures set forth in Section 9 of this Agreement.

## Section 13B   Protective Clothing

The Individual Employer shall furnish the necessary goggles, hard hats or other protective clothing. Laborers working in rain, snow or sleet shall be furnished with waterproof clothing. Laborers working in gunite or handling concrete and/or cement shall be furnished rubber boots and gloves. Laborers working in mud or water shall be furnished boots. Such equipment shall be furnished by the Individual Employer free of charge and returned by the employee in the same condition as received subject to reasonable wear and tear. Such equipment shall be sanitized before reissue.

## Section 13C   Safety

(1)   The Union shall cooperate with the Individual Employer and with each employee in carrying out all pertinent rules and regulations dealing with health, safety and welfare of employees promulgated by the Department of Industrial Relations of the State of California. All employees shall perform their duties in each operation in such manner as to promote safe and efficient operations of each particular duty and of any job as a whole.

(2)   All State and/or Federal and/or Local Safety Laws, Standards, Rules and Regulations shall be applicable to all work covered by this Agreement. The Individual Employer is solely responsible for implementing and maintaining such Laws, Standards, Rules and Regulations. Neither the Union nor any Local Union is responsible for implementing or maintaining such Laws, Standards, Rules or Regulations.

(3)   Adequate first-aid equipment shall be maintained and provisions shall be made for the safety of employees covered by this Agreement on each job by each Individual Employer. Each Individual Employer shall arrange for adequate and prompt transportation to a hospital or doctor for any employee who is injured on the job and may require doctor's care or hospitalization or both. Each Individual Employer must post the name and address of its doctor and of the Worker's Compensation Insurance carrier on the job site.

(4)   No employee shall be discharged for refusing to work under conditions injurious to his health or safety as determined under any rule or regulation of the United States or State of California or any political subdivision. Such determination shall be made by a responsible agent of the State of California or OSHA or any of its political subdivisions, or by a safety inspector from the applicable insurance carrier.

(5)   When drilling holes in rock or other dust producing material with air or power controlled drilling equipment (excluding jack hammer), dust shall be controlled by water, chemical or other suitable means within the maximum acceptable concentration as set forth in the California or OSHA Construction Safety Orders.

(6)   Should the Individual Employer desire a change in variance in the California or OSHA Construction or any applicable Safety Orders, they will notify the Union in writing not less than thirty (30) days prior to making a request for such change.

(7)   Manhaul trucks regularly used for personnel transport but not designed for this purpose shall be provided with safe seating and side and end protection to prevent falls. Some convenient means of mounting and dismounting the truck shall be provided. Adequate protection shall be provided during inclement weather. A bell or other means of communication with the driver shall be installed.

(8)   Employees who as a direct result of an on-the-job industrial injury are unable to complete a full day

of work shall nevertheless be paid for the full day on which such injury occurred; provided, however, that said injury requires the attention of a licensed physician.

(9)     The Local Union with area jurisdiction shall be notified within twenty-four (24) hours of any industrial injury which results in death or requires hospitalization.

## Section 14A    Additional Work or Classifications

This Agreement shall not prevent the Employer from negotiating or making agreements with the Union for any work or classification not covered by this Agreement.

Whenever any work covered by this Agreement is to be eliminated or modified by the introduction of any new machine, mechanized process, new or different material, or new or different method or technology with respect to the performance of such work, persons employed under this Agreement and subject thereto, will be given preference for employment and will be assigned such work where it is not in conflict with International jurisdictional agreements with respect to such new machine, mechanized process, new or different material, or new or different method or technology and the use of any such new machine, mechanized process, new or different material, or new or different method or technology shall be subject to and covered by this Agreement regardless of the nature, size or characteristics of such new machine, mechanized process, new or different material or new or different method or technology.

It is not the intent of the parties to provide work where no job exists.

## Section 14B    Jurisdictional Disputes

There shall be no cessation or interference in any way with any work of the Employer or any Individual Employer by reason of jurisdictional disputes between the Union and any other Union with respect to jurisdiction over any of the work covered by this Agreement.  Such disputes will be settled by the Unions, themselves, or submitted to the International Presidents of the Union involved in the dispute for determination.  Until such determination is made and confirmed by the disputing Unions, the work shall proceed as originally assigned by the Individual Employer. Craft jurisdiction is neither determined nor awarded by classifications or coverage descriptions appearing in this Agreement.

## Section 15      Pre-Job Conference

There shall be a pre-job conference prior to the start of a job or project, at the option of either party, where the agreed or estimated price to be paid the Individual Employer and any of his or its subcontractors is one million dollars ($1,000,000) or more where construction conditions or remoteness of the project warrant it.  The Individual Employer shall notify, in writing, the appropriate Local Union of the Union of an award of work within ten (10) days thereof so that a pre-job conference can be arranged.

## Section 16A    Employer's Membership

This Agreement is made for, and on behalf of, and shall be binding upon all persons, firms or corporations that at the time of the execution of this Agreement have given or subsequently give bargaining authorization to the Employer as defined in Section 2A.

Once an Individual Employer is bound by the Agreement, they shall remain bound by the Agreement for the term thereof and shall remain bound by any modifications, extensions or renewals thereto unless that Individual Employer gives appropriate written notice to the Northern California District Council of Laborers prior to the termination of the Agreement.

**Section 16B    Agreement Binding Upon Parties**

This Agreement shall be binding upon the heirs, executors, administrators, successors, purchasers and assigns of the parties hereto.

**Section 17      Contracting-Piece Work**

No work shall be let or paid for by piece work, contract or lump sum direct with laborers for labor services.

**Section 18      Wages**

Wages for General Laborers and for special classifications are set forth in the Supplements attached hereto and made a part hereof as if set forth in full herein and shall be effective on June 30, 2014, and on succeeding anniversary dates as herein provided on all work, both old and new.

A.      Zone pay for employees performing work under the terms of this Agreement is set forth in Supplement No. 6 attached hereto and made a part hereof as if set forth in full herein.

B.      On a job where a Craft with whom the Individual Employer has negotiated a short work week terminates early on Friday, the Individual Employer will keep the laborer employed the balance of the work day when the Individual Employer determines that work is available.

C.      On public work projects where wage determinations exist, such pre-determined wage and fringe rates referenced in the bid specifications shall remain in effect for the duration of said project, provided, however, that each segment let by the Owner shall be deemed the project; provided, further that this provision shall not apply to projects where the formal advertised sealed bid procedure is not used. Whenever non-signatory and/or non-union contractors appear on a public works plan holders list and where the prevailing wage determination is less than that which is provided for in the current Master Labor Agreement, the employer signatory to the 2014-2019 Laborers' Master Agreement may bid the project pursuant to the prevailing wage determination attached to and part of the bid specifications for that project. Payments to the Health and Welfare Trust Fund shall be maintained at the Laborers' Master Agreement rates.  In no event shall wages be frozen for more than thirty-six (36) months on any one project. Employers should notify the appropriate local Union whenever utilizing this provision.

**Section 19      Wages Applicable to Classifications**

Wage rates shall be recognized as applying to classifications rather than to persons and any worker performing work shall be paid at the rate which the classification of their work calls for, except when it is necessary to temporarily transfer workers from one classification to another, in which event such workers shall be paid on the basis of the highest rate and the duration of payment at the highest rate shall be reckoned by the day and the half day.

When workers are requested for one classification and this work is no longer available at the rate and type of work they were requested for, then the workers have the right to accept or reject the employment offered.  If the worker so desires, worker shall be given a written notice of reduction in force, stating that the classification that the worker was originally hired for is no longer available; or the worker may have the choice of a lesser rate of pay.

**Section 20A   Overtime Rates, Hours and Working Conditions**

1.    Work Day

Eight (8) consecutive hours (exclusive of meal period), shall constitute a day's work for straight time rates unless the job or project is on a four-ten (4 x 10) hour day work week in which case the workday shall be ten (10) consecutive hours (exclusive of meal period) at straight time rates.  (If all basic Crafts employed by the Individual Employer on the job site and/or contract, are employed on the basis of a four-ten (4 x 10) hour day work week, the Laborers' shall work on the same basis.)

2.    Work Week

On single shift work and on the first shift of a multiple shift operation, five (5) consecutive days of eight (8) consecutive hours (exclusive of meal period), Monday through Friday, shall constitute a week's work except as otherwise provided for in this Agreement.   The regular starting time of such shift shall be between 6:00 a.m. and 9:00 a.m.

(a)    Where in any locality, existing traffic conditions, job conditions or weather conditions render it desirable to start the day shift at an earlier hour, not earlier than 5:00 a.m., or a later starting time not later than 10:00 a.m., the Individual Employer is permitted to do so.

(b)    Special Single Shift*:   When the Individual Employer produces evidence in writing to the appropriate Local Union or the Union of a bona fide job requirement which certifies that work can only be done outside the normal shift hours, and notifies the appropriate Local Union or the Union at least three (3) days prior to the start of such special shift, the Individual Employer may initiate such special shift of eight (8) consecutive hours, exclusive of meal period, Monday through Friday. Such shift shall be in accordance with the provisions of subsection 5(a) of this Section.  Provided, however, if by direction of the Contracting Authority, the bid specifications require it, or congestive traffic conditions on Fridays are such that work conditions would be unsafe for employees, or counter-productive to the performance of work, the special single shift may commence on Sunday with double time (2x) to be paid from the start of the shift to 8:00 p.m. and the applicable straight-time rate paid from 8:00 p.m. until completion of the eight (8) hour special single shift.

Special single shifts may be used in conjunction with any other shifts.  The special single shift premium shall only apply to that work that is mandated to be performed outside of the normal shift hours. All other work on the project performed during the normal day shift hours shall be paid at the regular rate of pay.

*NOTE:  Special Single Shift rates Area "A" $3.00/hr., Area "B" $2.85/hr. over classification.

(c)    Four-ten (4 x 10) Hour Work Week:  An Individual Employer may establish a work week of four (4) consecutive days of ten (10) consecutive hours.  Applicable overtime rate shall be paid for all work before a shift begins, after ten (10) hours, and on Saturdays, Sundays and holidays.   In the event two (2) shifts are employed, ten (10) consecutive hours' work, (on the 2nd shift) exclusive of meal period, shall constitute a shift's work for which ten (10) hours shall be paid.   Provided, further, all shifts are worked the same four (4) consecutive days during a four-ten (4 x 10) hour day work week, except as may be changed by mutual agreement.   All hours in excess of forty (40) hours in any one (1) week shall be compensated at the applicable overtime rate.

(d)    In the event that work cannot be performed Monday through Friday or Monday through Thursday

four-ten (4 x 10) hour day work week) because of inclement weather, major mechanical breakdown or lack of materials beyond the control of the Individual Employer, employees (at their option) may make up such day on Friday or Saturday, whichever the case may be, and shall be paid at the applicable straight time rate.

(e)     Notwithstanding the above, it shall not be a violation of this Agreement to start individual employees at no more than one (1) hour prior to the regularly established starting time.

3.      On shift work, the day shift, eight (8) hours' work for eight (8) hours' pay.  When two (2) shifts are employed for five (5) or more consecutive days, eight (8) consecutive hours (exclusive of meal period), shall constitute a day of work, for which eight (8) times the straight time hourly rate shall be paid at the Second Shift Premium rate.  When three (3) shifts are employed for five (5) or more consecutive days, seven and one-half (7½) consecutive hours (exclusive of meal period) shall constitute a day of work, for which eight (8) times the straight time hourly rate shall be paid for the second shift.  The third shift shall be seven (7) hours for eight (8) hours pay.  On two (2) shift operations, the first shift shall have a regular starting time not earlier than 5:00 a.m., and not later than 8:00 a.m.  On three (3) shift operations, the first shift shall start at 8:00 a.m.  Shifts shall run consecutively with not more than one (1) hour between shifts.

Two Shift Operations.  The second shift differential is ($3.00/hr – Area A and $2.85/hr – Area B) incorporated in Supplement No. 1 of this Agreement.

The Friday graveyard shift, though coming off work Saturday morning, is to be considered working Friday.

Work performed after 8:00 a.m. Saturday morning shall be deemed Saturday work.

The Saturday graveyard shift, though coming off work Sunday morning, is to be considered working Saturday.  Work performed after 8:00 a.m. Sunday morning shall be deemed Sunday work.  The Sunday graveyard shift, though coming off work Monday morning, is to be considered working Sunday, with the exception that a graveyard shift employee who has worked seven (7) or more hours prior to the scheduled starting time of the Monday day shift and continues to work after starting time shall continue to receive the double time (2x) wage rate.

4.      Weekends and Holidays.  One and one-half (1½) times the regular straight time hourly rate shall be paid for all work on Saturdays (except make-up day) and before a shift begins and after it ends.  Double the regular straight time hourly rate shall be paid for all work on Sundays and holidays.  On two shift operations, Laborers working a complete second shift of shift work on Saturdays, Sundays and holidays shall be paid eight (8) hours of pay at the appropriate overtime rate for eight (8) hours of work.  For work on Saturdays, Sundays and holidays on a three-shift operation, Laborers working a complete second shift shall be paid eight (8) hours of pay at the appropriate overtime rate for seven and one-half (7-1/2) hours of work.  Laborers working a complete third shift shall be paid eight (8) hours of pay at the appropriate rate for seven (7) hours of work.

5.      Minimum Hours

(a)     From April 1 to November 14, the hours of employment shall be reckoned by the day and half day.  From November 15 to March 31, the hours of employment shall be reckoned by the day, three-quarter day and half day.  The fraction of a half or three quarter day to be paid for as a half or three-quarter day.  Overtime hours, Monday through Friday, shall be reckoned by the hour and half hour.  If after work is begun, work is suspended on account of weather conditions, not less than four (4) hours (or five (5) hours on a four-ten (4 x 10) shift) at the applicable rate shall be paid for work performed and any time thereafter shall be reckoned by the hour.

(b)     Whenever a Laborer is called out to work on Saturdays, Sundays or holidays (except on make-up

days), he/she shall be paid at least four (4) hours, five (5) hours on a four-ten (4 x 10) hour shift, at the applicable overtime rate.  All time worked beyond the first four (4) consecutive hours, five (5) consecutive hours on a 4 x 10 shift, on Saturdays, Sundays and holidays shall be reckoned by the hour at the applicable overtime rate.

On shift work, the above shall apply to Laborers called out to work on the day shift and second shift of a two (2) shift operation only.  If three (3) shifts are employed, the above shall apply except that three and one-half (3½) hours worked shall be paid as four (4) hours worked, seven (7) hours worked shall be paid as eight (8) hours worked, and hours worked in excess of three and one-half (3½) hours but less than seven (7) hours shall be paid on a pro rata basis, except as modified by a four-ten (4 x 10) hour day work week.

NOTE:  Shift differential applies only to the second shift of a two (2) shift operation.  Shift differential is as follows:  Area "A" $3.00/hr., Area "B" $2.85/hr. over the appropriate classification rate.

6.      Tide Work:  When an employee or employees are called out to work tide work, the employee shall receive a guarantee of a full shift at straight time.  The overtime rate for Saturday, Sunday and holidays or work in excess of eight (8) hours in any twenty-four (24) hour period shall be the same rate of overtime pay as set forth in this Agreement.  The hours between 8:00 a.m. and 5:00 p.m. shall be worked at straight time.  Work performed between 5:00 p.m. and 8:00 a.m. shall be considered overtime work.

7.      Exceptions:  Watchpersons may be required to work any five (5) days out of the week on any shift and may also be required to do job office clean-up work.  The overtime rates provided in paragraph 4 of this Section 20A shall apply only to watchpersons, cleaning and washing windows, service landscape laborers for work in excess of eight (8) hours in any one (1) day, or forty (40) hours per week.

Employees cleaning and washing windows (after initial cleaning) and service landscape laborers (establishment warranty period), may be required to work any five (5) days out of the week on any shift.

When the Individual Employer sets up a camp or boarding house on a project, the charge made to the employee for board and room shall not exceed the subsistence rate incurred during a calendar week.

8.      Flagpersons: Any employees such as a flagperson shall be furnished adequate relief for use of toilet facilities.

## Section 20B    Parking

In the event free parking facilities are not available within five (5) blocks of a job site, the Individual Employer will provide such parking facilities and the Individual Employer shall have the right to designate parking areas to be used.  Where, because of congested parking conditions, it is necessary to use public parking facilities, the Individual Employer will reimburse the employees for the cost of such parking upon being presented with a receipt or voucher certifying to the cost thereof, submitted weekly.  Such reimbursement is to be made on a weekly basis or at the conclusion of the project, whichever occurs earlier.

On remote jobs when the access to where the work is being performed (at a job or project or within a job or project) is unsuitable, and no parking facilities are provided within a five (5) minute walk from where the work is being performed, the Individual Employer shall transport the employees to and from the place where the work is being performed, and such transporting shall be one-half (½) on the Individual Employer's time and one-half (½) on the employee's time.

**Section 21       Status of Foremen**

When the Individual Employer determines that a foreman is required to supervise a crew of Laborers, he/she shall be or become a member of this Union in accordance with Section 3A of this Agreement.

**Section 22       Steward**

A.       The Union may select an employee on the job as a Steward and he/she shall be a working employee. Written notification shall be given to the Individual Employer of such assignment.  The Union agrees that the Steward's duties shall be performed as expeditiously as possible and the Individual Employer agrees to allow him/her a reasonable amount of time for the performance of his/her duties.  The Individual Employer will give the Union forty-eight (48) hours advance written notice before terminating the Steward unless the job is completed or he/she is discharged for cause.

B.       The Steward shall be limited to and shall not exceed the following duties and activities:

   (1)       Check the dispatch of each employee dispatched under the terms of this Agreement.

   (2)       Report to his/her Business Representative all violations of this Agreement.

   (3)       Report to his/her Business Representative any employee covered by this Agreement who, during his/her shift, leaves the job site without giving the Individual Employer and the Steward prior notice.

C.       The Steward shall not:

   (1)       Stop the Individual Employer's work for any reason or tell any workers or any employee covered by this Agreement that he/she cannot work on the job.

Infraction of either of the two rules set forth above in (C) (1) shall be cause for immediate dismissal of the Steward without any prior notice.

**Section 23       Recognized Holidays**

The following days are recognized as holidays:  Every Saturday and Sunday in the year, except as otherwise provided herein:  New Year's Day, President's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Day After Thanksgiving and Christmas Day.

If any of the above holidays fall on Sunday, the Monday following shall be considered a holiday.

Martin Luther King Day will become a recognized holiday when and if the five basic crafts adopt it as a holiday.

**Section 24       Gunite, Shot Crete, Panel Crete and Similar Type Work including all Placing, Finishing and Patching of Shot Crete or Gunite**

The wages and certain other conditions not specifically enumerated elsewhere in this Agreement for the Gunite, Shot Crete, Panel Crete and similar type work including all placing, finishing and patching of shot crete or gunite are set forth in Supplement No. 2, attached hereto and made a part hereof, as if set out in full herein covering the territory in which the Agreement is to apply.

**Section 25      Wrecking Work; Gardening, Horticultural and Landscaping Work**

The wages and certain other conditions not specifically enumerated elsewhere in this Agreement for Wrecking Work are set forth in Supplement No. 3; for Gardening, Horticultural and Landscaping Work are set forth in Supplement No. 4. Each of the Supplements referred to herein is made a part hereof, as if set forth in full herein.

**Section 26      Liability of the Parties**

It is mutually understood and agreed that neither the Employer, any Individual Employer, the Union nor any Local Union shall be liable for damages caused by the acts or conduct of any individual or group of individuals who are acting or conducting themselves in violation of the terms of this Agreement without authority of the respective party, provided that such action or conduct has not been specifically authorized, participated in, fomented or condoned by the Employer, the Individual Employer, the Union or the Local Union, as the case may be.

In the event of any unauthorized violation of the terms of this Agreement, responsible and authorized representatives of the Union, Local Union, the Employer or the Individual Employer, as the case may be, shall promptly take such affirmative action as is within their power to correct and terminate such violation for the purpose of bringing such unauthorized persons into compliance with the terms of this Agreement. Such individuals acting or conducting themselves in violation of the terms of this Agreement shall be subject to discipline, up to and including discharge.

**Section 27      Employees Not To Be Discharged For Recognizing Authorized Picket Lines**

The parties to this Agreement recognize that it is vital to the unionized segment of the construction industry that the work opportunities of the employee and the Individual Employer signatory to this Agreement proceed without interruption because of disputes involving unions not signatory to an Agreement with the Employer.

No employee covered hereby may be discharged by any Individual Employer for refusing to cross a picket line established by a Local Union of the basic crafts.

**Section 28A    Health and Welfare Plan, Pension/Annuity Plan, Vacation-Holiday-Dues Supplement Plan, Training-Retraining/Apprenticeship Plan**

In continuation of the Laborers' Health and Welfare Trust Fund for Northern California, the Laborers' Pension/Annuity Trust Fund for Northern California, the Laborers' Vacation-Holiday-Dues Supplement Trust Fund for Northern California and the Laborers' Training-Retraining/Apprenticeship Trust Fund for Northern California (provided for in Trust Agreements dated March 4, 1953, August 2, 1963, April 1, 1985, June 4, 1963, November 19, 1968 and December 31, 1975, respectively, as amended and modified, and the appropriate plans adopted thereunder), each Individual Employer shall pay hourly contributions for each hour paid for and/or worked, including overtime pay, shift pay, show-up time pay and similar payments in accordance with the schedule specified in this Section, as follows:

| | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| Health & Welfare | $6.54 | $ * | $ * | $ * | $ * |
| Retiree Health & Welfare | $ .30 | $ * | $ * | $ * | $ * |
| Pension | $8.96 | $ * | $ * | $ * | $ * |
| Annuity | $1.14 | $ * | $ * | $ * | $ * |
| Vacation/Holiday/Dues Supplement | $2.63 | $ * | $ * | $ * | $ * |
| **Training-Retraining/Apprenticeship/LECET | $ .41 | $ * | $ * | $ * | $ * |
| Contract Administration Fund | $ .10 | $ * | $ * | $ * | $ * |

| ***Industry Stabilization Fund | $ .14 | $ * | $ * | $ * | $ * |
|---|---|---|---|---|---|

To be allocated among wages and fringe benefits at the discretion of the Union.

* Allocation shall become effective thirty (30) days after allocation notice is received, but in no event earlier than June 30, 2014, June 29, 2015, June 27, 2016, June 26, 2017 or June 25, 2018.

**Effective 6/26/06 four cents ($.04) per hour is earmarked for Laborers-Employers Cooperation and Education Trust (L.E.C.E.T.)

***Effective 12/1/12 seven cents ($.07) per hour is earmarked for California Alliance for Jobs, one cent ($.01) per hour  is earmarked for the Construction Industry Force Account Council (CIFAC), and five cents ($.05) per hour is earmarked for the Foundation for Fair Contracting.

Each Individual Employer shall be subject to and entitled to the benefits of all of the provisions of the Trust Agreements specified herein establishing said Funds and any amendment or modification thereto.  In order to provide for benefits to employees without disruption during periods of contract negotiations and to assure an orderly means of collecting Trust Fund contributions during such periods, each signatory employer agrees that he/she shall be obligated to contribute to each and every Trust Fund referred to in this Agreement for any period following their termination date of this Agreement unless and until a lawful impasse occurs or until a successor Agreement is negotiated.  Each signatory employer further agrees that any and all said Trust Funds may enforce this obligation by action to collect such delinquent contributions filed in any court of competent jurisdiction.

The Health & Welfare Plan shall be supplemented to provide that the Trustees shall apply amounts from the contributions specified in this Agreement to such Plan for the purpose of providing benefits to employees retired pursuant to the provisions of the Laborers Pension Trust Fund for Northern California.

The parties agree that the Trustees of the Vacation-Holiday-Dues Supplement Trust Fund may allocate up to twenty-five percent (25%) of the applicable contributions for Holiday pay.

The Union and the Employer agree that the Individual Employers covered by the Master Agreement may continue the coverage of their supervisory personnel above the rank of foreman in the Laborers' Health & Welfare Trust Fund for Northern California, the Laborers' Pension/Annuity Trust Fund for Northern California, the Laborers' Vacation-Holiday-Dues Supplement Trust Fund for Northern California, the Laborers' Training-Retraining/Apprenticeship Trust Fund for Northern California by paying into all Trusts monthly on the basis of one hundred seventy (170) hours per month in accordance with the schedules set forth in the Master Agreement, regardless of the hours worked by any such employee in a month, provided, however, the Individual Employer having made one (1) payment on an employee shall continue to make such a payment so long as the employee is in his employ.

Any Individual Employer who is found to be delinquent as a result of an audit will pay and satisfy such delinquency with accrued interest and in addition pay liquidated damages.  All delinquent contributions shall bear simple interest at the rate of one and one-half percent (1.5%) per month until receipt of payment.  Subject to accounting verification, liquidated damages shall be assessed on delinquent contributions at a flat rate of one hundred and fifty dollars ($150.00) per month to reflect the internal administrative costs incurred by the trust administrators in monitoring and tracking such late contributions.  The cost of any audit shall be borne by the Individual Employer if the delinquency disclosed by the audit is in excess of one thousand dollars ($1,000.00) and is not the result of a clerical error.  When economic conditions warrant, the Trustees of the Trust Funds specified in this Agreement are authorized to amend the liquidated damages and interest provisions of this Agreement.  Any adjustments implemented by the Trustees shall be reflective of true increases in the administrative and legal costs associated with the recovery of delinquent Trust Fund contributions.

## Section 28B   Delinquency Withdrawals

In the event that the Board of Trustees of a fund into which the Individual Employers are required to pay, determine that an Individual Employer is delinquent in the making of any payments required by Section 28A hereof, it shall not be a violation of this Agreement, so long as such delinquency continues, if the Union takes economic action against such Individual Employer and such economic action shall not be a strike or work stoppage within the terms of this Agreement.  In the event that any employees of any Individual Employer should be withdrawn pursuant to any similar clause in any agreement between the Collective Bargaining Representative of the Employer and any other Union, then the Union may respect such withdrawal, and for the period thereof, may refuse to perform any work for such Individual Employer and such refusal for such period shall not be a violation of this Agreement.  Any employees so withdrawn or refusing to perform any work as herein provided shall not lose their status as employees but no such employee shall be entitled to claim or receive any wages or other compensation for any period during which he has been so withdrawn or refused to perform any work.

## Section 28C   Security For Individual Employer Payments Into Trust Funds

Each Individual Employer delinquent by one (1) or more months in making the payments set forth in Section 28A above shall be notified by mail by the Administrator of the Trust or Trusts applicable of such delinquency.  Copies of such notices shall be sent to the Employer and to the Union.  Each such delinquent Individual Employer shall, within five (5) days of the receipt of such notice (by certified mail), give a satisfactory bond in a sum equal to two (2) times the amount of the delinquency.  Such amounts are to be determined by the Administrator of the Trust or Trusts applicable.  Such bond is not in any way to be construed as in lieu of any payments required under this Agreement.

All such bonds shall be deposited with the Administrator and shall be in a form acceptable by the Administration of the various Trusts.

If the bond must be used to make any payments under Section 28A, the money shall be prorated among the amounts owed by such Individual Employer, with the first priority to the Vacation-Holiday- Dues Supplement Trust Fund, and the balance dispersed equally to the Health & Welfare, Pension/Annuity and Training-Retraining/Apprenticeship Trusts.

Whenever an Individual Employer fails to deposit a satisfactory bond within the time provided by this Section, if the notice herein provided for has been given, the Local Union shall not be required to dispatch employees, and further economic action by the Union to obtain compliance of this Section will not be a violation of Section 8 of this Agreement.

Any employees so withdrawn or refusing to perform any work as herein provided, shall not lose their status as employees, but no such employee shall be entitled to claim or receive any wages or other compensation for any period during which he/she has been so withdrawn or refused to perform any work.

Whenever any Employer covered by this Agreement is delinquent with respect to the payment of any contributions or other sum of money due to any Trust Fund specified in this Agreement, the Union may withdraw workers and place appropriate pickets at the premises of the Employer or places where said Employer is performing work.

## Section 28D   Supplemental Dues

Effective July 1, 2013, for all work performed upon authorization as required by law, the amount of ninety-one cents ($.91) per hour  for each hour paid for or worked shall be transmitted from the Vacation-Holiday benefit of each Laborer and shall be remitted directly to the Union.

This amount shall not be deemed to be part of the Vacation-Holiday benefit but is an amount specifically agreed to as a Supplemental Dues benefit. The amount of the Supplemental Dues transmittal shall be specified on a statement sent to the Laborer. Such remittance shall be made to the Union not less than twice per year.

The Union shall bear all responsibility and liability for ensuring that any and all sums received as supplemental dues are supported by proper written authorization from the employee. The Union shall indemnify, defend and hold the Individual Employer harmless to the maximum extent permitted by law from any and all claims, liability and damages arising from contentions and/or findings that supplemental dues have been collected in an unauthorized or otherwise improper manner.

### Section 28E   Wage and Fringe Benefit Increase

| June 30, 2014 | $1.35 * ** **** |
| June 29, 2015 | $1.40* ** |
| June 27, 2016 | $1.50* ** |
| June 26, 2017 | $1.60* ** |
| June 25, 2018 | $1.65* ** *** |

* The parties agree that sufficient contributions will be made available from these increases to the Pension fund to support any rehabilitation/funding improvement schedule adopted by the bargaining parties. Additional money required for such rehabilitation/funding improvement schedule shall be reallocated from the existing wages and/or fringe benefits.

** To be allocated among wages and fringe benefits at the discretion of the Union.

*** If an early extended Agreement is negotiated prior to June 25, 2018, Individual Employers who do not extend said Agreement shall be subject to an additional twenty-five cents ($0.25) per hour increase, effective June 25, 2018, for a total increase of one dollar and ninety cents ($1.90). If an early extended Agreement is not negotiated prior to June 25, 2018, the total increase on June 25, 2018 shall be one dollar and ninety cents ($1.90).

**** Effective June 30, 2014, Individual Employers who have not signed on to this extended agreement will be subject to an additional $.25 increase, allocated to Annuity.
It is agreed effective June 30, 2014, fifty cents ($.50) per hour will be allocated to wages, fifty cents ($.50) per hour will be allocated to Pension, twenty cents ($.20) per hour will be allocated to Health & Welfare, thirteen cents ($.13) per hour will be allocated to Annuity, and two cents ($.02) per hour will be allocated to Training, and two cents ($.02) will be allocated to Industry Stabilization (Foundation for Fair Contracting). Per the 2012-2015 Master Agreement, fifty cents ($.50) will also be redirected from Pension back to Annuity.

There shall be an additional one (1) dollar and forty (40) cents per hour increase effective on 6/29/15, an additional one (1) dollar and fifty (50) cents increase effective 6/27/16, an additional one (1) dollar and sixty (60) cents increase effective 6/26/17, and an additional one (1) dollar and sixty-five (65) cents increase effective on 6/25/18 (subject to $.25 increase as stated above).

The Union may elect at its option upon ninety (90) days' notice to the Employer, prior to 6/29/15, 6/27/16, 6/26/17 or 6/25/18, to allocate each increase to any or all of the following:

   1. Wages

2.   Health and Welfare
3.   Retiree Health and Welfare
4.   Pension/Annuity
5.   Vacation-Holiday-Dues Supplement
6.   Training-Retraining/Apprenticeship
7.   Industry Stabilization Fund
8.   Laborers-Employers Cooperation and Education Trust (L.E.C.E.T.)

provided, if any or all of the allocation is made to Fringe Benefits, such Fringe Benefits shall be effective on 6/29/15, 6/27/16, 6/26/17 or 6/25/18 as applicable.

In the event the Laborers Health and Welfare Trust Fund falls below a six (6) month reserve, any package increase negotiated by the collective bargaining parties, shall be reviewed at least ninety (90) days prior to the effective date of such increase, and by mutual agreement such monies as are deemed necessary to provide sufficient reserve (not less than six (6) months), shall be allocated to the Health and Welfare Trust Fund. Such monies as are determined appropriate for this allocation shall have as their intent to build a six (6) month reserve.

When the Pension Plan is fully funded (100%), the parties agree to enter into discussions for the disposition of the monies that have been allocated for the rehabilitation/funding improvement plan.

## Section 29    General Saving Clause

It is not the intent of either party hereto to violate laws, rulings or regulations of any governmental authority or agency having jurisdiction of the subject matter or of this Agreement, and the parties hereto agree that in the event any provisions of this Agreement are finally held or determined to be illegal or void as being in contravention of any such laws, rulings or regulations; nevertheless, the remainder of the Agreement shall remain in full force and effect, unless the parts so found to be void are wholly inseparable from the remaining portion of this Agreement. The clauses hereof relating to "Hiring," Section 3A hereof, and "No Cessation of Work," Section 8 hereof, are intended to be inseparable and mutually interdependent. Should either of such sections be held or determined to be illegal or void for any reason, then both of said clauses shall forthwith become of no further force or effect, and neither party shall by implication be bound thereby. The parties agree that if and when any provisions of this Agreement are finally held or determined to be illegal or void, they will then promptly enter into lawful negotiations concerning the substance thereof.

It is the intent of the parties to this Agreement that each and every, all and singular, of the provisions of this Agreement be fully in accordance with Federal and State Law. Its interpretation and the interpretation of each of the provisions of this Agreement is therefore intended to apply no broader than that permitted by law.

## Section 30    Change of Name or Style

This Agreement is binding upon each Individual Employer regardless of whether he/she or it changes the name or style or address of his/her or their business. Each Individual Employer shall give notice in writing to said District Council of any intent to change the name, style or address of his/her or its business, or to perform business under more than one name or style or at more than one address, prior to the adoption of a new or different name, style or address, or the addition of new names or styles or addresses, as specified herein.

Nothing in this paragraph shall be construed as adding to the scope of work covered by this Agreement.

## Section 31    Warranty

Each of the persons executing this Agreement on behalf of their respective Employers or Unions hereby warrants his/her authority to execute this Agreement and to bind the respective party on whose behalf he/she signs.

Each of the persons executing this Agreement on behalf of their respective Employers or Unions hereby warrants his/her authority to execute this Agreement and to bind the respective party on whose behalf he/she signs.

## Section 32     Effective and Termination Date

This Agreement shall be effective as of the 1st day of July 2014, and remain in effect without reopening for any purpose until the 30th day of June 2019, and shall continue from year to year thereafter, unless either of the Collective Bargaining Representatives shall give written notice to the other of a desire to change the wages, hours and working conditions hereof not more than ninety (90) and not less than sixty (60) days prior to June 30 of any succeeding year.

The parties to this Agreement recognize the necessity of assuring the competitive position of the parties within the industry during the term of this Agreement.  Consistent with that recognition, the parties will continually monitor the effectiveness of this Agreement relative to specific geographic or market area and will endeavor, by mutual agreement, to initiate such modifications to the Agreement during its term as may be necessary to assure the work opportunities of the employees and the competitive position of the Individual Employers.

It is agreed that in the event either party should exercise its rights under the paragraph first above set out, they will for a period of sixty (60) days prior to the 30th day of June, 2018, or June 30th of any succeeding year bargain with each other with respect to all wage rates, working conditions and hours of employment for the work herein covered.

Should an impasse be reached during the course of future negotiations to amend and/or extend the present Agreement, or during the course of negotiations over a new agreement, either party may submit the items in dispute to the Dispute Settlement Board established in the UCON-Basic Trades Joint Labor Management Committee Impasse Settlement Plan for resolution.  The findings of the Dispute Settlement Board shall be binding on the parties.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals by respective officers duly authorized to do so, this 1st day of May, 2014.

**FOR THE EMPLOYER:**

**UNITED CONTRACTORS**

By:    Mark Breslin, CEO

**FOR THE UNION:**

**NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA**

By:     **Oscar De La Torre, Business Manager**

## ATTACHMENT A   NOTIFICATION OF TERMINATION FORM

### (Please type or print clearly.)

**Instructions:  Immediately upon termination of an employee for any cause other than lack of work, please mail, fax or scan and e-mail this completed form to the District Council or Local Union.**

**Employer Completing This Form:**

**Company Name:** _____

**Address:** _____

**Phone:** _____

**Authorized Signature:** _____

**Name of Authorized Person:** _____


**Name of Employee Being Terminated:** _____

**Date of Termination:** _____

**Reason for Termination (Check One or More)**

    ____       **Excessive Absenteeism**

    ____       **Excessive Tardiness**

    ____       **Lack of Required Skills (This area cannot be checked for apprentices.)**

    ____       **Insubordination**

    ____       **Theft**

    ____       **Other (please specify):** _____

                _____

**SUPPLEMENT NO. 1        LABORERS WAGE RATES**

**WAGE RATES:** In each group, two (2) different wage rates will apply for each classification.

**Wage Rate A** - will apply to the following six (6) counties:

Alameda, Contra Costa, Marin, San Francisco, San Mateo and Santa Clara.

**Wage Rate B** - will apply to the following forty (40) counties:

Alpine, Amador, Butte, Calaveras, Colusa, Del Norte, El Dorado, Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Mariposa, Mendocino, Merced, Modoc, Monterey, Napa, Nevada, Placer, Plumas, Sacramento, San Benito, San Joaquin, Santa Cruz, Sierra, Shasta, Siskiyou, Solano, Sonoma, Stanislaus, Sutter, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba.

Labor Foremen -shall receive one dollar and fifty cents ($1.50) per hour above any classification of this Agreement working under his direction.  Effective June 29, 2015, Labor Foreman shall receive two dollars ($2.00) per hour above any classification in this Agreement working under his direction.  Effective June 26, 2017, Laborer Foreman shall receive two dollars and twenty-five cents ($2.25) per hour above any classification in this Agreement working under his direction.

A $3.00/hour premium (shift differential) shall be added to the base rate of Wage Rate A and a $2.85/hour premium (shift differential) shall be added to the base rate of Wage Rate B for the second shift of two (2) shift operations and for special single shifts as defined in Section 20A.

Premiums (shift differential) are not applicable to three (3) shift operations.

A $3.00/hour premium (zone pay) shall be added to the base rate of Wage Rate B for work performed outside the geographic area as defined in Supplement No. 6.

**CONSTRUCTION SPECIALIST - WAGE RATE**

**EFFECTIVE DATE**

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $29.09 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $28.09 | $1.40* | $1.50* | $1.60* | $1.65* |

**CLASSIFICATIONS OF CONSTRUCTION SPECIALIST**

Asphalt Ironers and Rakers
Chainsaw
Laser Beam in connection with Laborers' work
Masonry and Plasterer Tender
Cast in place manhole form setters
Pressure pipelayers
Davis Trencher - 300 or similar type (and all small trenchers)
State Licensed Blaster as designated
Diamond Drillers
Multiple Unit Drills
High Scalers (including drilling of same)

Certified Welder
Certified Traffic Control Supervisor
Directional Boring Machine/Hydraulic Drills
Mini Max Operator
Operator of Laser for grade checking for pipe
Water Truck Operator (2,000 gallons or less)

New or additional classification subject to 14A of this Agreement

## GROUP 1 - WAGE RATE

**EFFECTIVE DATE**

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $28.39 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.39 | $1.40* | $1.50* | $1.60* | $1.65* |

## CLASSIFICATIONS OF GROUP 1

Asphalt Roller/Compacter (Walk Behind)
Asphalt Saw/Cutting, including self-propelled
Asphalt Spreader Boxes (all types)
Barko, Wacker and Similar Type Tampers
Bobcat/Skidsteer
Buggymobile
Caulkers, Banders, Pipewrappers, Conduit Layers, Plastic Pipe Layers
Certified Asbestos & Mold Removal Worker
Certified Hazardous Waste Worker (Including Lead Abatement)
Compactors of all types
Concrete and Magnesite Mixer and ½ yard
Concrete Pan Work
Concrete Sanders, Concrete Saw Cutting, including self-propelled
Cribbers and/or Shoring
Cut Granite Curb Setter
Dri pak-it Machine
Faller, Logloader and Bucker
Form Raisers, Slip Forms
Green Cutters
Headerboard Men, Hubsetters, Aligners by any method
High Pressure Blow Pipe (1-1/2" or over, 100 lbs pressure/over)
Hydro Seeder & Similar Type
Jackhammer Operators
Jacking of Pipe over 12 inches
Jackson and Similar Type Compactors
Kettlemen, Potmen and men applying asphalt, Lay Kold, Creosote, Lime, caustic and similar type materials,
    (applying means applying dipping or handling of such materials)
Lagging, Sheeting, Whaling, Bracing, Trenchjacking, Lagging hammer
Magnesite, Epoxy resin, Fiber Glass and Mastic Workers (wet/dry)
No joint pipe and stripping of same, including repair of voids
Pavement Breakers and Spaders, including tool grinder
Perma Curbs
Pipe Wrappers, Pipe Fusers

Pipelayers (including grade checking in connection with pipe-laying)
Plastic and Rigid Pipe Layers
Precast-manhole setters
Pressure Pipe Tester
Post Hole Diggers - Air, Gas and Electric Power Broom Sweepers
Power Tampers of all types, except as shown in Group 2
Ram Set Gun and Stud Gun
Riprap - Stonepaver and Rock-slinger, including placing of sacked concrete and/or sand (wet or dry) and Gabions
    and similar type
Rock Slicer, Rock Splitter
Rotary Scarifier or Multiple Head Concrete Chipping Scarifier
Roto and Ditch Witch
Rototiller
Sand Blasters, all types, Potmen, Gunmen and Nozzlemen
Self Propelled Brooms Under 65hp
Signaling and Rigging
Tank Cleaners
Tree Climbers
Trenchless Technology Laborer – Pipe installation, bursting, relining or similar
Turbo Blaster
Vibra-Screed - Bull float in connection with Laborers' work
Vibrators
Water Meter Installer

## GROUP 1(a) - WAGE RATE

**EFFECTIVE DATE**

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $28.61 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.61 | $1.40* | $1.50* | $1.60* | $1.65* |

## CLASSIFICATIONS OF GROUP 1(a)

Joy Drill Model TWM-2A
Gardener - Denver Model DH-143 and similar type drills.  (In accordance with Memorandum of Understanding
    between Laborers and Operating Engineers dated at Miami, Florida, February 3, 1954.)
Track Drillers
Jack Leg Drillers
Wagon Drillers
Mechanical Drillers -- All types regardless of type or method of power
Mechanical Pipe Layer -- All types regardless of type or method of power
Blasters and Powdermen
All work of loading, placing and blasting of all powder and explosives of whatever type, regardless of method used
    for such loading and placing

Tree Topper
Bit Grinder

## GROUP 1(b) - WAGE RATE

Sewer Cleaners shall receive four dollars ($4.00) per day above Group 1 wage rates.  "Sewer Cleaner" means any workman who handles or comes in contact with raw sewage in small diameter sewers.  Those who work inside recently active, large diameter sewers, and all recently active sewer manholes shall receive five dollars ($5.00) per day above Group 1 wage rates.

## GROUP 1(c) WAGE RATE

**EFFECTIVE DATE**

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $28.44 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.44 | $1.40* | $1.50* | $1.60* | $1.65* |

## CLASSIFICATIONS OF GROUP 1(c)

Burning and welding in connection with Laborers' work Synthetic thermoplastics and similar type welding.

## GROUP 1(d)

Maintenance and Repair Trackmen and Road Beds and all employees performing work covered by this Agreement shall receive twenty-five cents ($.25) per hour above their regular rate for all work performed on underground structures not specifically covered herein.  This paragraph shall not be construed to apply to work below ground level in open cut.  It shall apply to cut and cover work of subway construction after the temporary cover has been placed.

## GROUP 1(e) - WAGE RATE

**EFFECTIVE DATE**

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $28.94 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.94 | $1.40* | $1.50* | $1.60* | $1.65* |

## CLASSIFICATIONS OF GROUP 1(e)

Work on and/or in Bell Hole Footings and Shafts thereof, and work on and in Deep Footings (Deep Footing is a hole fifteen (15) feet or more in depth).  In the event the depth of the footing is unknown at the commencement of excavation, and the final depth exceeds fifteen (15) feet, the contractor agrees to pay the deep footing wage rate to all employees for each and every day worked on or in the excavation of the footing from the date of inception.

All work in the construction of tunnels and shafts shall be performed in accordance with the provisions of the Laborers' Tunnel Master Agreement for Northern California and the Individual Employer agrees to comply with all of the provisions of said Tunnel Agreement in such work.

Shaft is an excavation over fifteen (15) feet deep of any type, generally vertical in nature, but may decline from the vertical, and whose depth is greater than its largest horizontal dimension.  It is specifically understood that Bell Hole Footings and Deep Footings are subject to the provisions of this Agreement, and all Shafts, Stopes, Raises and Tunnels are subject to the provisions of the Tunnel Master Agreement specified herein.

## GROUP 1(f) - WAGE RATE

Wire winding machine in connection with Guniting or Shot Crete.  (See Supplement No. 2)

**EFFECTIVE DATE**

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **Aligner -** | | | | | |
| **RATE A** | $28.97 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.97 | $1.40* | $1.50* | $1.60* | $1.65* |
| | | | | | |
| **Helper -** | | | | | |
| **RATE A** | $27.99 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $26.99 | $1.40* | $1.50* | $1.60* | $1.65* |

## GROUP 1(g) - WAGE RATES FOR CONTRA COSTA COUNTY

**EFFECTIVE DATE**

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE** | $28.59 | $1.40* | $1.50* | $1.60* | $1.65* |

## CLASSIFICATIONS OF GROUP 1(g)

Pipelayers (including grade checking in connection with pipelaying)
Caulkers
Banders
Pipewrappers
Conduit Layers
Plastic Pipe Layer
Pressure Pipe Tester
No joint pipe and stripping of same, including repair of voids
Precast Manhole setters, cast in place manhole form setters

## GROUP 1(h)

Laborers working off or with or from Bos'n Chairs, Swinging Scaffolds, or Belts shall receive twenty-five cents ($.25) per hour above the applicable wage rate.  This premium rate shall be reckoned by the day and half day. This shall not apply to Laborers entitled to receive the wage rate set forth in Group 1(a).

## GROUP 2 - WAGE RATE

**EFFECTIVE DATE**

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $28.24 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.24 | $1.40* | $1.50* | $1.60* | $1.65* |

## CLASSIFICATIONS OF GROUP 2

Asphalt Shovelers
Cement Dumpers and handling dry cement or gypsum
Choke-setter and Rigger (clearing work)
Concrete Bucket Dumper and Chuteman
Concrete Chipping and Grinding
Concrete Laborers (wet or dry)
Drillers Helper, Chuck Tender, Nipper (One (1) Chuck Tender on single machine operation with minimum of one (1) Chuck Tender for each two (2) machines on multiple machine operations. (Jackhammers are in no way involved in this item.)
Guinea Chaser (Stakeman), Grout Crew
High Pressure Nozzlemen, Adductors
Hydraulic Monitor (over 100 lbs. pressure)
Loading and unloading, carrying and handling of all rods and materials for use in reinforcing concrete construction
Pittsburgh Chipper, and similar type brush shredders
Sloper
Single foot, hand held, pneumatic tamper
All Pneumatic, Air, Gas and Electric Tools not listed in Groups 1 through 1(f)
Jacking of Pipe - under 12 inches

## GROUP 3 - WAGE RATE

## EFFECTIVE DATE

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| RATE A | $28.14 | $1.40* | $1.50* | $1.60* | $1.65* |
| RATE B | $27.14 | $1.40* | $1.50* | $1.60* | $1.65* |

## CLASSIFICATIONS OF GROUP 3

Construction Laborers, including Bridge Laborers, General Laborers and Cleanup Laborers
Dumpman, Load Spotter
Flagperson/Pedestrian Monitor
Fire Watcher
Fence Erectors, including temporary fencing
Guardrail Erectors
Gardeners, Horticultural and Landscape Laborers (See Supplement No. 4)
Jetting
Limbers, Brush Loaders and Pilers
Pavement Markings (Button Setters/Stripers)
Maintenance, Repair Trackmen and Road Beds
Street Car and Railroad Construction Track Laborers (Rail Trackmen), including welding of rails
Temporary Air and Water Lines, Victaulic or similar
Tool Room Attendant (job site only)
Dry Utilities Laborers – Electrical and telecommunication conduit layer, joint utility trench Laborer including gas
Remediation/Land Restoration Laborer – Wetlands restoration, mitigation, or revegetation of lands (ornamental landscape not included in this classification)
Demolition Worker
Pavers, Interlocking Pavers (all types) and Interlocking Paver Machines
Erosion Control Worker
Escort Driver (Construction Zone Traffic Control Pilot Car)

Solarvoltaic (Photovoltaic Assembler and Installer) Systems
Wheelbarrow, including power driven

## GROUP 3(a) - WAGE RATE

**EFFECTIVE DATE**

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $28.14 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.14 | $1.40* | $1.50* | $1.60* | $1.65* |

## CLASSIFICATION OF GROUP 3(a)

Composite Crew Person - Shall apply only to the operation of vehicles, when operated in conjunction with Laborers duties.

## GROUP 4 - WAGE RATE

**EFFECTIVE DATE**

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $21.83 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $20.83 | $1.40* | $1.50* | $1.60* | $1.65* |

## CLASSIFICATIONS OF GROUP 4

All final cleanup work of debris, grounds and building near the completion of the project including but not limited to street cleaners. It is agreed that the Group 4 Classification is not applicable to engineering or heavy highway projects.

Cleaning & Washing Windows (subject to provisions of Section 20A)
Brick Cleaners (job site only)
Watchman (Subject to provisions of Section 20A)
Material Cleaners (job site only)

The classification "Material Cleaner" is to be utilized under the following conditions:

A.   At demolition sites for the salvage of the material.
B.   At the conclusion of a job where the material is to be salvaged and stocked to be reused on another job.
C.   The cleaning of salvage material at the Employer's job site or temporary job site yard.

The classification of "Material Cleaner" is not to be used to perform "form stripping cleaning and oiling and moving to the next point of erection."

**SUPPLEMENT NO. 2     GUNITE, SHOTCRETE, PANELCRETE AND SIMILAR TYPE WORK INCLUDING ALL PLACING, FINISHING AND PATCHING OF SHOTCRETE OR GUNITE**

Hours and working conditions and wages shall be the same as in this Master Agreement except those expressly herein provided.

## CLASSIFICATIONS/RATES PER HOUR:

Structural Nozzleman

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $29.35 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $28.35 | $1.40* | $1.50* | $1.60* | $1.65* |

Nozzleman, Gunman and Potman

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $28.85 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.85 | $1.40* | $1.50* | $1.60* | $1.65* |

Rodman

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $28.85 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.85 | $1.40* | $1.50* | $1.60* | $1.65* |

Groundman

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $28.85 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.85 | $1.40* | $1.50* | $1.60* | $1.65* |

Gunite Trainee**

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $21.83 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $20.83 | $1.40* | $1.50* | $1.60* | $1.65* |

Reboundman

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $28.26 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.26 | $1.40* | $1.50* | $1.60* | $1.65* |

General Laborers

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $28.14 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.14 | $1.40* | $1.50* | $1.60* | $1.65* |

Gunite Foreman

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $29.85 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $28.85 | $1.40* | $1.50* | $1.60* | $1.65* |

**One trainee shall be allowed for each three (3) Journeymen on a crew.  In the absence of the Journeyman, the trainee shall receive the Journeyman scale.

**Travel from Jurisdiction of One Area to Another Area:**

The Employer shall have the right to bring six (6) workers from one area into another area within the area covered by this Agreement.  Such Employer shall notify the Local Union one day in advance of starting the job.  Other workers will be obtained when available from the area where the work is to be performed.

**Travel, Driving and Out of Town Expense Allowance:**

On projects sixty (60) miles or more by the shortest and most direct regularly traveled route from the main office or permanently established area office of the individual employer, such employer shall provide each employee transportation either physically or by paying the cost of such transportation.  If the employer chooses to pay the cost of such transportation the cost shall be determined at the rate of forty ($0.40) cents per mile for each mile in excess of sixty (60) miles.  Additionally the employee will be compensated at rate of one-half (½) of his straight time wage rate both to and from the job less seventy-five (75) minutes each way.

Any employee operating or responsible for the control of a company vehicle being used to transport personnel, equipment and/or supplies from the employer's regularly established shop or yard to a jobsite shall be compensated at a rate of fifteen dollars and ninety-three cents ($15.93) per hour.  Any employee who is a passenger in and not directly responsible for the control of a company vehicle is deemed to be in the vehicle voluntarily and is not subject to compensation other than discussed above.  Employees assigned company vehicles will not be compensated for travel to and from the project to their homes unless it is in excess of sixty (60) miles from the regularly established shop or yard.

Travel & Driving time is not subject to Section 28 (Fringe Benefits).

Employees required to stay out of town will be compensated at the rate of sixty dollars ($60.00) per day for each night the employee is at the project location.  If an employee arrives on a project on Monday and returns to his home on Friday he/she would be compensated for four (4) night's subsistence.  At the employer's option on continuing projects the employee may be paid subsistence through the weekend or pay the travel to and from the project for every weekend that the employee return to such project.  If the employer pays for the lodging the

employee will be compensated at the rate of twenty dollars ($20.00) per day for food and other out of town expenses.

## SUPPLEMENT NO. 3        WRECKING WORK

Hours and working conditions and wages shall be the same as in this Master Agreement, except those expressly herein provided.

## CLASSIFICATIONS/RATES PER HOUR:

**Skilled Wrecker**
  Group No. 1
  (Removing and salvaging of sash, windows, doors,
  plumbing and electric fixtures.)

| | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $28.39 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.39 | $1.40* | $1.50* | $1.60* | $1.65* |

**Semi Skilled Wrecker**
  Group No. 2
  (Salvaging of other building materials)

| | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $28.24 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.24 | $1.40* | $1.50* | $1.60* | $1.65* |

**SUPPLEMENT NO. 4      GARDENERS, HORTICULTURAL & LANDSCAPE WORKERS**

Hours and working conditions and wages shall be the same as in this Master Agreement, except those expressly herein provided.

## CLASSIFICATION/RATES PER HOUR:

Gardeners, Horticultural and Landscape Laborers
(New Construction)

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $28.39 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.39 | $1.40* | $1.50* | $1.60* | $1.65* |

Service Landscape Laborers
(Establishment Warranty Period)

|  | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| **RATE A** | $28.24 | $1.40* | $1.50* | $1.60* | $1.65* |
| **RATE B** | $27.24 | $1.40* | $1.50* | $1.60* | $1.65* |

The overtime rates provided in paragraph 5 of Section 20A shall apply only to service landscape laborers (establishment warranty period) for work in excess of forty (40) hours in any one (1) week, or in excess of eight (8) hours in any one (1) day.

Service landscape laborers (establishment warranty period), may be required to work any five (5) days out of the week on any shift.

## LANDSCAPE LABORER TRAINEE

A new classification, Landscape Laborer Trainee, is based on an eighteen (18) month training program, as follows:

| **RATE A** | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| 1st 6 mos. @ 70% | $19.87 | $1.40* | $1.50* | $1.60* | $1.65* |
| 2nd 6 mos. @ 80% | $22.71 | $1.40* | $1.50* | $1.60* | $1.65* |
| 3rd 6 mos. @ 90% | $25.55 | $1.40* | $1.50* | $1.60* | $1.65* |

| RATE B | 6/30/14 | 6/29/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| 1st 6 mos. @ 70% | $19.17 | $1.40* | $1.50* | $1.60* | $1.65* |
| 2nd 6 mos. @ 80% | $21.91 | $1.40* | $1.50* | $1.60* | $1.65* |
| 3rd 6 mos. @ 90% | $24.65 | $1.40* | $1.50* | $1.60* | $1.65* |

**(The above rates are wages only.  Fringe Benefits are the same as in Section 28A of the Laborers' Master Agreement.)**

Prior to employment, the Employer must submit in writing any request for employees from the Local Union; and, all employees must be referred by the Local Union in the area of work.

The ratio of Trainees shall be:  One (1) in three (3), with the understanding that each Individual Contractor utilizing the Trainee Classification must employ at least one (1) Second Period Trainee in the Second Period of the Agreement and at least one (1) Third Period Trainee in the Third Period of the Agreement before being eligible to employ another First Period Trainee.

**SUPPLEMENT NO. 5        LABORERS' APPRENTICESHIP PROGRAM**

1.  TERM OF APPRENTICESHIP:  New applicants for union membership, who cannot demonstrate a minimum of 3,600 hours of experience as a Construction Craft Laborer shall enter the Laborers Apprenticeship Program (Apprenticeship Program).  If an applicant is designated a journey-level Laborer by a referring Individual Employer who states in writing that the applicant's knowledge and experience warrants journey-level status, such Employees shall be considered provisional journey-level Laborers and may retain that status so long as they are employed by the designating Individual Employer.  Any provisional journey-level Laborer who is laid-off or otherwise discharged prior to working 3,600 hours may not be placed on a journey-level out of work list until assessed by the Apprenticeship Program.

2.  RATIO:  Individual Employers shall participate in the Apprenticeship Program by accepting apprentices for employment upon referral by the Union.  When four (4) journey-level Laborers are employed on a project for a particular Individual Employer, the next employee hired to perform Laborers' work must be an apprentice and this ratio will be continued for every four (4) additional Laborers being employed on the Project.  On projects with fewer than four (4) journey-level Laborers an Individual Employer may employ one (1) apprentice per project with at least one (1) journey-level Laborer.

3.  The Apprenticeship Standards approved by the Division of Apprenticeship Standards of the State of California are hereby incorporated by reference as part of this Agreement.

4.  All apprentices shall be properly dispatched through the appropriate Local Union's hiring hall.  The Individual Employer must secure a dispatch from the appropriate Local Union for any apprentices employed by the Individual Employer.

5.  Entry into the Apprenticeship Program shall be controlled by the Laborers Joint Apprenticeship and Training Center (JATC), which shall employ appropriate screening procedures.  An apprentice in good standing advances from one level to another only upon determination of satisfactory performance by the JATC, which shall have the authority to grant accelerated credit where warranted by the performance of an individual apprentice.  The JATC may also grant credited hours to an apprentice who received work experience and/or training prior to entry into the Apprenticeship Program.  The JATC will not unreasonably withhold entry and advancement in the Apprenticeship Program for provisional journey-level Laborers after their employment with a referring Individual Employer is terminated.

6.  An apprentice should, whenever possible, be rotated by the Individual Employer through different types of work so as to become trained in a variety of operations and work skills.  Where the Individual Employer is unable to provide an apprentice with experience in the full range of craft skills causing the apprentice to exceed the number of hours allotted to a given work process, the JATC may coordinate with the Local Union to reassign the apprentice to other employment in order to provide that experience.  For so long as the Individual Employer is able to provide the necessary range of employment experience, the Individual Employer may choose to retain the apprentice from job to job but shall notify the Local Union and JATC of all reassignments.  An apprentice shall not work on the jobsite unless supervised by a journey-level Laborer.

7.  The Individual Employer shall release the apprentice to enroll in Related and Supplemental Instruction (RSI) when the apprentice is notified of mandatory training.  An apprentice shall not be penalized for taking time off from work to receive RSI as required by the Apprenticeship Program.  The Laborers Apprenticeship Program shall endeavor to notify the Individual Employer of any upcoming RSI requirements the apprentice must satisfy.  The Program will assist the Individual Employer in meeting its apprentice ratio requirements.

8.    An apprentice who fails to maintain his/her apprenticeship status shall not be eligible for employment as a journey-level Laborer unless he/she successfully completes the Apprenticeship Program after reinstatement by the JATC.  Reinstatement is at the sole discretion of the JATC.  If reinstatement is denied, an apprentice may reapply for entry into the Apprenticeship Program after waiting one (1) year from the date he/she was terminated from the Apprenticeship Program.    The failure of any apprentice to maintain his/her apprenticeship status shall obligate the Individual Employer to discharge such person upon written notice from the Apprenticeship Program.

Apprentice wage and fringe benefit rates shall be:

| Hours of Credit | Wage Rate | Fringe Benefits |
| --- | --- | --- |
| 1-600 | 65% of Journey Worker | Health & Welfare, Training, Vacation/Holiday/Dues Supplement (current Supplemental Dues amount only), Contract Administration and Industry Stabilization |
| 601-1200 | 70% of Journey Worker | Health & Welfare, Training, Vacation/Holiday/Dues Supplement (current Supplemental Dues amount only), Contract Administration and Industry Stabilization |
| 1201-1800 | 75% of Journey Worker | Full Benefits |
| 1801-2400 | 80% of Journey Worker | Full Benefits |
| 2401-3000 | 85% of Journey Worker | Full Benefits |
| 3001-3600 | 90% of Journey Worker | Full Benefits |

Journey Worker rates are based on the Group 3 Laborer rate.

The Individual Employer may pay a higher rate at its option. However, the apprentice must meet his or her commitments to the JATC regardless of compensation.

**SUPPLEMENT NO. 6      ZONE PAY**

Zone pay at three dollars ($3.00) per hour will be added to the base rate for work performed outside the Free Zone described by the following boundaries along Township and Range lines.

**MAP DESCRIPTION FOR AREA FREE ZONE.**

The following is a description based upon township and Area free zones for all of Northern California within the following lines:

1.    Commencing in the Pacific Ocean on the extension of the Southerly line of Township 19S, of the Mount Diablo Base and Meridian,
2.    Thence Easterly along the Southerly line of Township 19S, to the Northwest corner of Township 20S, Range 6E,
3.    Thence Southerly to the Southwest corner of Township 20S, Range 6E,
4.    Thence Easterly to the Northwest corner of Township 21S, Range 7E,
5.    Thence Southerly to the Southwest corner of Township 21S, Range 7E,
6.    Thence Easterly to the Northwest corner of Township 22S, Range 9E,
7.    Thence Southerly to the Southwest corner of Township 22S, Range 9E,
8.    Thence Easterly to the Northwest corner of Township 23S, Range 10E,
9.    Thence Southerly to the Southwest corner of Township 24S, Range 10E,
10.   Thence Easterly to the Southwest corner of Township 24S, Range 31E,
11.   Thence Northerly to the Northeast corner of Township 20S, Range 31E,
12.   Thence Westerly to the Southeast corner of Township 19S, Range 29E,
13.   Thence Northerly to the Northeast corner of Township 17S, Range 29E,
14.   Thence Westerly to the Southeast corner of Township 16S, Range 28E,
15.   Thence Northerly to the Northeast corner of Township 13S, Range 28E,
16.   Thence Westerly to the Southeast corner of Township 12S, Range 27E,
17.   Thence Northerly to the Northeast corner of Township 12S, Range 27E,
18.   Thence Westerly to the Southeast corner of Township 11S, Range 26E,
19.   Thence Northerly to the Northeast corner of Township 11S, Range 26E,
20.   Thence Westerly to the Southeast corner of Township 10S, Range 25E,
21.   Thence Northerly to the Northeast corner of Township 9S, Range 25E,
22.   Thence Westerly to the Southeast corner of Township 8S, Range 24E,
23.   Thence Northerly to the Northeast corner of Township 8S, Range 24E,
24.   Thence Westerly to the Southeast corner of Township 7S, Range 23E,
25.   Thence Northerly to the Northeast corner of Township 6S, Range 23E,
26.   Thence Westerly to the Southeast corner of Township 5S, Range 20E,
27.   Thence Northerly to the Northeast corner of Township 5S, Range 20E,
28.   Thence Westerly to the Southeast corner of Township 4S, Range 19E,
29.   Thence Northerly to the Northeast corner of Township 1S, Range 19E,
30.   Thence Westerly to the Southeast corner of Township 1N, Range 18E,
31.   Thence Northerly to the Northeast corner of Township 3N, Range 18E,
32.   Thence Westerly to the Southeast corner of Township 4N, Range 17E,
33.   Thence Northerly to the Northeast corner of Township 4N, Range 17E,
34.   Thence Westerly to the Southeast corner of Township 5N, Range 15E,
35.   Thence Northerly to the Northeast corner of Township 5N, Range 15E,
36.   Thence Westerly to the Southeast corner of Township 6N, Range 14E,
37.   Thence Northerly to the Northeast corner of Township 10N, Range 14E,
38.   Thence Easterly along the Southern line of Township 11N, to the California/Nevada State Border,

39.     Thence Northerly along the California/Nevada State Border to the Northerly line of Township 17N,
40.     Thence Westerly to the Southeast corner of Township 18N, Range 10E,
41.     Thence Northerly to the Northeast corner of Township 20N, Range 10E,
42.     Thence Westerly to the Southeast corner of Township 21N, Range 9E,
43.     Thence Northerly to the Northeast corner of Township 21N, Range 9E,
44.     Thence Westerly to the Southeast corner of Township 22N, Range 8E,
45.     Thence Northerly to the Northeast corner of Township 22N, Range 8E,
46.     Thence Westerly to the Northwest corner of Township 22N, Range 8E,
47.     Thence Northerly to the Southwest corner of Township 27N, Range 8E,
48.     Thence Easterly to the Southeast corner of Township 27N, Range 8E,
49.     Thence Northerly to the Northeast corner of Township 28N, Range 8E,
50.     Thence Westerly to the Southeast corner of Township 29N, Range 6E,
51.     Thence Northerly to the Northeast corner of Township 32N, Range 6E,
52.     Thence Westerly to the Northwest corner of Township 32N, Range 6E,
53.     Thence Northerly to the Northeast corner of Township 35N, Range 5E,
54.     Thence Westerly to the Southeast corner of Township 36N, Range 3E,
55.     Thence Northerly to the Northeast corner of Township 36N, Range 3E,
56.     Thence Westerly to the Southeast corner of Township 37N, Range 1W,
57.     Thence Northerly to the Northeast corner of Township 38N, Range 1W,
58.     Thence Westerly to the Southeast corner of Township 39N, Range 2W,
59.     Thence Northerly to the Northeast corner of Township 40N, Range 2W,
60.     Thence Westerly to the Southeast corner of Township 41N, Range 4W,
61.     Thence Northerly to the Northeast corner of Township 42N, Range 4W,
62.     Thence Westerly to the Southeast corner of Township 43N, Range 5W,
63.     Thence Northerly to the California/Oregon State Border,
64.     Thence Westerly along the California/Oregon State Border to the Westerly Boundary of Township Range 8W,
65.     Thence Southerly to the Southwest corner of Township 43N, Range 8W,
66.     Thence Easterly to the Southeast corner of Township 43N, Range 8W,
67.     Thence Southerly to the Southwest corner of Township 42N, Range 7W,
68.     Thence Easterly to the Southeast corner of Township 42N, Range 7W,
69.     Thence Southerly to the Southwest corner of Township 41N, Range 6W,
70.     Thence Easterly to the Northwest corner of Township 40N, Range 5W,
71.     Thence Southerly to the Southwest corner of Township 38N, Range 5W,
72.     Thence Westerly to the Northwest corner of Township 37N, Range 6W,
73.     Thence Southerly to the Southwest corner of Township 35N, Range 6W,
74.     Thence Westerly to the Northwest corner of Township 34N, Range 10W,
75.     Thence Southerly to the Southwest corner of Township 31N, Range 10W,
76.     Thence Easterly to the Northwest corner of Township 30N, Range 9W,
77.     Thence Southerly to the Southwest corner of Township 30N, Range 9W,
78.     Thence Easterly to the Northwest corner of Township 29N, Range 8W,
79.     Thence Southerly to the Southwest corner of Township 23N, Range 8W,
80.     Thence Easterly to the Northwest corner of Township 22N, Range 6W,
81.     Thence Southerly to the Southwest corner of Township 16N, Range 6W,
82.     Thence Westerly to the Southeast corner of Township 16N, Range 9W,
83.     Thence Northerly to the Northeast corner of Township 16N, Range 9W,
84.     Thence Westerly to the Southeast corner of Township 17N, Range 12W,
85.     Thence Northerly to the Northeast corner of Township 18N, Range 12W,
86.     Thence Westerly to the Northwest corner of Township 18N, Range 15W,
87.     Thence Southerly to the Southwest corner of Township 14N, Range 15W,
88.     Thence Easterly to the Northwest corner of Township 13N, Range 14W,
89.     Thence Southerly to the Southwest corner of Township 13N, Range 14W,

90.    Thence Easterly to the Northwest corner of Township 12N, Range 13W,
91.    Thence Southerly to the Southwest corner of Township 12N, Range 13W,
92.    Thence Easterly to the Northwest corner to Township 11N, Range 12W,
93.    Thence Southerly into the Pacific Ocean, and,
94.    Commencing in the Pacific Ocean on the extension of the Humboldt Base Line,
95.    Thence Easterly to the Northwest corner of Township 1S, Range 2E,
96.    Thence Southerly to the Southwest corner of Township 2S, Range 2E,
97.    Thence Easterly to the Northwest corner of Township 3S, Range 3E,
98.    Thence Southerly to the Southwest corner of Township 5S, Range 3E,
99.    Thence Easterly to the Southeast corner of Township 5S, Range 4E,
100.   Thence Northerly to the Northeast corner of Township 4S, Range 4E,
101.   Thence Westerly to the Southeast corner of Township 3S, Range 3E,
102.   Thence Northerly to the Northeast corner of Township 5N, Range 3E,
103.   Thence Easterly to the Southeast corner of Township 6N, Range 5E,
104.   Thence Northerly to the Northeast corner of Township 7N, Range 5E,
105.   Thence Westerly to the Southeast corner to Township 8N, Range 3E,
106.   Thence Northerly to the Northeast corner of Township 9N, Range 3E,
107.   Thence Westerly to the Southeast corner of Township 10N, Range 1E,
108.   Thence Northerly to the Northeast corner of Township 13N, Range 1E,
109.   Thence Westerly into the Pacific Ocean, excluding that portion of Northern California contained within the following lines:
110.   Commencing at the Southwest corner of Township 12N, Range 11E, of the Mount Diablo Base and Meridian,
111.   Thence Easterly to the Southeast corner of Township 12N, Range 16E,
112.   Thence Northerly to the Northeast corner of Township 12N, Range 16E,
113.   Thence Westerly to the Southeast corner of Township 13N, Range 15E,
114.   Thence Northerly to the Northeast corner of Township 13N, Range 15E,
115.   Thence Westerly to the Southeast corner of Township 14N, Range 14E,
116.   Thence Northerly to the Northeast corner of Township 16N, Range 14E,
117.   Thence Westerly to the Northwest corner of Township 16N, Range 12E,
118.   Thence Southerly to the Southwest corner of Township 16N, Range 12E,
119.   Thence Westerly to the Northwest corner of Township 15N, Range 11E,
120.   Thence Southerly to the point of beginning at the Southwest corner of Township 12N, Range 11E.

**Zone Pay and map changes shall apply for work bid after June 26, 2006.**

**All areas other than free zones shall be subject to the payment of Zone Pay.**

The Individual Employer shall not be required to pay Zone Pay to employees employed by an Individual Employer in a permanent yard or shop or plant and employees employed by an Individual Employer on residential construction projects (not camps); subdivisions; buildings of three (3) stories or less including utilities and site work related to these buildings; streets, roadways and utilities which are a part of a residential construction project.

**Zone pay shall not be applicable within the city limits of the following cities or towns:**

Auburn, Coalinga, Crescent City, Exeter, Grass Valley, Greenfield, Jackson, Jamestown, Lindsay, Mariposa, Nevada City, Placerville, Porterville, Sonora, Strathmore, Terrabella, Tuolumne, Twain Harte, Woodlake or Yreka.

Zone Pay shall apply to publicly financed camps, highways, dams, tunnels, power facilities, defense facilities, utilities (except as provided above), sewage disposal plants and heavy engineering projects together with the camps, warehouses, offices or facilities constructed in connection with such latter projects.

No Zone Pay shall be paid on a job located within the right of way of a road or highway forming part of the

boundary of the Zone Pay area.

If a road or highway forming part of the boundary of a Zone Pay Area is relocated, such relocated road or highway upon being officially opened shall form a part of the boundary of the Zone Pay Area in place of the old road.

When the work is to be performed in the Zone Pay Area, each employee employed to perform work covered by this Agreement shall receive the Zone Pay specified herein.

When the work to be performed is in the Free Zone, such employees shall not be entitled to receive Zone Pay; provided, however, if two or more hours of compensable time (straight time or premium time) are worked by said employee in the Zone Pay Area, he/she shall be entitled to be paid appropriate Zone Pay for all hours worked.

**SUPPLEMENT NO. 7**      **SUPPLEMENT TO THE MASTER AGREEMENT REGARDING LABORERS WORK FOR THE CONCRETE SAWING, DRILLING, CORING AND BREAKING INDUSTRY**

**CLASSIFICATIONS/WAGE RATES PER HOUR:**

**Construction Specialists:**

Chainsaw, Concrete Diamond Chainsaw,
Diamond Drillers, Diamond Core Drillers,
Multiple Unit Drills, High Scaler,
Hydraulic Drills
**RATE A**
**RATE B**

**Group 1:**

Barko, Wacker and Similar Type Tampers,
Concrete Sanders, Concrete Saw,
Green Cutters, Jackhammer Operators,
Pavement Breakers and Spaders,
Power Tampers of all Types (except as
Shown in Group 2), Rotary Scarifier or
Multiple Head, Concrete Chipping Scarifier,
Roto and Ditch Witch
**RATE A**
**RATE B**

**Group 1(a):**

Joy Drill, Gardener, Track Drillers,
Jack Leg Drillers, Wagon Drillers,
Mechanical Drillers, Mechanical Pipe Layer,
Blasters and Powderman, Tree Topper,
Bit Grinder
**RATE A**
**RATE B**

**Group 1 (c)**

Burning and Welding in Connection with
Laborer's Work
**RATE A**
**RATE B**

**CLASSIFICATIONS/WAGE RATES PER HOUR: (cont.)**

**Group 1(e)**

Bell Footings and Shafts,
Deep Footings (Hole fifteen (15)
feet or more in depth)
**RATE A**
**RATE B**

**Group 1(f):**

Aligner-
**RATE A**
**RATE B**

Helper-
**RATE A**
**RATE B**

**Group 1(g):**
Contra Costa County
**RATE**

**Group 2:**

Concrete Chipping and Grinding,
Drillers Helper, Chuck Tender, Nipper
**RATE A**
**RATE B**

**Group 3:**

Construction Laborers, including Bridge
Laborers and General Laborers, Flagperson
**RATE A**
**RATE B**

**Group 4:**

All final cleanup work, Cleaning & Washing Windows,
Brick Cleaners, Watchman,
Material Cleaners
**RATE A**
**RATE B**

## TRAVEL & DRIVING TIME

TRAVEL RATES PER HOUR:

**EFFECTIVE DATE**

| | 1/01/14 | 1/01/15 | 6/27/16 | 6/26/17 | 6/25/18 |
|---|---|---|---|---|---|
| | $17.91 | $18.16 | $18.66 | $18.91 | $19.16 |

1.  Time and one-half the travel rate shall be paid on travel during work time after the employee has worked a total of forty (40) hours work in a week or eight (8) hours work in a day on prevailing wage projects.  Any employee operating or responsible for the control of a company vehicle being used to transport personnel, equipment and/or supplies from the Individual Employer's regularly established shop or yard to a jobsite shall be compensated at the travel rate.  No employee shall suffer a reduction in rate as a result of this agreement.

2.  The employee's working time starts at the jobsite, yard or shop where he or she is required to report for work or begin driving a vehicle.  Those who, as a matter of convenience, travel as passengers in company provided transportation shall not be paid travel time to the first site of employment or from the last site of employment during the workday.  Employees assigned company vehicles that are provided primarily for the employee's convenience will be paid a driving stipend based on the travel rate for travel time spent driving in excess of sixty (60) miles to and from the first and last project in a workday where the project is located in excess of sixty (60) miles from the regularly established shop or yard.

3.  Travel & Driving time is not subject to Section 28 (Fringe Benefits) in the Agreement except as set forth herein.  However, an Individual Employer shall be required to contribute one hundred ten (110) hours to the Health & Welfare Trust Fund on behalf of an employee in any month where the employee's travel time work hours and non-travel work hours equal or exceed one hundred ten (110) hours for the month and the employee's non-travel time work hours are less than one hundred ten (110) hours.  The Individual Employer will designate on the Trust Fund report form those hours which represent travel time work hours.  (Example:  Employee works ninety [90] non-travel time hours and twenty-five [25] travel time work hours in January.  The Individual Employer will remit one hundred ten [110] hours of contributions to the Health & Welfare Trust Fund.)  When an employee's non-travel time work hours for an Individual Employer in a given calendar year are not sufficient to earn a year of pension service credits, an Individual Employer will be required to contribute the additional hours an employee would need to earn a year of pension service credit where the employee's travel time and non-travel work hours would equal or exceed the number of hours necessary to earn a year of pension service credit.  (Example:  One thousand [1,000] hours are needed for a year of service credits.  Employee works nine hundred [900] non-travel time hours and one hundred twenty-five [125] travel time hours in calendar year 2013.  Individual Employer reports an additional one hundred (100) hours to the Pension Trust Fund for the month of December 2013 to enable an employee to earn a year of service credits.)

**SCHEDULE "A"     DISTRICT COUNCIL OF LABORERS HIRING HALL LOCATIONS**

| Local | City | Street Address | Phone Number | Dispatch Hours |
|---|---|---|---|---|
| 67* | Oakland | 8400 Enterprise Way, #119 | 510-569-4761 | 7:00-9:00 a.m. |
| 67* | Sacramento | 2717 Cottage Way, #12 | 916-482-2607 | 7:00-9:00 a.m. |
| 73 | Stockton | 3984 Cherokee Road | 209-466-3356 | 6:30-9:00 a.m. |
| 166 | Oakland | 8400 Enterprise Way, Rm 109 | 510-568-0141 | 7:00-9:00 a.m. |
| 185 | Sacramento | 1320 W. National Drive | 916-928-8300 | 6:30-9:00 a.m. |
| 185 | Redding | 2865 Churn Creek Rd., #D | 530-221-0961 | 6:30-9:00 a.m. |
| 261 | San Francisco | 3271 18th Street | 415-826-4550 | 6:30-9:00 a.m. |
| 261 | San Mateo | 300 – 7th Ave. | 650-344-7168 | 6:30-9:00 a.m. |
| 261 | San Rafael | 4174 Redwood Highway | 415-492-0936 | 6:30-9:00 a.m. |
| 270 | San Jose | 509 Emory St. | 408-297-2620 | 6:00-9:00 a.m. |
| 270 | Santa Cruz | 640 Eaton St. | 831-475-7058 | 6:00-9:00 a.m. |
| 294 | Fresno | 5431 East Hedges Ave. | 559-255-3019 | 6:30-9:00 a.m. |
| 294 | Visalia | 319 N. Church St. | 559-734-9426 | 6:30-9:00 a.m. |
| 297 | Salinas | 117 Pajaro St. | 831-422-7077 | 7:00-9:00 a.m. |
| 304 | Hayward | 29475 Mission Blvd. | 510-581-9600 | 6:00-9:00 a.m. |
| 304 | Oakland | 425 Roland Way | 510-562-2661 | 6:00-9:00 a.m. |
| 304 | Livermore | 2063 Research Drive. | 925-455-8292 | No Dispatch |
| 324 | Martinez | 611 Berrellesa St. | 925-228-0930 | 6:30-9:00 a.m. |
| 324 | Antioch | 1005 Fitzuren Road | 925-522-0006 | 6:30-9:00 a.m. |
| 324 | Napa | (Phone Dispatch Only) | 707-226-7971 | 6:30-9:00 a.m. |
| 324 | Richmond | 101 S. 12th St. | 510-234-1069 | 6:30-9:00 a.m. |
| 324 | Santa Rosa | 81 Barham Avenue | 707-542-1107 | 6:30-9:00 a.m. |
| 324 | Vallejo | 2920 Sonoma Blvd, Ste B | 707-643-7214 | 6:30-9:00 a.m. |
| 886 | Oakland | 8400 Enterprise Way, Rm 110 | 510-632-0161 | N/A |
| 1130 | Modesto | 2549 Yosemite Blvd., Ste K | 209-521-9883 | 7:00-9:00 a.m. |

*Asbestos

**Northern California District Council of Laborers**
**Union Plaza**
**4780 Chabot Drive, Suite 200**
**Pleasanton, CA 94588**
**Telephone 925-469-6800**
**Facsimile 925-469-6900**
**Office Hours: 7:00 a.m. to 5:00 p.m. Monday through Friday**

# EXHIBIT B

# EXHIBIT B



# LABOR RELATIONS
## COLLECTIVE BARGAINING AGREEMENTS

*Bargaining Authority & Power of Attorney*

The undersigned designates the **Engineering & Utility Contractors Association** as its sole and exclusive representative for the purpose of negotiating and executing the collective bargaining agreements and representation in labor relations matters between the undersigned and the unions.

Please initial applicable boxes:

| | |
|---|---|
| ____ Operating Engineers | ____ Carpenters |
| ✓ Laborers | ____ Cement Masons |
| ____ Teamsters | ____ Iron Workers |
| ____ Other _____ | |

This Power of Attorney shall continue in full force and effect until the expiration of the current collective bargaining agreement(s) between the Association and the Union and for the duration of any subsequent collective bargaining agreement(s) between the parties, unless a written notice of termination and revocation of this Power of Attorney is given by the signer hereof, or his authorized agent, to both the Executive Director of the Association, and simultaneously therewith to the Union(s), not later than one hundred and twenty (120) calendar days prior to the expiration date of the collective bargaining agreements(s). Said termination notices must be sent via facsimile or return receipt requested to the Executive Director of the Association and Union(s).

Should the Association re-open negotiations during the term of any collective bargaining agreement to extend the term of such agreement, the Association will require a separate Power of Attorney from the undersigned before representing it in any negotiations for a premature extension of the collective bargaining agreement.

It is understood that a copy of this Power of Attorney will be provided to the Union(s) initialed above.

08-08-07
Date

MICHAEL NEAVEY Construction
Company Name

MICHAEL NEAVEY
Owner (Please print or type)

Michael Neavey
Signature

Power of Attorney Form.doc
03/16/99

---

Engineering & Utility Contractors Association
17 Crow Canyon Court, Suite 100, San Ramon, CA 94583 ◆ 925/855-7900 ◆ Fax: 925/855-7909

# EXHIBIT C

# EXHIBIT C

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Agreement") is entered into by and between the Parties to the Agreement, as defined below:

1. Parties. The parties to this Agreement ("Parties") are:

   A. LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; LABORERS VACATION-HOLIDAY TRUST FUND FOR NORTHERN CALIFORNIA; LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA; and LABORERS TRAINING AND RETRAINING TRUST FUND FOR NORTHERN CALIFORNIA (hereinafter referred to as "Trust Funds");

   B. MICHAEL HEAVEY CONSTRUCTION, INC. (hereinafter referred to as "Employer");

   C. MICHAEL B. HEAVEY, ("Michael B. Heavey"), individually; and

   D. NOREEN B. BOYLE also known as NOREEN B. HEAVEY, ("Noreen B. Boyle"), individually.

2. Recitals.

   A. Employer is signatory to a collective bargaining agreement that requires it make contributions to the Trust Funds, and submit to a periodic audit of its books and records so that the Trust Funds can determine if the Employer is making full and prompt payment of required contributions.

   B. A compliance audit of Employer's books and records for the period of 2008 to 2010 was conducted. In February of 2012, the Trust Funds and Employer entered into a Settlement Agreement in which they agreed that based upon the compliance inspection, Employer owed principal contributions in the amount of $79,922.36, liquidated damages and interest related thereto in the amount of $32,861.62 and attorneys' fees and costs in the amount of $3,838.75. The Employer agreed to a payment plan in the Settlement Agreement relating to the audit shortages. Employer made payments under the Settlement Agreement, but then defaulted on its terms. Employer was notified of its default under the Settlement Agreement and that litigation would be commenced to obtain a judgment for the amounts owed, but Employer failed to respond and/or cure the default.

   C. Additionally, after entering the Settlement Agreement referenced in paragraph 2.B. above, Employer remitted employer reports of contributions to the Trust Funds indicating that Employer owes the Trust Funds contributions in the amount of $99,697.44 pursuant to the Employer's collective bargaining agreement with the Union based upon

work performed by its employees during the following months: the period of November of 2013 to March of 2014; the months of July and August of 2014; and the months of February, March and April of 2015, but Employer did not pay the amounts due.

D.    The Trust Funds filed suit against Employer, United States District Court Northern District of California, case number 3:15-cv-00411-WHA ("the Lawsuit"). Thereafter, Plaintiffs filed a Motion for Entry of Default Judgment By Court as to which Magistrate Judge Laporte issued a report and recommendation that judgment be entered in the Lawsuit in favor of the Trust Funds and against Employer.

E.    On September 8, 2015, the Court issued its Order accepting and adopting the findings of Magistrate Judge Laporte.  The Court therefore granted the Plaintiffs' motion for default judgment and denied Defendant's motion to set aside default.

F.    The Employer and Trust Funds entered into a second Settlement Agreement in September 2015 ("September 2015 Settlement Agreement").  A true and accurate copy of the September 2015 Settlement Agreement is attached hereto as Exhibit A.  Pursuant to the September 2015, Settlement Agreement, judgment in the amount of $217,587.23 was entered against Defendant.  In the judgment, Defendant was ordered to pay Plaintiffs principal contributions in the amount of $152,973.51; liquidated damages and interest in the amount of $47,685.87; attorneys' fees in the amount of $16,370.00; and Plaintiffs' costs in the amount of $557.85. The Plaintiffs agreed not to levy on the judgment provided that the Employer made the payments under the September 2015 Settlement Agreement.  However, the Employer made some payments under the September 2015 Settlement Agreement, and then defaulted on its obligations under the 2015 September Settlement Agreement.  The Employer also failed to timely remit contributions that accrued after execution of the September 2015 Settlement Agreement.  Additionally, an audit of the Employer's books and records was conducted which revealed Employer owes the principals sum of $8,846.36 and interest relating to the audit liability in the amount of $6,987.82. The Trust Funds instituted post-judgment collection efforts to collect the Default Judgment entered in the Lawsuit. The Employer's State Contractor's License No. 844478 was also suspended in light of the non-payment of the judgment entered in the Lawsuit.

G.    The parties stipulate and agree that there is now due and owing the following sums by the Employer to the Trust Funds: (1) Liquidated Damages and Interest in the amount of $56,834.31; (2) Attorneys' fees and costs in the amount of $56,166.26; (3) audit liability in the amount of $8,846.35 for principal shortages; and (4) liability in the amount of $6,987.82 for interest relating to the aforementioned audit.

H.     Michael B. Heavey and Noreen B. Boyle, and each of them, individually, agree to personally guarantee the payment of the $128,834.74 owed to the Trust funds by the Employer and referenced in paragraph G above. A true and accurate copy of their respective Personal Guarantee Agreement is attached hereto.

3.     <u>Agreement to Settle Disputes</u>. Except as otherwise provided herein, the Parties to this Agreement wish to finally resolve and settle all disputes between them relating to or arising out of the liability referenced in 2.B., 2.C., 2.D., 2.E., 2.F., and 2.G. above.

4.     <u>Terms.</u> This Agreement memorializes the terms agreed to by the Parties; to the extent that it differs from or varies from any previous writing between the parties relating to the matters resolved herein, this Agreement shall supersede and replace such other communications and/or agreements.

Therefore, in consideration of the mutual covenants contained herein, each of the Parties hereto, for themselves and their successors and assigns, hereby agrees as follows:

5.     The Trust Funds agree to settle their claims for the amounts owed referenced in paragraphs 2.B., 2.C., 2.D., 2.E., 2.F., and 2.G. above in this Lawsuit for payment of $80,968.15 ("Settlement Sum") on the following conditions:

a.     Payments totaling $9,000.00 shall be made by Employer over a three month period with (3) equal monthly installments of $3,000.00 each due no later than the 15th day of every month commencing October of 2016.

b.     Payments totaling $71,968.15 shall be made by Employer over a sixteen month period with (16) equal monthly installments of $4,498.01 each due no later than the 15th day of every month commencing January of 2017.

c.     Employer shall remit the payments as described in Paragraph 5.a. and 5.b. by check made payable to "LABORERS TRUST FUNDS", directly to the Trust Fund office at:

Laborers Funds Administrative Office of Northern California, Inc.
220 Campus Lane
Fairfield, CA 94534-1498

d.     The Parties hereto acknowledge that the payments above include the attorneys' fees and costs incurred by the Trust Funds to date in the amount of $56,166.26 in pursuing the Lawsuit and collection of delinquent contributions owed by Employer. The Payments also include twenty-five percent of the liquidated damages and interest and twenty-five percent of the Audit Interest owed by Employer to the Trust Funds. If and only if all payments required by this Settlement Agreement are timely made, the Trust Funds agree to waive the remaining seventy- five percent of liquidated damages and interest and seventy-five percent of Audit Interest

owed by Employer. However, to the extent that any payment required by this Settlement is not paid, then the Employer will be in default. In the event of Employer's default, as per Paragraph 9 below, there will be no waiver of liquidated damages and interest owed and the sum of $128,834.74, less any payments made by Employer toward the Settlement Sum under this paragraph, will be immediately due and owing by the Employer.

e.     In the event of the default by Employer of its payment obligations under paragraph 5 of this Settlement Agreement, Employer, Michael B. Heavey and Noreen B. Boyle will be in default of this Settlement Agreement, as per paragraph 8 below, the sum of $128,834.74, less any payments made by Employer toward the Settlement Sum under this paragraph, will be immediately due and payable by Michael B. Heavey, individually and/or Noreen B. Boyle, individually pursuant to their respective personal guarantees (a copy of both guarantees is attached hereto).

6.     Obligation to Remain Current. Employer agrees to remain bound to the applicable collective bargaining agreement and comply with its obligations to submit all fringe benefit contributions to the Trust Funds in a timely manner pursuant to the terms of the applicable collective bargaining agreement and Trust Agreements. For example, the Employer agrees that it will timely pay the contributions owed for work performed by Employer's employees in September of 2016 no later than October 15, 2016.

If the Employer fails to timely submit complete payment or reports during the time period beginning with the execution of the Settlement Agreement forward, the Employer will be in default of this Agreement and all remaining payments due hereunder will be immediately due and payable.

If the Employer fails to timely submit complete payment or reports during the time period beginning with the execution of the Settlement Agreement forward, pursuant to paragraph 8 below, the sum of $128,834.74, less any payments made by Employer toward the Settlement Sum under paragraph 5 of this Settlement Agreement, will be immediately due and payable by Michael B. Heavey, individually and/or Noreen B. Boyle, individually, pursuant to the Personal Guarantees and Undertakings (a copy of both guarantees is attached hereto).

7.     Reinstatement of Contractors License. After the execution by all parties of this Settlement Agreement, execution of the Personal Guarantee by Michael B. Heavey and execution of the Personal Guarantee by Noreen B. Boyle, the Trust Funds will cooperate in good faith to attain the reinstatement of Employer's Contractor's license, No. 844478. This shall include notifying the California Contractors State License Board of this Agreement and request the removal of the suspension. Further, the Parties agree to cooperate with one another and promptly execute any other reasonable and necessary documents to effectuate the intent of this Agreement.

8. <u>Entry of Judgment and Enforceability</u>.

    a. Trust Funds agree not to execute on the Judgment entered in the Lawsuit unless Employer is in default of this Settlement Agreement, as set forth in Paragraph 9 below. If Employer is in default, and does not cure the default within ten days of receiving the notice of default as required by Paragraph 9 below, then Trust Funds may, without further notice, utilize and all post-judgment collection remedies to pursue collection of the judgment entered. Credit against the amount of the judgment entered in the Lawsuit will be given to the Employer for any payments made under the Settlement Agreement prior to Employer's default.

    b. In the event of default, as to the unpaid contributions, liquidated damages, interest, attorneys' fees and costs not included in the judgment entered in the Lawsuit, in the amount of $64,778.87 [(liquidated damages and interest- $56,834.31- $47,685.87 ) + (attorneys' fees and costs- $56,834.31-$16,370.00) + (Current Audit- $8,846.35) + (Audit Interest- $6,987.82)], this settlement agreement will be considered an admission of liability, and stipulation by Employer for a judgment as to such unpaid contributions.

9. <u>Default.</u> If Employer fails to make any payment required under this Settlement Agreement as set forth in Paragraph 5 above, fails to remain current as set forth in Paragraph 6 above, or fails to comply with any other material condition herein, the Employer will be in default of this Settlement Agreement. In the event that the employer is in default of this Settlement Agreement, the Trust Funds will give notice of the default to the Employer by fax (415-822-6700) and the Employer's counsel by email (c.kuhner@kornfieldlaw.com) and fax ((510) 273-8845 Fax); the Employer shall have ten (10) days from the date of the notice to cure the default.

10. <u>Prepayment.</u> There is no penalty for prepayment. If Employer submits payments in excess of the monthly payment amounts required under Paragraph 5, those amounts will be credited towards the total amount due, but the payment schedule will not change.

11. <u>Audit.</u> The parties further acknowledge that by entering into this Agreement, the Trust Funds in no way waive their right to conduct a further audit for a period of time not covered by this audit, or to seek payment of any contributions found due from such an audit.

12. <u>Indemnification.</u> Employer agrees to indemnify and hold harmless Trust Funds from any and all claims arising out of Employer's failure to submit trust fund contributions on any individual who performed covered work for Employer as set forth in applicable collective bargaining agreement with Employer.

13. <u>Assignment.</u> Employer further agrees that if MICHAEL HEAVEY CONSTRUCTION, INC. is sold, this Agreement shall be binding on its

successors, heirs, and assigns regardless of whether it changes the name or style or address of the business.

14. <u>Representations.</u> Each Party warrants that said Party is legally competent and authorized to execute this Agreement and has not relied on any statements or explanations in connection therewith. Each Party acknowledges to the other Party that it has had the opportunity to be represented by independent legal counsel of its own choice throughout all of the negotiations that preceded the execution of this Agreement. Each Party, including their counsel, further acknowledge that they have had adequate opportunity to perform whatever investigation or inquiry they may deem necessary in connection with the subject matter of this Agreement prior to its execution and the delivery and acceptance of the considerations specified in this Agreement.

15. <u>Severability.</u> The provisions of this Agreement are contractual in nature and not mere recitals, and shall be considered independent and severable, and if any provision, or part thereof, is declared invalid, unenforceable or void for any reason, then the validity and enforceability of the remainder shall not be affected in any way.

16. <u>Entire Agreement.</u> This Agreement contains the entire agreement of the Parties with respect to the matters covered hereby, and supersedes any oral or written understandings or agreements between the Parties with respect to the subject matter of this Agreement. No person or Party is authorized to make any representations or warranties, except as set forth herein, and no agreement, statement, representation, or promise by any Party hereto, which is not contained herein, shall be valid or binding. The undersigned acknowledge that they have not relied upon any warranties, representations, statements, or promises by any of the Parties herein released or any of their agents or consultants, except as may be expressly set forth herein.

17. <u>Counterparts.</u> This Agreement may be executed in counterparts, which taken together, shall constitute one Agreement and be binding upon and effective as to all Parties hereto. This Agreement may be executed via receipt of a facsimile signature of the original document and signature page to follow.

18. <u>Final Accord and Satisfaction.</u> It is the intention of the Parties in executing this Agreement and in paying and receiving the consideration called for by this Agreement that this Agreement shall be effective as a full and final accord and satisfaction and general release of all Released Matters.

19. <u>Prevailing Party.</u> The Parties agree that if either Party is forced to bring an action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover their reasonable attorneys' fees and cost of suit incurred.

20. <u>Applicable Law.</u> This Agreement shall be governed by, interpreted and construed in accordance with the laws of the State of California.

21.     <u>Interpretation.</u>  In the event of a dispute hereunder, this Agreement shall not be interpreted for or against any Party hereto on the ground that such party drafted or caused this Agreement or any part thereof to be drafted.

22.     <u>Enforcement.</u>  The Agreement shall be enforceable in the United States District Court, Northern District of California.  If, for any reason, the District Court declines to exercise jurisdiction to enforce this Agreement, it shall be enforceable in any court of competent jurisdiction.

23.     <u>Release.</u>  In furtherance of the intentions set forth herein, each of the Parties acknowledges that it is familiar with Section 1542 of the Civil Code of the State of California which provides as follows:

> A general release does not extend to claims, which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each party understands and agrees that this release extends to any lawsuit that it could file in state or federal court, or with any regulatory agency or public agency, concerning the subject matter of the Action or otherwise.  Each party also understands that this release is not intended to and does not release any claim solely arising out of the obligations created by this Settlement Agreement.  Each party represents that it is the sole and current possessor of the claims or causes of action being released herein by it.

24.     <u>Cooperation.</u>  The Parties agree to cooperate with one another and promptly execute any other reasonable and necessary documents, which are or may be required to effectuate the intent of this Agreement.

25.     The parties hereto mutually state that they have read the foregoing Agreement and are fully aware of its contents and legal facts.  This Agreement constitutes the entire agreement of the parties and is entered into on the dates below indicated.

### EXECUTION BY PARTIES

**FOR LABORERS TRUST FUNDS**

Dated:  October 18, 2016

_____
Michelle Lauziere

**FOR MICHAEL HEAVEY CONSTRUCTION, INC.**

Dated:  October 17, 2016

Michael Heavey, Responsible Managing Officer

**FOR MICHAEL HEAVEY CONSTRUCTION, INC.**

Dated:  October 17, 2016

Noreen B. Boyle also known as Noreen B. Heavey, President and Chief Financial Officer

**MICHAEL B. HEAVEY, INDIVIDUALLY**

Dated:  October 17, 2016

Michael B. Heavey

**NOREEN B. BOYLE ALSO KNOWN AS MAUREEN B. HEAVEY, INDIVIDUALLY**

Dated:  October 17, 2016

Noreen B. Boyle also known as Noreen B. Heavey

131432/828629

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ San Mateo _____ )

On __10/17/2016_____ before me, Tracy Anne McCarthy - Notary Public _____

(insert name and title of the officer)

personally appeared __NOREEN BRIDGET BOYLE_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Tracy Anne McCarthy_ (Seal)

TRACY ANNE MCCARTHY
Commission # 2001513
Notary Public - California
San Mateo County
My Comm. Expires Dec 20, 2016

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ San Mateo _____ )

On __10/17/2016_____ before me, _Tracy Anne McCarthy - Notary Public_____

                                                       (insert name and title of the officer)

personally appeared __Michael Bart Hedley_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

TRACY ANNE MCCARTHY
Commission # 2001513
Notary Public - California
San Mateo County
My Comm. Expires Dec 20, 2016

Signature _Tracy Anne McCarthy_ (Seal)

**To:**   Laborers Health and Welfare Trust Fund for Northern California, Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California and Laborers Training and Retraining Trust Fund for Northern California ("Trust Funds")

**From:**   Michael Bart Heavey

### PERSONAL GUARANTEE AND UNDERTAKING

**IN CONSIDERATION** of the Trust Funds having at my request agreed to enter into the Settlement Agreement between Michael Heavey Construction, Inc. and the Trust Funds (hereinafter the "Settlement Agreement"), a copy of which is attached hereto, I, Michael Bart Heavey (hereinafter the "Guarantor"), do hereby in my personal capacity undertake and agree with you, Trust Funds, as follows:

1.      I, Guarantor, stipulate that that there is now due and owing the following sums by the Employer to the Trust Funds: (1) Liquidated Damages and Interest in the amount of $56,834.31; (2) Attorneys' fees and costs in the amount of $56,166.26; (3) audit liability in the amount of $8,846.35 for principal shortages; and (4) liability in the amount of $6,987.82 for interest relating to the aforementioned audit.

2.      I, the Guarantor, do hereby Guarantee payment to the Trust Funds, and its successors and assigns of the outstanding liability owed to the Trust Funds by Michael Heavey Construction, Inc. (hereinafter "Employer") in the amount of $128,834.74 in the event that Employer defaults on its payment obligations under Paragraph 5 of its Settlement Agreement, and fails to cure such default after receiving notice of such default under paragraph 9 of the Settlement Agreement.   A fully executed copy of the Settlement Agreement, which I have read and understood the contents therein, is attached hereto.

3.      This Guarantee shall extend to any obligations of Employer under any amendment, present or future, to the Settlement Agreement, including, without limiting the generality of the foregoing, any amendment which has the effect of extending the Payment Plan where time is of essence.

4.      I acknowledge that the Settlement Agreement may be amended from time to time by the parties thereto without the prior consent of me, and it is hereby agreed that no such amendment shall release me from my liability under this Guarantee either in whole or in part.

5.      My liability herein under this Guarantee and Undertaking shall continue despite the insolvency or winding-up of Employer until such time Employer shall have fully performed all the provisions, conditions, warranties, covenants and agreements contained therein the said Agreement.

6.      If Employer defaults on any of its obligations under Paragraph 5 of the Settlement Agreement, upon your written demand to the Employer and Michael. B. Heavey by Fax (415-822-6700) and the Employer's counsel by email (c.kuhner@kornfieldlaw.com) and fax ((510) 273-8845 Fax), I AGREE to immediately pay to the Trust Funds the sum of $128,834.74, less any payments received by the Trust Funds from Employer under paragraph 5 of the Settlement Agreement.  I shall also pay to the Trust Funds interest on the amount due under this Guarantee and Undertaking at the rate of ten percent (10%) per annum calculated from the date of Employer's default under the Settlement Agreement until full payment thereof, and will indemnify you, Trust Funds, against all attorneys' fees and costs which may be incurred and/or suffered by you by reason of any uncured default on the part of Employer in performing or observing the payment obligations contained in Paragraph 5 of the Settlement Agreement.

7.      You, Trust Funds, shall not be bound to exhaust your recourse against Employer, or any other parties, nor realize any security granted to you by Employer or any party, nor value any such security nor notify me, the Guarantor of any act of default on the part of Employer, before enforcing the provisions of this Guarantee against me.

8.      This Guarantee shall be in addition to and not in substitution for any other Guarantees which you, Trust Funds, may now or hereafter hold in respect of the Guarantied obligations and you shall be under no obligation to marshall in favor of me, the Guarantor, any other Guarantees or other securities or any monies or the assets which Employer may be entitled to receive or may have a claim upon, and neither the loss nor unenforceability of any other Guarantees or other securities which you may now or hereafter hold in respect of the Guarantied

SAC 442702938v1

obligations, whether occasioned by default of Employer or otherwise, shall in any way limit or lessen my liability.

9.      This Guarantee embodies all the agreements between the parties hereto relating to the Guarantee, and none of the parties shall be bound by any representation or promise made by any person relative thereto which is not embodied herein, and it is specifically agreed that you, Trust Funds, shall not be bound by any representations or promises made by Employer to me as the Guarantor.

10.     This Guarantee shall not be discharged nor otherwise affected by the death of me, the Guarantor and shall inure to the benefit of you, Trust Funds, its successors and assigns, and shall be binding upon me, the Guarantor, my heirs, executors, administrators, successors, or assigns.

11.     This Guarantee shall be of a continuing nature and shall secure the Guarantied obligations that may be due from time to time and at any time from Employer to you, notwithstanding that the Guarantied obligations may change from time to time or may at any time be amended or deleted.

12.     You, Trust Funds shall not be required to inquire into the powers of Employer or any agents acting or purporting to act on its behalf, and any obligations to you incurred in the professed exercise of the rights and positions of Employer under the Settlement Agreement shall be deemed to be part of the Guarantied obligations, even though the actions in so doing may be in excess of the powers of Employer or of its professed agent or may be in any way irregular, defective or informal.

13.     (1) This Guarantee shall be absolute and non-conditional and shall be effective from the date hereof.

(2) This Guarantee and Undertaking shall be governed by and construed in all respects in accordance with the laws of the state of California, but in enforcing this Guarantee and undertaking, you are at liberty to initiate and take action or proceedings or otherwise against me in California or elsewhere as you may deem fit, and I hereby agree that where any actions or proceedings are initiated and taken in the state of California, I shall submit to the jurisdiction of

3

the courts in the state of California in all matters connected with my obligations and liabilities under or arising out of this Guarantee and Undertaking. Any writ, judgment or other notice of legal process shall be sufficiently served on me if delivered to or sent by ordinary or registered post to my address: 2225 Ingalls Street, San Francisco, CA 94124.  You will also provide courtesy copies of all documents served on me to the Kornfield, Nyberg, Bendes & Kuhner PC, 1970 Broadway Suite 225, Oakland, California 94612.

14.   My liabilities herein as the Guarantor shall be irrevocable.

15.   All notice to me may be sent by registered or certified mail or by prepaid courier, addressed to my address set out hereinabove, or by delivering it by hand to me at the said address hereinabove, and any notice sent by mail or by courier shall be deemed to be served on me on the third business day following the mailing thereof.  You will also provide courtesy copies of all notices served on me to: Attention: Chris Kuhner, Kornfield, Nyberg, Bendes & Kuhner PC, 1970 Broadway Suite 225, Oakland, California 94612.

16.   You shall be at liberty to proceed against me under this Guarantee as though I am the principal, and I do hereby waive all and any of my rights as surety which may at any time be inconsistent with any of the provisions of this Guarantee.

17.   I shall unless otherwise instructed by you in writing, pay to you all monies and satisfy all liabilities hereunder in United States Dollars, inclusive of any judgment or order made or registered against Employer.  For the purpose of this clause, the rate of exchange means the rate at which you are able on or about the date of such payment to purchase, in accordance with your normal practice, the contractual currency with the payment currency and shall take into account (and I shall be liable for) any premium and other costs of exchange including any taxes or duties incurred by reason of any such exchange.

18.   If any of the provisions of this Guarantee and Undertaking becomes invalid, illegal or unenforceable in any respect under any law, the validity, legality and enforceability of the remaining provisions of this Guarantee and undertaking shall not in any way be affected or impaired.

4

*SAC 442702938v1*

19.    I hereby acknowledge that I have read and understood the contents of this Guarantee and Undertaking and I further warrant that I have sought independent legal advice in relation to this Guarantee and Undertaking AND I fully understand the legal implications and consequences of the same.


Dated:    _____

Signature of Trust Funds

Dated: 10-17-16    _____

Signature of Guarantor Michael Bart Heavey, Individually


Subscribed and sworn to before me this

_____day of 20_____

_____NOTARY PUBLIC

131432/884264

19.     I hereby acknowledge that I have read and understood the contents of this Guarantee and Undertaking and I further warrant that I have sought independent legal advice in relation to this Guarantee and Undertaking AND I fully understand the legal implications and consequences of the same.


Dated: 10/19/16 _____

Signature of Trust Funds


Dated: 10-17-16 _____

Signature of Guarantor Michael Bart Heavey, Individually


Subscribed and sworn to before me this

_____ day of 20_____

_____ NOTARY PUBLIC

131432/884264

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _San Mateo_____

Subscribed and sworn to (or affirmed) before me on this _17th___ day of _October_____, 20 _16_, by _____ _Michael Bart Heavey_____, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

TRACY ANNE MCCARTHY
Commission # 2001513
Notary Public - California
San Mateo County
My Comm. Expires Dec 20, 2016

(Seal)                          Signature _Tracy Anne McCarthy_
                                "Notary Public"

**To:**   Laborers Health and Welfare Trust Fund for Northern California, Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California and Laborers Training and Retraining Trust Fund for Northern California ("Trust Funds")

**From:** Noreen B. Boyle also known as Noreen B. Heavey

## PERSONAL GUARANTEE AND UNDERTAKING

**IN CONSIDERATION** of the Trust Funds having at my request agreed to enter into the Settlement Agreement between Michael Heavey Construction, Inc. and the Trust Funds (hereinafter the "Settlement Agreement"), a copy of which is attached hereto, I, Noreen B. Boyle also known as Noreen B. Heavey (hereinafter the "Guarantor"), do hereby in my personal capacity undertake and agree with you, Trust Funds, as follows:

1.       I, Guarantor, stipulate that that there is now due and owing the following sums by the Employer to the Trust Funds: (1) Liquidated Damages and Interest in the amount of $56,834.31; (2) Attorneys' fees and costs in the amount of $56,166.26; (3) audit liability in the amount of $8,846.35 for principal shortages; and (4) liability in the amount of $6,987.82 for interest relating to the aforementioned audit.

2.       I, the Guarantor, do hereby Guarantee payment to the Trust Funds, and its successors and assigns of the outstanding liability owed to the Trust Funds by Michael Heavey Construction, Inc. (hereinafter "Employer") in the amount of $128,834.74 in the event that Employer defaults on its payment obligations under Paragraph 5 of its Settlement Agreement, and fails to cure such default after receiving notice of such default under paragraph 9 of the Settlement Agreement.   A fully executed copy of the Settlement Agreement, which I have read and understood the contents therein, is attached hereto.

3.       This Guarantee shall extend to any obligations of Employer under any amendment, present or future, to the Settlement Agreement, including, without limiting the generality of the foregoing, any amendment which has the effect of extending the Payment Plan where time is of essence.

4.      I acknowledge that the Settlement Agreement may be amended from time to time by the parties thereto without the prior consent of me, and it is hereby agreed that no such amendment shall release me from my liability under this Guarantee either in whole or in part.

5.      My liability herein under this Guarantee and Undertaking shall continue despite the insolvency or winding-up of Employer until such time Employer shall have fully performed all the provisions, conditions, warranties, covenants and agreements contained therein the said Agreement.

6.      If Employer defaults on any of its obligations under Paragraph 5 of the Settlement Agreement, upon your written demand to the Employer and Guarantor by Fax (415-822-6700) and the Employer's counsel by email (c.kuhner@kornfieldlaw.com) and fax ((510) 273-8845 Fax), I AGREE to immediately pay to the Trust Funds the sum of $128,834.74, less any payments received by the Trust Funds from Employer under paragraph 5 of the Settlement Agreement. I shall also pay to the Trust Funds interest on the amount due under this Guarantee and Undertaking at the rate of ten percent (10%) per annum calculated from the date of Employer's default under the Settlement Agreement until full payment thereof, and will indemnify you, Trust Funds, against all attorneys' fees and costs which may be incurred and/or suffered by you by reason of any uncured default on the part of Employer in performing or observing the payment obligations contained in Paragraph 5 of the Settlement Agreement.

7.      You, Trust Funds, shall not be bound to exhaust your recourse against Employer, or any other parties, nor realize any security granted to you by Employer or any party, nor value any such security nor notify me, the Guarantor of any act of default on the part of Employer, before enforcing the provisions of this Guarantee against me.

8.      This Guarantee shall be in addition to and not in substitution for any other Guarantees which you, Trust Funds, may now or hereafter hold in respect of the Guarantied obligations and you shall be under no obligation to marshall in favor of me, the Guarantor, any other Guarantees or other securities or any monies or the assets which Employer may be entitled to receive or may have a claim upon, and neither the loss nor unenforceability of any other Guarantees or other securities which you may now or hereafter hold in respect of the Guarantied

obligations, whether occasioned by default of Employer or otherwise, shall in any way limit or lessen my liability.

9.      This Guarantee embodies all the agreements between the parties hereto relating to the Guarantee, and none of the parties shall be bound by any representation or promise made by any person relative thereto which is not embodied herein, and it is specifically agreed that you, Trust Funds, shall not be bound by any representations or promises made by Employer to me as the Guarantor.

10.     This Guarantee shall not be discharged nor otherwise affected by the death of me, the Guarantor and shall inure to the benefit of you, Trust Funds, its successors and assigns, and shall be binding upon me, the Guarantor, my heirs, executors, administrators, successors, or assigns.

11.     This Guarantee shall be of a continuing nature and shall secure the Guarantied obligations that may be due from time to time and at any time from Employer to you, notwithstanding that the Guarantied obligations may change from time to time or may at any time be amended or deleted.

12.     You, Trust Funds shall not be required to inquire into the powers of Employer or any agents acting or purporting to act on its behalf, and any obligations to you incurred in the professed exercise of the rights and positions of Employer under the Settlement Agreement shall be deemed to be part of the Guarantied obligations, even though the actions in so doing may be in excess of the powers of Employer or of its professed agent or may be in any way irregular, defective or informal.

13.     (1) This Guarantee shall be absolute and non-conditional and shall be effective from the date hereof.

(2) This Guarantee and Undertaking shall be governed by and construed in all respects in accordance with the laws of the state of California, but in enforcing this Guarantee and undertaking, you are at liberty to initiate and take action or proceedings or otherwise against me in California or elsewhere as you may deem fit, and I hereby agree that where any actions or proceedings are initiated and taken in the state of California, I shall submit to the jurisdiction of

3

the courts in the state of California in all matters connected with my obligations and liabilities under or arising out of this Guarantee and Undertaking. Any writ, judgment or other notice of legal process shall be sufficiently served on me if delivered to or sent by ordinary or registered post to my address: 2225 Ingalls Street, San Francisco, CA 94124.   You will also provide courtesy copies of all documents served on me to the Kornfield, Nyberg, Bendes & Kuhner PC, 1970 Broadway Suite 225, Oakland, California 94612.

14.    My liabilities herein as the Guarantor shall be irrevocable.

15.    All notice to me may be sent by registered or certified mail or by prepaid courier, addressed to my address set out hereinabove, or by delivering it by hand to me at the said address hereinabove, and any notice sent by mail or by courier shall be deemed to be served on me on the third business day following the mailing thereof.   You will also provide courtesy copies of all notices served on me to: Attention: Chris Kuhner, Kornfield, Nyberg, Bendes & Kuhner PC, 1970 Broadway Suite 225, Oakland, California 94612.

16.    You shall be at liberty to proceed against me under this Guarantee as though I am the principal, and I do hereby waive all and any of my rights as surety which may at any time be inconsistent with any of the provisions of this Guarantee.

17.    I shall unless otherwise instructed by you in writing, pay to you all monies and satisfy all liabilities hereunder in United States Dollars, inclusive of any judgment or order made or registered against Employer.   For the purpose of this clause, the rate of exchange means the rate at which you are able on or about the date of such payment to purchase, in accordance with your normal practice, the contractual currency with the payment currency and shall take into account (and I shall be liable for) any premium and other costs of exchange including any taxes or duties incurred by reason of any such exchange.

18.    If any of the provisions of this Guarantee and Undertaking becomes invalid, illegal or unenforceable in any respect under any law, the validity, legality and enforceability of the remaining provisions of this Guarantee and undertaking shall not in any way be affected or impaired.

4

19.    I hereby acknowledge that I have read and understood the contents of this Guarantee and Undertaking and I further warrant that I have sought independent legal advice in relation to this Guarantee and Undertaking AND I fully understand the legal implications and consequences of the same.


Dated:                    _____

Signature of Trust Funds


Dated: 10/17/2016  _____

Signature of Guarantor Noreen B. Boyle also known as Noreen B. Heavey, Individually


Subscribed and sworn to before me this

_____day of 20_____

_____NOTARY PUBLIC

131432/884285

19.    I hereby acknowledge that I have read and understood the contents of this Guarantee and Undertaking and I further warrant that I have sought independent legal advice in relation to this Guarantee and Undertaking AND I fully understand the legal implications and consequences of the same.


Dated: 10/19/16 _____
Signature of Trust Funds


Dated: 10/17/2016 _____
Signature of Guarantor Noreen B. Boyle also known as Noreen B. Heavey, Individually


Subscribed and sworn to before me this

_____day of 20_____

_____NOTARY PUBLIC

131432/884285

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of San Mateo

Subscribed and sworn to (or affirmed) before me on this 17th day of October, 20 16, by _____
Noreen Bridget Boyle
proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

TRACY ANNE MCCARTHY
Commission # 2001513
Notary Public - California
San Mateo County
My Comm. Expires Dec 20, 2016

(Seal)                          Signature _Tracy Anne McCarthy_
                                          "Notary Public"

# EXHIBIT D

# EXHIBIT D

STEWART WEINBERG
DAVID A. ROSENFELD
WILLIAM A. SOKOL
BLYTHE MICKELSON
BARRY E. HINKLE
ANTONIO RUIZ
MATTHEW J. GAUGER
ASHLEY K. IKEDA •
LINDA BALDWIN JONES
PATRICIA A. DAVIS
ALAN Q. CROWLEY
KRISTINA L. HILLMAN ••
EMILY P. RICH
BRUCE A. HARLAND
CONCEPCION E. LOZANO-BATISTA
CAREN P. SENCER
ANNE I. YEN
KRISTINA M. ZINNEN
JANNAH V. MANANSALA
MANUEL A. BÓIGUES •••
KERIANNE R. STEELE ••
GARY P. PROVENCHER
EZEKIEL D. CARDER ••••
MONICA T. GUIZAR
LISL R. SOTO
JOLENE KRAMER

ANTHONY J. TUCCI ••
MICHAEL D. BURSTEIN
ALEJANDRO DELGADO
CAROLINE N. COHEN
XOCHITL A. LOPEZ
CAITLIN E. GRAY
TIFFANY CRAIN ALTAMIRANO ••
RYAN B. KADEVARI
DAVID W. M. FUJIMOTO
ADAM J. THOMAS
PAUL K. PFEILSCHIEFTER
ALEXANDER S. NAZAROV
ERIC J. WIESNER
JERRY P.S. CHANG •
ANDREA C. MATSUOKA

ROBERTA D. PERKINS, Of Counsel
NINA FENDEL, Of Counsel
TRACY L. MAINGUY, Of Counsel •••••
ROBERT E. SZYKOWNY, Of Counsel
ANDREA K. DIX, Of Counsel
LORI K. AQUINO, Of Counsel •
SHARON A. SEIDENSTEIN, Of Counsel

## WEINBERG, ROGER & ROSENFELD
### A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, CA 94501
TELEPHONE (510) 337-1001
FAX (510) 337-1023
WWW.UNIONCOUNSEL.NET

•        Admitted in Hawaii
••       Also admitted in Nevada
•••      Also admitted in Illinois
••••     Also admitted in New York and Alaska
•••••    Also admitted in Florida

September 4, 2018

**VIA FACSIMILE & CERTIFIED U.S. MAIL**
**7017 1000 0000 5631 4232**

Ms. Noreen B. Boyle aka Noreen B. Heavey
250 Santa Paula
San Francisco, CA 94127

**Re:    Notice of Default and Demand for Payment Under Personal Guarantee**

Dear Ms. Boyle:

I am contacting you to demand payment under the Personal Guarantee and Undertaking you executed to guarantee payment of the amounts owed under Michael Heavey Construction, Inc.'s Settlement Agreement dated October 27, 2016 with the Laborers Trust Funds (hereinafter "Second Settlement").

Michael Heavey Construction, Inc. defaulted on its payments owed under the Second Settlement. The Second Settlement required Michael Heavey Construction to make the payments totaling $80,968.15 as specified in paragraph 5 of the Settlement Agreement and stay current in making contributions to the Trust Funds from the date of the Settlement Agreement going forward. However, Michael Heavey Construction, Inc. failed to do so. Instead Michael Heavey Construction, Inc. made payments totaling only $53,980.09, then failed to pay its ongoing contribution obligations on a current basis.

Paragraph 6 of the attached Personal Guarantee and Undertaking provides:

> If Employer defaults on any of its obligations under Paragraph 5 of the Settlement Agreement, upon your written demand to the Employer and Guarantor by Fax (415-822-6700) and the Employer's counsel by email (c.kuhner@kornfieldlaw.com) and fax ((510) 273-8845 Fax), I AGREE to immediately pay to the Trust Funds the sum of $128,834.74, less any payments received by the Trust Funds from Employer under paragraph 5 of the Settlement Agreement. I shall also pay to the Trust Funds interest on the amount due under this Guarantee and Undertaking at the rate of ten percent (10%) per annum calculated from the date of Employer's default under the Settlement Agreement until full payment thereof, and will indemnify you, Trust Funds, against all attorneys' fees and costs which may be incurred and/or suffered by you by reason of any uncured default on the part of Employer in performing or observing the payment obligations contained in Paragraph 5 of the Settlement Agreement.

LOS ANGELES OFFICE
800 Wilshire Boulevard, Suite 1320
Los Angeles, CA 90017-2607
TEL 213.380.2344 FAX 213.443.5098

SACRAMENTO OFFICE
431 I Street, Suite 202
Sacramento, CA 95814-2341
TEL 916.443.6600 FAX 916.442.0244

HONOLULU OFFICE
220 South King Street, Suite 901
Honolulu, HI 96813-4500
TEL 808.528.8880 FAX 808.528.8881

September 4, 2018
Page 2

The Laborers Trust Funds confirmed that the total payment received for the Second Settlement totaled $53,980.09.  In light of the default under the Second Settlement, the liquidated damages and interest (75%) which would have been waived had the default not occurred is now due and payable by you under the attached Personal Guarantee and Undertaking.

|  | Due Amount |
|---|---|
| 2nd Settlement: | LD's @ 100% |
| Contributions |  |
| LD's & Interest | $56,834.31 |
| Attorney Fees & Cost | 56,166.26 |
| Current Audit | 8,846.35 |
| Audit Interest | 6,987.82 |
| Total Due: | $128,834.74 |

This letter constitutes a demand for immediate payment of $74,854.65 [$128,834.74 less payments received under the Second Settlement totaling $53,980.09].  Please forward a cashier's check made payable to the "Laborers Trust Funds" directed to my attention as follows:

**Attention: Tracy L. Mainguy**
**Weinberg, Roger & Rosenfeld**
**1001 Marina Village Parkway, Ste.200**
**Alameda, CA 94501**

Failure to make the payment of the $74,854.65 immediately will result in suit being filed against you, in your capacity as an individual, to collect sum plus attorneys' fees and interest.

Sincerely

*Tracy L. Mainguy/jaw*

Tracy L. Mainguy

TLM:jaw
opeiu 29 afl-cio(1)
Enclosure (Personal Guarantee and Undertaking)
cc:     Michael Heavey Construction, Inc. (via facsimile)
        Mr. Chris D. Kuhner (via facsimile & e-mail)
131432\985379

STEWART WEINBERG
DAVID A. ROSENFELD
WILLIAM A. SOKOL
BLYTHE MICKELSON
BARRY E. HINKLE
ANTONIO RUIZ
MATTHEW J. GAUGER
ASHLEY K. IKEDA •
LINDA BALDWIN JONES
PATRICIA A. DAVIS
ALAN G. CROWLEY
KRISTINA L. HILLMAN ••
EMILY P. RICH
BRUCE A. HARLAND
CONCEPCIÓN E. LOZANO-BATISTA
CAREN P. SENCER
ANNE I. YEN
KRISTINA M. ZINNEN
JANNAH V. MANANSALA
MANUEL A. BOÍGUES •••
KERIANNE R. STEELE ••
GARY P. PROVENCHER
EZEKIEL D. CARDER ••••
MONICA T. GUIZAR
LISL R. SOTO
JOLENE KRAMER

ANTHONY J. TUCCI ••
MICHAEL D. BURSTEIN
ALEJANDRO DELGADO
CAROLINE N. COHEN
XOCHITL A. LOPEZ
CAITLIN E. GRAY
TIFFANY CRAIN ALTAMIRANO ••
RYAN B. KADEVARI
DAVID W. M. FUJIMOTO
ADAM J. THOMAS
PAUL K. PFEILSCHIEFTER
ALEXANDER S. NAZAROV
ERIC J. WIESNER
JERRY P.S. CHANG •
ANDREA C. MATSUOKA

ROBERTA D. PERKINS, Of Counsel
NINA FENDEL, Of Counsel
TRACY L. MAINGUY, Of Counsel •••••
ROBERT E. SZYKOWNY, Of Counsel
ANDREA K. DON, Of Counsel
LORI K. AQUINO, Of Counsel •
SHARON A. SEIDENSTEIN, Of Counsel

•        Admitted in Hawaii
••       Also admitted in Nevada
•••      Also admitted in Illinois
••••     Also admitted in New York and Alaska
•••••    Also admitted in Florida

**WEINBERG, ROGER & ROSENFELD**
**A Professional Corporation**
1001 Marina Village Parkway, Suite 200
Alameda, CA 94501
TELEPHONE (510) 337-1001
FAX (510) 337-1023
WWW.UNIONCOUNSEL.NET

September 4, 2018

**VIA FACSIMILE & CERTIFIED U.S. MAIL**
**7017 1000 0000 5631 4225**

Mr. Michael Bart Heavey
250 Santa Paula
San Francisco, CA 94127

**Re:    Notice of Default and Demand for Payment Under Personal Guarantee**

Dear Mr. Heavey:

I am contacting you to demand payment under the Personal Guarantee and Undertaking you executed to guarantee payment of the amounts owed under Michael Heavey Construction, Inc.'s Settlement Agreement dated October 27, 2016 with the Laborers Trust Funds (hereinafter "Second Settlement").

Michael Heavey Construction, Inc. defaulted on its payments owed under the Second Settlement. The Second Settlement required Michael Heavey Construction to make the payments totaling $80,968.15 as specified in paragraph 5 of the Settlement Agreement and stay current in making contributions to the Trust Funds from the date of the Settlement Agreement going forward. However, Michael Heavey Construction, Inc. failed to do so. Instead Michael Heavey Construction, Inc. made payments totaling only $53,980.09, then failed to pay its ongoing contribution obligations on a current basis.

Paragraph 6 of the attached Personal Guarantee and Undertaking provides:

> If Employer defaults on any of its obligations under Paragraph 5 of the Settlement Agreement, upon your written demand to the Employer and Guarantor by Fax (415-822-6700) and the Employer's counsel by email (c.kuhner@kornfieldlaw.com) and fax ((510) 273-8845 Fax), I AGREE to immediately pay to the Trust Funds the sum of $128,834.74, less any payments received by the Trust Funds from Employer under paragraph 5 of the Settlement Agreement. I shall also pay to the Trust Funds interest on the amount due under this Guarantee and Undertaking at the rate of ten percent (10%) per annum calculated from the date of Employer's default under the Settlement Agreement until full payment thereof, and will indemnify you, Trust Funds, against all attorneys' fees and costs which may be incurred and/or suffered by you by reason of any uncured default on the part of Employer in performing or observing the payment obligations contained in Paragraph 5 of the Settlement Agreement.

LOS ANGELES OFFICE
800 Wilshire Boulevard, Suite 1320
Los Angeles, CA  90017-2607
TEL 213.380.2344 FAX 213.443.5098

SACRAMENTO OFFICE
431 I Street, Suite 202
Sacramento, CA  95814-2341
TEL 916.443.6600 FAX 916.442.0244

HONOLULU OFFICE
220 South King Street, Suite 901
Honolulu, HI  96813-4500
TEL 808.528.8880 FAX 808.528.8881

September 4, 2018
Page 2

The Laborers Trust Funds confirmed that the total payment received for the Second Settlement totaled $53,980.09. In light of the default under the Second Settlement, the liquidated damages and interest (75%) which would have been waived had the default not occurred is now due and payable by you under the attached Personal Guarantee and Undertaking.

|  | Due Amount |
|---|---|
| 2nd Settlement: | LD's @ 100% |
| Contributions |  |
| LD's & Interest | $56,834.31 |
| Attorney Fees & Cost | 56,166.26 |
| Current Audit | 8,846.35 |
| Audit Interest | 6,987.82 |
| Total Due: | $128,834.74 |

This letter constitutes a demand for immediate payment of $74,854.65 [$128,834.74 less payments received under the Second Settlement totaling $53,980.09]. Please forward a cashier's check made payable to the "Laborers Trust Funds" directed to my attention as follows:

**Attention: Tracy L. Mainguy**
**Weinberg, Roger & Rosenfeld**
**1001 Marina Village Parkway, Ste.200**
**Alameda, CA 94501**

Failure to make the payment of the $74,854.65 immediately will result in suit being filed against you, in your capacity as an individual, to collect sum plus attorneys' fees and interest.

Sincerely

*Tracy L. Mainguy/jaw*

Tracy L. Mainguy

TLM:jaw
opeiu 29 afl-cio(1)
Enclosure (Personal Guarantee and Undertaking)
cc:    Michael Heavey Construction, Inc. (via facsimile)
       Mr. Chris D. Kuhner (via facsimile & e-mail)
131432\985378

# EXHIBIT E

# EXHIBIT E

STEWART WEINBERG
DAVID A. ROSENFELD
WILLIAM A. SOKOL
BLYTHE MICKELSON
BARRY E. HINKLE
ANTONIO RUIZ
MATTHEW J. GAUGER
ASHLEY K. IKEDA •
LINDA BALDWIN JONES
PATRICIA A. DAVIS
ALAN G. CROWLEY
KRISTINA L. HILLMAN ••
EMILY P. RICH
BRUCE A. HARLAND
CONCEPCIÓN E. LOZANO-BATISTA
CAREN P. SENCER
ANNE I. YEN
KRISTINA M. ZINNEN
JANNAH V. MANANSALA
MANUEL A. BOIGUES •••
KERIANNE R. STEELE •
GARY P. PROVENCHER
EZEKIEL D. CARDER ••••
MONICA T. GUIZAR
LISL R. SOTO
JOLENE KRAMER

# WEINBERG, ROGER & ROSENFELD

**A Professional Corporation**

1001 Marina Village Parkway, Suite 200
Alameda, CA 94501
TELEPHONE (510) 337-1001
FAX (510) 337-1023
WWW.UNIONCOUNSEL.NET

ANTHONY J. TUCCI ••
MICHAEL D. BURSTEIN
ALEJANDRO DELGADO
CAROLINE N. COHEN
XOCHITL A. LOPEZ
CAITLIN E. GRAY
TIFFANY CRAIN ALTAMIRANO ••
RYAN B. KADEVARI
DAVID W. M. FUJIMOTO
ADAM J. THOMAS
PAUL K. PFEILSCHIFTER
ALEXANDER S. NAZAROV
ERIC J. WIESNER
JERRY P S. CHANG •
ANDREA C. MATSUOKA

ROBERTA D. PERKINS, Of Counsel
NINA FENDEL, Of Counsel
TRACY L. MAINGUY, Of Counsel •••••
ROBERT E. SZYKOWNY, Of Counsel
ANDREA K. DON, Of Counsel
LORI K. AQUINO, Of Counsel •
SHARON A. SEIDENSTEIN, Of Counsel

September 4, 2018

•        Admitted in Hawaii
••       Also admitted in Nevada
•••      Also admitted in Illinois
••••     Also admitted in New York and Alaska
•••••    Also admitted in Florida

**VIA FACSIMILE & CERTIFIED U.S. MAIL**
**7017 1000 0000 5631 4249**

Michael Heavey Construction, Inc.
Attention: Michael B. Heavey
2225 Ingalls Street
San Francisco, CA 94124

**Re:    Notice of Default under Settlement Agreement**

Dear Mr. Heavey:

This letter constitutes a Notice of Default under the terms of the Michael Heavey Construction, Inc.'s Settlement Agreement dated October 27, 2016 with the Laborers Trust Funds (hereinafter "Second Settlement").

Michael Heavey Construction, Inc. defaulted on its payments owed under the Second Settlement.  The Second Settlement required Michael Heavey Construction to make the payments totaling $80,968.15 as specified in paragraph 5 of the Settlement Agreement.  Pursuant to paragraph 6 of the Second Settlement, Michael Heavey Construction, Inc. is also required to stay current in making contributions to the Trust Funds from the date of the Settlement Agreement going forward.  However, Michael Heavey Construction, Inc. failed to do so.  Instead Michael Heavey Construction, Inc. made payments totaling only $53,980.09, then failed to pay its ongoing contribution obligations on a current basis.

Demand is hereby made for the immediate payment of $74,854.65 [$128,834.74 less payments received under the Second Settlement totaling $53,980.09] owed under the Second Settlement.

Judgment was entered in United States District Court Northern District of California, case number 3:15-cv-00411-WHA against Michael Heavey Construction, Inc. in the amount of $217,587.23.  This judgment includes the balances owed for an audit and unpaid contributions through April 2015.  An earlier settlement ("First Settlement") was reached between the parties and payments were started under the First Settlement which <u>left an unpaid balance</u> of principal contributions revealed as owed by an audit in the amount of  $58,085.99 (contributions) and related liquidated damages and interest owed in the amount of $8,064.29, along with Attorney fees/costs and liquidated damages and interest.

LOS ANGELES OFFICE
800 Wilshire Boulevard, Suite 1320
Los Angeles, CA  90017-2607
TEL 213.380.2344 FAX 213.443.5098

SACRAMENTO OFFICE
431 I Street, Suite 202
Sacramento, CA  95814-2341
TEL 916.443.6600 FAX 916.442.0244

HONOLULU OFFICE
220 South King Street, Suite 901
Honolulu, HI  96813-4500
TEL 808.528.8880 FAX 808.528.8881

September 4, 2018
Page 2

Demand is therefore also made for payment of $66,150.28 (balance owed under Judgment for audit shortages) and contributions in the amount of $33,343.92 (amount owed for unpaid Reports for Sep-17 through Mar.-18).

Please forward a cashier's check in the amount of $174,348.85 [($128,834.74 - $53,980.09) + $66,150.28 (balance owed under Judgment for audit shortages) + $33,343.92 (amount owed for unpaid Reports for Sep-17 through Mar.-18) made payable to "Laborers Trust Funds" directed to my attention as follows:

**Attention: Tracy L. Mainguy**
**Weinberg, Roger & Rosenfeld**
**1001 Marina Village Parkway, Suite 200**
**Alameda, CA 94501**

If payment is not made upon receipt of this demand, the Trust Funds, without further notification, will take all legal steps which they deem appropriate to collect the amounts owed.

Sincerely

*Tracy L. Mainguy/jaw*

Tracy L. Mainguy

TLM:jaw
opeiu 29 afl-cio(1)
cc:     Mr. Chris D. Kuhner (via facsimile & e-mail)
131432\985503